UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
UNITED STATES OF AMERICA,                        :
                                                 :
                                                 :        19 Cr. 131 (PAE)
                -v-                              :
                                                 :        OPINION AND ORDER
JUSTIN RIVERA,                                   :
                                                 :
                        Defendant.               :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

Trial in this case is scheduled to begin on March 9, 2019. This decision resolves a motion by defendant Justin Rivera to suppress anticipated in-court identifications of Rivera. Dkt. 176. For the reasons that follow, the Court denies Rivera's motion.

I.  Background

   A.  The Indictment

The Indictment in 19 Cr. 131 (PAE) was publicly filed on February 26, 2019, and includes 15 counts. Rivera is charged in one: Count One, which charges him and four others with participating in a 2015 conspiracy to commit sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a)(1), (a)(2), and (b), and 1594(c). Dkt. 1. Specific to Rivera, the Indictment alleges as an overt act that Rivera "physically harmed and threatened with harm Victim-2," "brandish[ed] a dangerous weapon at Victim-2," and "with[held] heroin from Victim-2." *Id*. ¶¶ 3(a), 3(c). Co-defendants of Rivera, some but not all of whom are charged with him in Count One, are charged in the remaining counts. These charge, *inter alia*, a 2018 conspiracy to commit the same offense, *id*. ¶¶ 4–6; multiple instances in 2012, 2015, and 2018 of substantive sex trafficking by fraud, force, or coercion, *id*. ¶¶ 7–11; a 2017 conspiracy to violate the Mann

Act, *id.* ¶¶ 21–23; a 2018 conspiracy to violate the Mann Act, *id.* ¶¶ 24–26; and a 2018 violation of the Mann Act, *id.* ¶ 27.

        **B.**        **Rivera's *Brady* Motion Regarding the "Photo Book"**

On August 30, 2019, Rivera moved for the immediate production of *Brady* material, regarding witnesses to whom the Government had shown photographs of Rivera but who did not positively identify him. Dkt. 146 ("Def. *Brady* Mem."). This motion related to the Government's use of a "Photo Book" or "Flip Book" consisting of numerous individual photos.

As described by the Government, iterations of the Photo Book had been reviewed by witnesses and victims, who had been asked whether they recognized anyone in it. Dkt. 166 ("Gov't *Brady* Mem.") at 2. In a July 16, 2019 letter to Rivera's counsel, the Government had stated that it was "aware of several instances in which a victim or witness was shown a version of the Photo Book containing Rivera's photograph, but failed to identify him"; the Government promised to "provide more specific information about those negative identifications in a forthcoming letter." *See* Dkt. 148 ¶ 4 & Ex. 2. In an August 1, 2019 letter to the Government, Rivera's counsel had requested information regarding these "negative identifications," *see id.* ¶ 5 & Ex. 3, but had not yet received it, *see* Def. *Brady* Mem. at 2–3. Rivera's August 30, 2019 motion sought to learn the identity of these victims or witnesses, describing these "negative identifications" of Rivera as "quintessential *Brady* material." Def. *Brady* Mem. at 3. Rivera argued that *Brady v. Maryland*, 373 U.S. 83 (1963), required the immediate disclosure of the names of these persons, at least on an attorneys-eyes-only basis. Rivera opposed the Government's alternative proposal, on account of stated concerns regarding witness safety, to identify three weeks before trial the persons who had failed to identify Rivera. Def. *Brady* Mem. at 7–10.

On September 20, 2019, the Government opposed the motion, explaining the content and use of the Photo Book. Gov't *Brady* Mem. It stated that the Photo Book contains photographs of "persons of interest" in its broader investigation, including "potential defendants, subjects, victims, and witnesses"; and that its typical practice is to present the Photo Book to a witness or victim "toward the end of an interview" with the instruction to "stop at the photograph of any individual that person recognized." *Id*. at 2. The photographs in the Photo Book, the Government stated, "have been taken from law enforcement and state department of motor vehicle databases, as well as social media." *Id*. The Photo Book "has never contained so-called 'dummy' or 'filler' photographs—*i.e.*, photographs of individuals who were entirely unconnected to the investigation." *Id*. The number of pictures in the Photo Book has grown over time, from approximately 31 to approximately 99, as the Government's investigation grew. *Id*. at 3.

