

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

## Request To Be Filed Under Seal

June 7, 2021

**By Email**
Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

Re:   *United States v. Justin Rivera*, 19 Cr. 131 (PAE)

Dear Judge Engelmayer:

Pursuant to the Court's request, the Government respectfully submits this letter to identify potential evidence the Government may offer at trial should defense counsel, through defense exhibits, argument or cross-examination of Natalie Rodriguez, suggest that, in or about the summer of 2015, Justin Rivera, the defendant, "encouraged Natalie to take a break" and "stay in Florida" for benign purposes or out of genuine care for her well-being. Trial Tr. 74:7-11. As set forth below, if defense counsel in any such way suggests that the defendant had a benign purpose in "encouraging" Ms. Rodriguez to stay in Florida, or in choosing not to demand that she return to New York to resume working for him, the Government may elicit the evidence summarized below during its case-in-chief or a rebuttal case and ask the jury during closing arguments to draw an inference that the defendant "encouraged Natalie to take a break" to stop her from cooperating with a law enforcement investigation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

### I. The Defendant's Opening Statement

During their opening statement, defense counsel stated the following:

> The evidence will show that Justin encouraged Natalie to take a break. Justin never tried to keep Natalie from leaving New York or from leaving him. Instead, he even encouraged her to stay in Florida and take a break.
>
> Contrary to what the government said about Natalie's drug addiction, the evidence will show that Justin was trying to convince Natalie to stop using heroin and encouraging her to get clean.

Trial Tr. 74:7-15. Based on this statement, the Government believes it is likely that defense counsel will seek to elicit through cross examination of Ms. Rodriguez or argue before the jury that the defendant maintained a consensual relationship with Ms. Rodriguez and benevolently wished for Ms. Rodriguez to stay in Florida so she could receive drug addiction treatment.

## II. Chronology of Relevant Events and Evidence

### A. The June 3, 2015 Triple Homicide

On June 3, 2015, gunshots were fired at a sport utility vehicle parked outside a residence located at 46 Davidson Street, Wyandanch, New York (the "Wyandanch House"). The sport utility vehicle was owned and primarily used by ▮▮▮▮▮▮▮▮, an occupant of the Wyandanch House, at the time of the shooting. ▮▮▮▮ however, was not in the vehicle when bullets were fired into it. There were instead four other occupants in the car, three of whom died and one of whom suffered serious injuries.





### D. The Kidnapping of Ms. Rodriguez

The Government expects that, if asked, Ms. Rodriguez will testify that, on or about June 19, 2015, Ms. Rodriguez was kidnapped, brutally beaten, and questioned by her kidnappers about the defendant's potential involvement in the June 3 shooting.[1] The next day, Ms. Rodriguez was released from the kidnappers' custody. The defendant, Randall, and Dajia Perez then went to see Ms. Rodriguez, where the defendant questioned Ms. Rodriguez about what, if anything, she had told her kidnappers about the defendant's whereabouts. Trial Tr. 275.

### E. Ms. Rodriguez's Cooperation with Law Enforcement Relating to the Kidnapping

SCPD detectives soon opened an investigation into Ms. Rodriguez's kidnapping. The Government expects that, if asked, Ms. Rodriguez would testify that the defendant directed her not to cooperate with SCPD detectives relating to the kidnapping investigation, expressing to her (in substance) that he did not want her to cooperate with law enforcement because he wanted to exact retribution for the kidnapping on his own. With Ms. Rodriguez's cooperation, law enforcement arrested the kidnappers, including Peterson, on or about July 3, 2015.

### F. Ms. Rodriguez Goes to Florida

On or about July 7, 2015, Ms. Rodriguez's parents confronted Ms. Rodriguez about her heroin use and, coupled with their concern for her safety following her kidnapping, directed Ms. Rodriguez to go to Florida. While in Florida, Ms. Rodriguez attended a drug rehabilitation program and stayed in touch with the defendant. In or about August 2015, Ms. Rodriguez returned from Florida and again began working as a prostitute for the defendant.

### III. Relevant Argument and Inferences

Should the defendant seek to cross-examine Ms. Rodriguez about or offer any argument suggesting the defendant encouraged her to remain in Florida for a benign purpose, the Government reserves the right to counter this line of attack by asking the jury to infer that the

---

[1] Although the Government does not presently intend to elicit from Ms. Rodriguez the identities of her kidnappers, the Government expects that, if asked, Ms. Rodriguez would identify them as ███████████████████████████.

defendant's true intentions included significantly reducing the possibility that Ms. Rodriguez, who ▮▮▮ had begun cooperating with law enforcement about the June 19 kidnapping, ▮▮▮

For example, the defense could open the door by suggesting that the defendant's attitude toward Ms. Rodriguez's stay in Florida was "encouraging," supportive, or even uncharacteristic of a coercive relationship. If the defense opens the door in such a manner, the Government may seek to offer evidence from which the jury could draw the opposing inference that the defendant was permissive of Ms. Rodriguez's Florida stay because he feared that, ▮▮▮ The Government may also ask the jury, for instance, to infer that the defendant had no problem with Ms. Rodriguez remaining in Florida for a short time period because, in the aftermath of her kidnapping, the bruises to Ms. Rodriguez's face made her useless to the defendant as a prostitute. ▮▮▮

[Intentionally Left Blank]

IV. **Request for Sealing**

████████████████████████████████████████ the Government respectfully requests this letter be filed under seal.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

by: ___/s/_____
Daniel H. Wolf
Thomas S. Burnett
Negar Tekeei
Assistant United States Attorneys
(212) 637-2337 / 1064 / 2482

cc: Defense counsel of record