As to Rivera specifically, the Government reported that it was aware of approximately 12 victims or witnesses who had positively identified Rivera using the Photo Book, and that it had notified Rivera's counsel of these identifications and of the versions of the Photo Book used in connection with them. *Id.* at 4. The Government further reported that in several instances, a person reviewing the Photo Book had not positively identified Rivera. *Id.* The Government stated that none of these persons were victims or witnesses to the conspiracy charged in Count One. *Id*. at 1. The Government stated that, although it did not regard these non-identifications as exculpatory, it had promised Rivera's counsel, in a letter dated September 11, 2019, that, three weeks before trial, it would identify the persons who had failed to do so. *Id*. at 4–6.

In an order issued on October 4, 2019, the Court denied Rivera's *Brady* motion, insofar as the motion sought disclosure more than three weeks before trial of persons who had failed to

3

identify Rivera from the Photo Book. Dkt. 179. The Court relied on the Government's factual representation that none of the people who had failed to positively identify Rivera were victims or witnesses to conduct charged in Count One. On this representation, the Court held that "*Brady* does not oblige the Government to disclose the names of these persons." *Id*. at 2. However, the Court held, if "the Government later determines that any person who failed to identify Rivera from a Photo Book containing him was either a witness to an aspect of, or a victim (whether or not charged) of, the sexual trafficking conspiracy alleged in Count One, the Court expects that the Government will disclose forthwith to Rivera's counsel the name of such person and the date on and circumstances under which the person failed to identify Rivera." *Id*.

## C. Rivera's Suppression Motion Based on the "Photo Book"

On October 4, 2019, Rivera filed a suppression motion arising out of the Government's account of its use of the Photo Book. Dkt. 176; Dkt. 177 ("Walsh Decl."); Dkt. 188 ("Def. Mem."). Rivera moved to suppress any in-court identifications of him by any of the approximately 12 victims or witnesses who had reviewed the Photo Book and had recognized Rivera's photograph. Rivera argued that the Government's use of the Photo Book in connection with these persons had been unduly suggestive and tainted any later identification procedure, making an in-court identification of him by a person who had reviewed the Photo Book a denial of due process. Walsh Decl. ¶¶ 3–7. In the alternative, Rivera sought an evidentiary hearing on this issue. *Id*. ¶ 8.

On October 18, 2019, the Government filed a memorandum of law in opposition. Dkt. 193 ("Gov't Mem.").

On October 23, 2019, in response to a request from the Court, Rivera's counsel supplied the Court with a disc containing duplicates of eight versions of the Photo Book.

## II. Discussion

Rivera moves to suppress in-court identifications by witnesses who previously reviewed the Government's "Photo Book." Because the Government has agreed not to offer into evidence the fact of any out-of-court identification by such a witness, Gov't Mem. at 1, 3, 5 n.1, 10, the pretrial identifications made by witnesses upon their review of the Photo Book are not at issue.

### A. Applicable Legal Principles

Rivera's motion is governed by familiar principles. "When a defendant challenges the admissibility of identification testimony given by a witness who made a pretrial identification, we conduct a two-part inquiry, asking first whether the pretrial identification procedures were unduly suggestive and, if so, whether the identification is 'nonetheless independently reliable.'" *United States v. Marsh*, 644 F. App'x 5, 7 (2d Cir. 2016) (quoting *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001)); *United States v. Salameh*, 152 F.3d 88, 126 (2d Cir. 1998).

In the first step in this inquiry, a pretrial identification procedure such as a police-arranged photo array is "unduly suggestive" when a procedure "give[s] rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968); *see also United States v. Hemmings*, 482 F. App'x 640, 646 (2d Cir. 2012). In the context of a photo array, familiar examples of a suggestive presentation include the "use of a very small number of photographs," "the use of suggestive comments," or the display of the accused's photograph in a way that "so stood out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit." *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992) (internal quotation marks and alterations omitted).

If the pretrial identification procedure is not found unduly suggestive, there is no occasion to undertake the second step of the inquiry, into whether the witness's in-court identification is nonetheless independently reliable. *Kelly*, 257 F.3d at 133. That is because

5

where the pretrial identification was not unduly suggestive, it does not endanger the fairness of the trial, which is the principal "due process focus." *Wray v. Johnson*, 202 F.3d 515, 524 (2d Cir. 2000); *see also United States v. Bautista*, 23 F.3d 726, 729–30, 731 n.7 (2d Cir. 1994) (applying the rule that exclusion is warranted when a pretrial identification is "*both* produced through an unnecessarily suggestive procedure *and* unreliable" and concluding that "[b]ecause we find that the pretrial identification was not unnecessarily suggestive, we need not address the question whether the identification was reliable" (emphasis in original)). In this circumstance, "any question as to the reliability of the witness's [in-trial] identification goes to the weight of the evidence, not its admissibility." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990).

Where the pretrial identification procedure was unduly suggestive, exclusion of the eyewitness's identification is not automatic. The Court instead proceeds to the second step, and inquires whether the in-court identification is independently reliable, so as to vitiate any taint from the suggestive procedure. *Kelly*, 257 F.3d at 135.

The Court assesses independent reliability by considering five factors, known as the "*Biggers*" factors: "(1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the identification." *United States v. Arroyo*, 600 F. App'x 11, 14–15 (2d Cir. 2015); *see also Neil v. Biggers*, 409 U.S. 188, 199–200 (1972); *United States v. Kwong*, 69 F.2d 663, 666 (2d Cir. 1995); *Jarrett v. Headley*, 802 F.2d 34, 42 (2d Cir. 1986). "[I]f the indicia of reliability are strong enough to outweigh the corrupting influences of the police-arranged suggestive circumstances, the identification evidence will be admitted, and the jury will

6

ultimately determine its worth." *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012); *see also Manson v. Brathwaite*, 432 U.S. 98, 114–17 (1977) (police use of an unnecessarily suggestive photo array did not require exclusion of resulting identification in light of, *inter alia*, witness's ability to view the suspect at the time of the offense); *United States v. Fernandez*, 456 F.2d 638, 642 (2d Cir. 1972) (declining to suppress identification despite use of suggestive photo array where, *inter alia*, witnesses to bank robbery had excellent opportunity to view perpetrator).

### B. Analysis of Rivera's Claim

Measured against these familiar principles, Rivera's challenge to in-court identifications by persons who positively identified him during their review of the "Photo Book" fails at the first step. That is because the Court has reviewed the various iterations of the Photo Book, and it is not, at all, suggestive.

The Photo Book is merely a sequential compilation of dozens of photographs, drawn from state court and motor vehicle records and/or social media. *See* Gov't Mem. at 3. The photographs are of men and women of diverse races. Each photograph is, fully or nearly fully, a frontal shot of the subject's face and/or face and upper body. No identifying language or other "signposts" highlight any photograph or set any photograph apart from the others.

Of particular relevance here, there is nothing about the Photo Book's design, construct, or sequencing that would tend to lead a person to pick out Rivera, let alone identify him as a person who participated in the conspiracy charged in Count One. Indeed, when the Court first reviewed the iteration (version 3) of the Photo Book that the defense focuses on as being impermissibly suggestive, Def. Mem. at 6–8, the Court did so unaware of which photograph was Rivera's. Nothing about that photograph (#44 in that version of the Photo Book) stood out in any way from the 50 others in that version of the Photo Book. *See Marsh*, 644 Fed. App'x at 7 (finding six-photo array not suggestive when picture of accused did not "so [stand] out from all the other

7

photographs so as to suggest" person depicted "was more likely to be the culprit" (quoting *Maldonado-Rivera*, 922 F.2d at 974)); *Bautista*, 23 F.3d at 731 (six-photo array not impermissibly suggestive even though photo of defendant was "slightly brighter and slightly more close-up than the others").[1]

Nor is there a factual basis on which to claim that the manner in which the Photo Book was used in connection with witnesses or victims was suggestive, as to Rivera or otherwise. The Government has proffered that before reviewing the Photo Book, the persons shown it were generally told that the mere inclusion of an individual's photograph in the Photo Book did not

---

[1] Rivera's arguments to the contrary are easily put to one side. Rivera notes that of the 51 photographs in version 3 of the Photo Book, only 17 are male. Def. Mem. at 6. That number, however, far exceeds the number of photographs in "six-pack" photo arrays that are routinely held sufficient in size to be non-suggestive. *See, e.g.*, *United States v. Thai*, 29 F.3d 785, 808 (2d Cir. 1994) (collecting cases). Rivera further seeks to prune this number by situating his photograph in a group of five photos apparently drawn from social media sites, as opposed to the other 12, which Rivera infers are derived from criminal mug shots or motor-vehicle records. Def. Mem. at 6. Rivera, however, does not make clear why this distinction matters, let alone how the fact that his photograph derives from social media as opposed to a criminal mug shot would tend to highlight him as a likely culprit. Of the remaining five, Rivera notes that two appear to be white men and one appears to be a darker-skinned African American, leaving only two "Latin/Hispanic male photos." *Id*. That critique, however, is inapposite. Where a witness has identified a perpetrator by a given characteristic (*e.g.*, race or skin color), a photo array that does not control for that characteristic is fairly critiqued as suggestive. *See, e.g.*, *United States v. Eltayib*, 88 F.3d 157, 166–67 (2d Cir. 1996) (holding photo array improperly suggestive where only defendant's photograph approximated witness's description of perpetrator's hairstyle or skin tone); *Fernandez*, 456 F.2d at 641 (holding six-photo array impermissibly suggestive where none of the other photographs "even approached" defendant's skin tone or shared defendant's hairstyle); *United States ex rel. Cannon v. Montanye*, 486 F.2d 263, 267 (2d Cir. 1973) (holding that a line-up would be impermissibly suggestive if, on remand, it were established that defendant was the only individual wearing the distinctive clothing that victim reported was worn by her attacker). But, as explained above, the identification procedure here was not prompted by a witness's identification of an as-yet unidentified perpetrator with a particular characteristic or characteristics. The Photo Books instead were used across the board, with the question put merely being whether the witness recognized anybody in the book, for any reason. Notably, Rivera does not allege that any witness, before being shown the Photo Book, had stated that an unidentified perpetrator was a Latin or Hispanic male, or otherwise shared a physical feature with Rivera, and the Government represents that it is unaware of any such circumstance. Gov't Mem. at 16.

necessarily mean that they were a person of interest in the investigation, and that none were asked to identify a particular perpetrator. Gov't Mem. at 13. Rather, each was asked only to identify anyone they recognized and, if so, to say how they recognized them. *Id.* Rivera has not made a concrete factual allegation of any contrary practice.

Under these circumstances, the assembled case law gives Rivera no basis on which to allege suggestive—let alone unduly suggestive—conduct by the Government in its dealings with the approximately 12 persons, who, on sequential review of the Photo Book, alerted to Rivera's photograph. On the contrary, the case law, in this District and beyond, has consistently approved the use of similar photo books used in the manner here. As Judge Pitman has put the point: "There is nothing inherently suggestive about a sequential display of a group of photographs." *Wagner v. Ercole*, No. 06 Civ. 814 (HBP), 2009 WL 6443854, at *10 (S.D.N.Y. June 12, 2009) (upholding sequential presentation of six photographs; collecting cases similarly holding; and collecting scholarly authority to the effect that sequential review of photographs is less likely to result in false identifications), *report and recommendation adopted*, No. 06 Civ. 814 (GBD), 2010 WL 1904329 (S.D.N.Y. May 10, 2010). And, as Judge Marrero has recognized, when a display of numerous photographs is shown sequentially, without any individual photograph highlighted, the viewer is "more likely to compare each person . . . only with their memory of the offender, rather than choose whichever person looks the most like what the witness remembers." *United States v. Hall*, No. 14 Cr. 105 (VM), 2014 WL 2464943, at *2 (S.D.N.Y. 2014) (internal quotation marks omitted) (upholding sequential presentation and noting that "courts have found that photo arrays are less suggestive when shown one-by-one"); *see also United States v. Rodriguez*, No. 12 Cr. 45 (WMS–HBS), 2013 WL 6057862, at *3 (W.D.N.Y. Nov. 13, 2013) (upholding as non-suggestive the presentation of a three-ring notebook containing 35

9

photographs to a witness for sequential review and noting that "[w]hen the agents presented the interviewees with the photo book, they asked the interviewees only to identify anyone they recognized and how they recognized them"); *United States v. Quinones*, No. 13 Cr. 83 (WMS–HBS), 2015 WL 6696484, at *5–6 (W.D.N.Y. Nov. 2, 2015) (same); *Garry v. Greiner*, No. 01 Civ. 0848 (AKH), 2003 WL 21436217, at *4–5 (S.D.N.Y. June 19, 2003) (upholding as not suggestive witness's sequential review of photo books containing approximately 300 photographs).

Having found nothing suggestive about the Photo Book or its use, the Court accordingly has no occasion to reach the second prong of the inquiry: whether the witnesses and victims in question had an independent basis to make a reliable identification. *Kelly*, 257 F.3d at 133; *Bautista*, 23 F.3d at 729–30, 731 n.7. The Court notes, however, that Rivera's arguments as to this prong largely focus on "Witness-1," to whom Rivera refers as the "Single Interaction Identification Witness." But those arguments are moot. In its memorandum of law, the Government has agreed "not to seek the introduction of Witness-1's positive identification of Rivera or ask Witness-1 to make an in-court identification of Rivera at trial." Gov't Mem. at 10.

Finally, the Court rejects Rivera's alternative request for an evidentiary hearing on his motion, *see United States v. Wade*, 388 U.S. 218, 240 (1967), because Rivera has not alleged facts warranting an evidentiary hearing. While such a hearing is generally advisable where material facts are in dispute, there is no automatic right to such a hearing, and none is required where there is no bona fide factual dispute. *See, e.g.*, *United States v. Brown*, No. 18-434, 2019 WL 3857605 (2d Cir. Aug. 16, 2019) (district court properly declined to conduct evidentiary hearing as to whether identification procedure was unduly suggestive where there was no disputed issue of fact regarding validity of procedure described in detective's affidavit); *United*

*States v. Durant*, No. 18 Cr. 702 (CM), 2019 WL 2236233, at *3 (S.D.N.Y. May 15, 2019) (defendant "not entitled to a *Wade* hearing unless he makes a sufficient pretrial showing of impropriety regarding the challenged identification evidence" (internal quotation marks omitted)); *United States v. Berganza*, No. 03 Cr. 987 (DAB), 2005 WL 372045, at *9–10 (S.D.N.Y. Feb. 16, 2005) (evidentiary hearing not required where defendant fails to "allege facts supporting his contention that the identification procedures used were impermissibly suggestive. A 'threshold showing' of suggestiveness is necessary in order to trigger a *Wade* hearing" (citation omitted)).

Here, as to the suggestiveness prong, Rivera, in seeking a hearing, relies on the fact that, in one of its disclosure letters, the Government stated that the persons who were shown the Photo Book "would *usually* be told, *in sum and substance*, that the mere inclusion of a person's photograph in the Photo Book did not mean that they were a person of interest in the investigation." Def. Mem. at 3 n.3 (emphases added in defense memorandum). But as the Government has since explained, the qualified locutions in that letter were made in an abundance of caution, not to signal that contrary statements were made to certain witnesses. Gov't Mem. at 14. An admonition along these lines, the Government further represents, was the standard practice of the law enforcement team in this case. *Id.* Regardless, as the above case law reflects, even if that introductory caveat were not given in a particular instance, such that the witness was asked merely to review the Photo Book and to state whether he or she recognized any person depicted in it, that practice would not make the identification procedure suggestive.

## CONCLUSION

For the foregoing reasons, the Court denies Rivera's motion to suppress witnesses' in-court identifications at trial.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 176.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: December 3, 2019
      New York, New York