UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                              :
UNITED STATES OF AMERICA,                                     :
                                                              :
            -v-                                               :          19-CR-131-02 (PAE)
                                                              :
JUSTIN RIVERA,                                                :                  ORDER
                                                              :
                        Defendant.                            :
                                                              :
------------------------------------------------------------------ X

PAUL A. ENGELMAYER, District Judge:

     Attached to this Order are the following Court Exhibits:

- Exhibit 1: A redacted letter filed by the Government on June 7, 2021.

- Exhibit 2: A redacted version of an email from the defendant's mother, Leticia Rivera, sent to the Court on June 10, 2021.

- Exhibit 3: The draft jury charge dated June 10, 2021.

- Exhibit 4: The jury charge discussed on June 11, 2021.

- Exhibit 5: The verdict form.

- Exhibit 6: The Government's witness list.

- Exhibit 7: The trial indictment.

- Exhibit 8: The Government's PowerPoint presentation used during its closing argument.

- Exhibit 9: The final jury charge read into the record on June 11, 2021.

- Exhibit 10: The Government's PowerPoint presentation used during its rebuttal argument.

SO ORDERED.

Dated: June 14, 2021
       New York, New York

PAUL A. ENGELMAYER
United States District Judge

**COURT EXHIBIT 1**



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

<u>Request To Be Filed Under Seal</u>

June 7, 2021

**By Email**
Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

     Re:    *United States v. Justin Rivera*, 19 Cr. 131 (PAE)

Dear Judge Engelmayer:

     Pursuant to the Court's request, the Government respectfully submits this letter to identify potential evidence the Government may offer at trial should defense counsel, through defense exhibits, argument or cross-examination of Natalie Rodriguez, suggest that, in or about the summer of 2015, Justin Rivera, the defendant, "encouraged Natalie to take a break" and "stay in Florida" for benign purposes or out of genuine care for her well-being.  Trial Tr. 74:7-11.  As set forth below, if defense counsel in any such way suggests that the defendant had a benign purpose in "encouraging" Ms. Rodriguez to stay in Florida, or in choosing not to demand that she return to New York to resume working for him, the Government may elicit the evidence summarized below during its case-in-chief or a rebuttal case and ask the jury during closing arguments to draw an inference that the defendant "encouraged Natalie to take a break" to stop her from cooperating with a law enforcement investigation ███████████████████████████████
███████████████████

## I.  The Defendant's Opening Statement

     During their opening statement, defense counsel stated the following:

> The evidence will show that Justin encouraged Natalie to take a break. Justin never tried to keep Natalie from leaving New York or from leaving him. Instead, he even encouraged her to stay in Florida and take a break.

> Contrary to what the government said about Natalie's drug addiction, the evidence will show that Justin was trying to convince Natalie to stop using heroin and encouraging her to get clean.

Trial Tr. 74:7-15.  Based on this statement, the Government believes it is likely that defense counsel will seek to elicit through cross examination of Ms. Rodriguez or argue before the jury that the defendant maintained a consensual relationship with Ms. Rodriguez and benevolently wished for Ms. Rodriguez to stay in Florida so she could receive drug addiction treatment.

## II. Chronology of Relevant Events and Evidence

### A. The June 3, 2015 Triple Homicide

On June 3, 2015, gunshots were fired at a sport utility vehicle parked outside a residence located at 46 Davidson Street, Wyandanch, New York (the "Wyandanch House").  The sport utility vehicle was owned and primarily used by ███████████, an occupant of the Wyandanch House, at the time of the shooting.  ████████ however, was not in the vehicle when bullets were fired into it.  There were instead four other occupants in the car, three of whom died and one of whom suffered serious injuries.





### D.  The Kidnapping of Ms. Rodriguez

The Government expects that, if asked, Ms. Rodriguez will testify that, on or about June 19, 2015, Ms. Rodriguez was kidnapped, brutally beaten, and questioned by her kidnappers about the defendant's potential involvement in the June 3 shooting.[1]  The next day, Ms. Rodriguez was released from the kidnappers' custody.  The defendant, Randall, and Dajia Perez then went to see Ms. Rodriguez, where the defendant questioned Ms. Rodriguez about what, if anything, she had told her kidnappers about the defendant's whereabouts.  Trial Tr. 275.

### E.  Ms. Rodriguez's Cooperation with Law Enforcement Relating to the Kidnapping

SCPD detectives soon opened an investigation into Ms. Rodriguez's kidnapping.  The Government expects that, if asked, Ms. Rodriguez would testify that the defendant directed her not to cooperate with SCPD detectives relating to the kidnapping investigation, expressing to her (in substance) that he did not want her to cooperate with law enforcement because he wanted to exact retribution for the kidnapping on his own.  With Ms. Rodriguez's cooperation, law enforcement arrested the kidnappers, including Peterson, on or about July 3, 2015.

### F.  Ms. Rodriguez Goes to Florida

On or about July 7, 2015, Ms. Rodriguez's parents confronted Ms. Rodriguez about her heroin use and, coupled with their concern for her safety following her kidnapping, directed Ms. Rodriguez to go to Florida.  While in Florida, Ms. Rodriguez attended a drug rehabilitation program and stayed in touch with the defendant.  In or about August 2015, Ms. Rodriguez returned from Florida and again began working as a prostitute for the defendant.

### III. Relevant Argument and Inferences

Should the defendant seek to cross-examine Ms. Rodriguez about or offer any argument suggesting the defendant encouraged her to remain in Florida for a benign purpose, the Government reserves the right to counter this line of attack by asking the jury to infer that the

---

[1] Although the Government does not presently intend to elicit from Ms. Rodriguez the identities of her kidnappers, the Government expects that, if asked, Ms. Rodriguez would identify them as ████████████████████████.

defendant's true intentions included significantly reducing the possibility that Ms. Rodriguez, who ███████████████████████████████████████████████████████████████ had begun cooperating with law enforcement about the June 19 kidnapping, ███████████████████████████████████████████

For example, the defense could open the door by suggesting that the defendant's attitude toward Ms. Rodriguez's stay in Florida was "encouraging," supportive, or even uncharacteristic of a coercive relationship. If the defense opens the door in such a manner, the Government may seek to offer evidence from which the jury could draw the opposing inference that the defendant was permissive of Ms. Rodriguez's Florida stay because he feared that,



The Government may also ask the jury, for instance, to infer that the defendant had no problem with Ms. Rodriguez remaining in Florida for a short time period because, in the aftermath of her kidnapping, the bruises to Ms. Rodriguez's face made her useless to the defendant as a prostitute.

[Intentionally Left Blank]

## IV.    Request for Sealing

██████████████████████████████████████████████████
██████████████████                              the Government respectfully requests this letter be filed
under seal.

                                        Respectfully submitted,

                                        AUDREY STRAUSS
                                        United States Attorney

                            by:  ____/s/_____
                                        Daniel H. Wolf
                                        Thomas S. Burnett
                                        Negar Tekeei
                                        Assistant United States Attorneys
                                        (212) 637-2337 / 1064 / 2482

cc:    Defense counsel of record

**COURT EXHIBIT 2**

**Engelmayer NYSD Chambers**

**From:**        Leticia Rivera ███████████████
**Sent:**        Thursday, June 10, 2021 7:07 AM
**To:**          Engelmayer NYSD Chambers
**Subject:**     J. Rivera Trial

CAUTION - EXTERNAL:


Good morning Your Honor,

I wanted to take a moment to speak with you regarding my sons trial and me being removed from the court building.

While I know there is no excuse for making such a mistake, however I need you to know that I in no way shape or form had anything on me to harm anyone.  I am a single female living in NJ who commutes late at night from work. There are a lot of crazy people in this world so I do carry some type of protection.

My phone was not taken at the front of the court house so I did not know it was an issue having my phone since I had my phone both days (last Thursday and Friday) Your honor,

My only desire this whole time was to support my son in this difficult time as a mother does. I am being kept out of the court room now, being told I can return once the witness is finished on the stand.
Your honor, I took the week off to be present during this trial and yet I have been sitting outside the court house since.

I thank you for your time and hope that you will reconsider this whole situation.


Sent from my iPhone
CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**COURT EXHIBIT 3**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                                  :

  UNITED STATES OF AMERICA               :

                              :

                -v-                     :           19 Cr. 131 (PAE)

                              :

  JUSTIN RIVERA,                     :

                              :

                    Defendant.    :

                              :
----------------------------------------------------------------------X

## JURY CHARGE

DRAFT FOR CHARGE CONFERENCE ON JUNE 10, 2021

[1]

CONTENTS

I.   **General Instructions** ..................................................................................................... **4**

   A.   Introductory Remarks ................................................................................................ 4

   B.   Role of the Court ....................................................................................................... 4

   C.   Role of the Jury ......................................................................................................... 5

   D.   Role of Counsel ......................................................................................................... 5

   E.   Sympathy or Bias ...................................................................................................... 6

   F.   All Persons Equal Before the Law ............................................................................ 7

   G.   Presumption of Innocence; Burden of Proof; Reasonable Doubt ............................ 8

   H.   What Is and Is Not Evidence .................................................................................... 9

   I.   Direct and Circumstantial Evidence ....................................................................... 10

   J.   Witness Credibility ................................................................................................. 11

   K.   Bias of Witnesses ................................................................................................... 12

   L.   Prior Inconsistent or Consistent Statements .......................................................... 13

   M.   Preparation of Witnesses ........................................................................................ 14

   N.   Law Enforcement Witnesses [if applicable] .......................................................... 15

   O.   Expert Witness ........................................................................................................ 15

   P.   Cooperating Witnesses ........................................................................................... 16

   Q.   Prior Convictions or Crimes of Witnesses ............................................................ 17

   R.   Imprisonment of Defendant [if applicable] ............................................................ 18

   S.   Stipulations of Fact ................................................................................................. 18

   T.   Stipulations of Testimony ...................................................................................... 18

   U.   Audio and Video Recordings; Transcripts ............................................................. 18

   V.   Use of Evidence Obtained Pursuant to Searches ................................................... 19

   W.   Use of Charts and Tables ........................................................................................ 20

   X.   Redaction of Evidentiary Items .............................................................................. 20

   Y.   Particular Investigative Techniques Not Required [if applicable] .......................... 20

   Z.   Uncalled Witnesses—Equally Available ............................................................... 21

   AA. Persons Not on Trial ............................................................................................... 21

   BB. Defendant's Right Not to Testify [if applicable] ................................................... 22

   CC. Defendant's Testimony [if applicable] ................................................................... 22

II.   **Substantive Instructions** ........................................................................................... **23**

   A.   The Indictment ........................................................................................................ 23

[2]

B.   Summary of the Indictment ................................................................................. 23

C.   Count One: Conspiracy to Commit Sex Trafficking by Force, Threats of Force, Fraud, or Coercion ................................................................................................................ 23

   1.   First Element: Existence of a Conspiracy ..................................................... 25

     a.   Objects of the Conspiracy ...................................................................... 27

     b.   Time and Scope of the Conspiracy ......................................................... 27

   2.   Second Element: Knowing and Willful Participation in the Conspiracy ..................... 28

   3.   Liability for Acts and Declarations of Co-Conspirators ............................................. 30

   4.   Sex Trafficking and Its Elements .................................................................... 31

     a.   First Element: Trafficking Act ................................................................ 32

     b.   Second Element: Knowledge or Reckless Disregard of Use of Force, Threats of Force, Fraud, or Coercion .......................................................................................... 35

     c.   Third Element: Interstate Commerce ....................................................... 39

D.   Venue ............................................................................................................ 40

E.   Time of Offense ............................................................................................. 41

**III. Deliberations of the Jury .................................................................................... 41**

A.   Right to See Exhibits and Hear Testimony ......................................................... 41

B.   Communication with the Court ........................................................................ 42

C.   Notes ............................................................................................................. 42

D.   Duty to Deliberate; Unanimous Verdict ............................................................. 42

E.   Verdict Form .................................................................................................. 43

F.   Duties of Foreperson ...................................................................................... 44

G.   Return of Verdict ............................................................................................ 44

**IV. Conclusion ........................................................................................................ 44**

[3]

I.    GENERAL INSTRUCTIONS

A.    **Introductory Remarks**

Members of the jury, you have now heard all of the evidence in the case as well as the final arguments of the parties.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

Now it is time for me to instruct you as to the law that governs the case.  There are three parts to these instructions.  First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case.  These instructions really would apply to just about any trial.  Second, I'll give you some specific instructions about the legal rules applicable to this particular case.  Third, I'll give you some final instructions about procedure.

Listening to these instructions may not be easy.  It is important, however, that you listen carefully and concentrate.  I ask you for patient cooperation and attention.  You'll notice that I'm reading these instructions from a prepared text.  It would be more lively, no doubt, if I just improvised.  But it's important that I not do that.  The law is made up of words, and those words are very carefully chosen.  So when I tell you the law, it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two.  But for now, listen carefully and try to concentrate on what I'm saying.

B.    **Role of the Court**

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and to apply them to the facts as you determine them.  With respect to legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You must not substitute your own notions or opinions of what the law is or ought to be.

[4]

### C.      Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Do not conclude from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case.

It is your sworn duty, and you have taken the oath as jurors, to determine the facts.  Any opinion I might have regarding the facts is of absolutely no consequence.

### D.      Role of Counsel

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  It is my job to rule on those objections.  Therefore, why an objection was made or why I ruled on it the way I did is not your business.  You should draw no inference from the fact that an attorney objects to any evidence.  Nor should you draw any inference from the fact that I might have sustained or overruled an objection.

The personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed reactions of any kind to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

[5]

From time to time, the lawyers and I had conferences out of your hearing. These conferences involved procedural and other matters, and none of the events relating to these conferences should enter into your deliberations at all.

### E.      Sympathy or Bias

Under your oath as jurors you are not to be swayed by sympathy or prejudice. All of us, no matter how hard we try, tend to look at others and weigh what they have to say through the lens of our own experience and background. We each have a tendency to stereotype others and make assumptions about them. Often we see life and evaluate evidence through a clouded filter that tends to favor those like ourselves. You must do the best you can to put aside such stereotypes, for all litigants and witnesses are entitled to a level playing field in which we do the best we can to put aside our stereotypes and prejudices. You are to be guided solely by the evidence in this case, and the crucial, bottom-line question that you must ask yourselves as you sift through the evidence is: has the Government proven the guilt of the defendant beyond a reasonable doubt?

It is for you alone to decide whether the Government has proven that the defendant is guilty of the crimes charged. You must decide solely on the basis of the evidence presented, subject to the law as I explain it to you. It must be clear to you that once you let fear or prejudice, or bias or sympathy interfere with your thinking, there is a risk that you will not arrive at a true and just verdict.

If you have a reasonable doubt as to the defendant's guilt, you should not hesitate for any reason to find a verdict of acquittal for the defendant. But on the other hand, if you should find that the Government has met its burden of proving the defendant's guilt beyond a reasonable doubt, you should not hesitate, because of sympathy or any other reason to render a verdict of guilty.

[6]

The question of possible punishment of a defendant is of no concern to the jury and should not enter into or influence your deliberations. The duty of imposing sentence rests exclusively upon the Court. Your function is to weigh the evidence in the case and to determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such evidence. Under your oath as jurors, you cannot allow a consideration of the punishment which may be imposed upon a defendant, if he is convicted, to influence your verdict, in any way, or, in any sense, enter into your deliberations.

Similarly, it would be improper for you to allow any feelings you might have about the nature of the crime charged to interfere with your decision-making process. Your verdict must be based exclusively upon the evidence or the lack of evidence in the case.

### F.      All Persons Equal Before the Law

In reaching your verdict, you must remember that all parties stand equal before a jury in the courts of the United States. The fact that the Government is a party and the prosecution is brought in the name of the United States does not entitle the Government or its witnesses to any greater consideration than that accorded to any other party. By the same token, you must give it no less deference. The Government and the defendant stand on equal footing before you.

It would be improper for you to consider, in reaching your decision as to whether the Government sustained its burden of proof, any personal feelings you may have about the defendant's race, national origin, sex, or age. All persons are entitled to the same presumption of innocence, and the Government has the same burden of proof with respect to all persons. Your verdict must be based solely on the evidence or the lack of evidence.

[7]

### G.        Presumption of Innocence; Burden of Proof; Reasonable Doubt

Now I will instruct you on the presumption of innocence—the Government's burden of proof in this case.  The defendant has pleaded not guilty.  By doing so, he denies the charges in the Indictment.  Thus, the Government has the burden of proving the charges against the defendant beyond a reasonable doubt.  A defendant does not have to prove his innocence.  On the contrary, he is presumed to be innocent of the charge contained in the Indictment.  This presumption of innocence was in the defendant's favor at the start of the trial, continued in his favor throughout the entire trial, is in his favor even as I instruct you now, and continues in his favor during the course of your deliberations in the jury room.

It is removed if and only if you, as members of the jury, are satisfied that the Government has sustained its burden of proving the guilt of the defendant beyond a reasonable doubt.

The question that naturally comes up is—what is a reasonable doubt?  The words almost define themselves.  It is a doubt founded in reason and arising out of the evidence in the case, or the lack of evidence.  It is doubt that a reasonable person has after carefully weighing all the evidence.  Reasonable doubt is a doubt that appeals to your reason, your judgment, your experience, and your common sense.  Reasonable doubt does not mean beyond all possible doubt.  It is practically impossible for a person to be absolutely and completely convinced of any disputed fact that by its nature is not susceptible of mathematical certainty.  In consequence, the law in a criminal case is that it is sufficient if the guilt of a defendant is established beyond a reasonable doubt, not beyond all possible doubt.

If, after a fair and impartial consideration of all the evidence, you are not satisfied of a defendant's guilt, if you do not have an abiding conviction of that defendant's guilt—in sum, if you have such a doubt as would cause you, as prudent persons, to hesitate before acting in matters

[8]

of importance to yourselves—then you have a reasonable doubt, and in that circumstance it is your duty to acquit that defendant.

On the other hand, if after a fair and impartial consideration of all the evidence you do have an abiding belief of a defendant's guilt, such a belief as you would be willing to act upon without hesitation in important matters in the personal affairs of your own life, then you have no reasonable doubt, and under such circumstances it is your duty to convict that defendant.

The Government is not required to prove the essential elements of an offense by any particular number of witnesses. The testimony of a single witness may be sufficient to convince you beyond a reasonable doubt of the existence of the essential elements of the offense you are considering if you believe that the witness has truthfully and accurately related what he or she has told you.

### H.      What Is and Is Not Evidence

In determining the facts, you must rely upon your own recollection of the evidence. The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, and the stipulations of the parties.

However, testimony that I have stricken or excluded is not evidence and may not be considered by you in rendering your verdict. Also, if certain testimony was received for a limited purpose, you must follow the limiting instructions I have given, and use the evidence only for the purpose I indicated.

The only exhibits that are evidence in this case are those that were received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials that were used only to refresh a witness's recollection.

[9]

As I told you at the start of this case, statements and arguments by lawyers are not evidence, because the lawyers are not witnesses.  What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict.  However, if your recollection of the facts differs from the lawyers' statements, it is your recollection that controls.

For the same reasons, you are not to consider a lawyer's questions as evidence.  It is the witnesses' answers that are evidence, not the lawyers' questions.

Finally, any statements that I may have made do not constitute evidence.  It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

## I.        Direct and Circumstantial Evidence

Generally, as I mentioned at the start of the case, there are two types of evidence that you may consider in reaching your verdict.  One type of evidence is direct evidence.  Direct evidence is testimony by a witness about something she knows by virtue of her own senses—something she has seen, felt, touched, or heard.  For example, if a witness testified that when she left his house this morning, it was raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence from which you may infer the existence of certain facts.  To use the same example I gave you at the start of trial:  Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day.  Assume that the courtroom blinds were drawn and you could not look outside.  As you were sitting here, someone walked in with an umbrella, which was dripping wet.  Then a few minutes later another person entered with a wet raincoat.  Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining, and no one has testified that it is raining.  So you have no direct evidence of that fact.

[10]

But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

As you can see, the matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a logical, factual conclusion which you might reasonably draw from other facts that have been proven. Many material facts—such as what a person was thinking or intending—can rarely be proved by direct evidence.

Circumstantial evidence is as valuable as direct evidence. The law makes no distinction between direct and circumstantial evidence, but simply requires that before convicting a defendant, the jury must be satisfied of a defendant's guilt beyond a reasonable doubt, based on all the evidence in the case, circumstantial and direct.

There are times when different inferences may be drawn from the evidence. The Government asks you to draw one set of inferences. The defendant may ask you to draw another. It is for you, and for you alone, to decide what inferences you will draw.

**J.     Witness Credibility**

You have had the opportunity to observe the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

You should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, the relationship of the witness to the controversy and the parties, the witness's bias or impartiality, the

[11]

reasonableness of the witness's statement, the strength or weakness of the witness's recollection viewed in the light of all other testimony, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case. You should use your common sense, your good judgment, and your everyday experiences in life to make your credibility determinations.

In passing upon the credibility of a witness, you may also take into account any inconsistencies or contradictions as to material matters in his or her testimony.

If you find that any witness has willfully testified falsely as to any material fact, you have the right to reject the testimony of that witness in its entirety. On the other hand, even if you find that a witness has testified falsely about one matter, you may reject as false that portion of his or her testimony and accept as true any other portion of the testimony which commends itself to your belief or which you may find corroborated by other evidence in this case. A witness may be inaccurate, contradictory, or even untruthful in some aspects, and yet be truthful and entirely credible in other aspects of his or her testimony.

The ultimate question for you to decide in passing upon credibility is: did the witness tell the truth before you? It is for you to say whether his or her testimony at this trial was truthful in whole or in part.

### K.    Bias of Witnesses

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witnesses may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a

[12]

particular party.  You should also take into account any evidence of any benefit that a witness may receive from the outcome of the case.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.  In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness is interested in the outcome of the case does not mean he or she has not told the truth.  It is for you to decide from your observations and applying your common sense and experience and all the other considerations mentioned whether the possible interest of any witness has intentionally or otherwise colored or distorted his or her testimony.  You are not required to disbelieve an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

## L.        Prior Inconsistent or Consistent Statements

You have heard evidence that, at some earlier time, witnesses have said or done something that counsel argues is inconsistent with their trial testimony.

Evidence of a prior inconsistent statement was placed before you not because it is itself evidence of the guilt or innocence of the defendant, but only for the purpose of helping you decide whether to believe the trial testimony of a witness who may have contradicted a prior statement. If you find that the witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an

[13]

important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency; and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much weight, if any, to give to the inconsistent statement in determining whether to believe all, or part of, the witness's testimony.

You have also heard evidence that certain witnesses made earlier statements that were consistent with their trial testimony. Such statements were admitted into evidence not as independent evidence of guilt or innocence, but solely for whatever light they may shed on the witness's credibility. If you find that a witness had a motive to testify as he or she did, but also that he or she told the same story before he or she had that motive, you may take that into account in deciding whether the witness's interest or motive colored his or her testimony.

### M.   Preparation of Witnesses

You have heard evidence during the trial that witnesses had discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court. Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying, so that the witness can be made aware of the subjects that he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. In fact, it would be unusual for a lawyer to call a witness without such consultation. Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

[14]

### N.      Law Enforcement Witnesses [if applicable]

You have heard the testimony of several law enforcement officials.  The fact that a witness may be employed as a law enforcement official does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witness and to give to that testimony whatever weight, if any, you find it deserves.

### O.      Expert Witness

In this case, I have permitted an expert witness, Dr. Chitra Raghavan, a professor of forensic psychology at John Jay College, to express her opinion about matters that are in issue.  A witness may be permitted to testify to an opinion on those matters about which she has special knowledge, skill, experience, and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, her opinions, her reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning her opinion.  Nor should you substitute it for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.

[15]

### P.        Cooperating Witnesses

You have heard two witnesses, Dajia Perez and Natalie Rodriguez, testify that they have committed crimes and were testifying pursuant to a non-prosecution agreement with the Government.   And you have heard argument in the summations of counsel about so-called "cooperating" witnesses and whether or not you should believe them.

Experience will tell you that the Government frequently must rely on the testimony of witnesses who admit participating in crimes.  The Government must take its witnesses as it finds them and frequently must use such testimony in a criminal prosecution, because otherwise it would be difficult or impossible to detect and prosecute wrongdoers.

You may properly consider the testimony of such a cooperating witness.  Indeed, it is the law in federal courts that the testimony of a single cooperating witness may be enough in itself for a conviction, if the jury believes that the testimony establishes guilt beyond a reasonable doubt.

It is also the case that cooperating witness testimony is of such a nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.  The fact that a witness is cooperating with the Government can be considered by you as bearing upon her credibility.  The weight to be given to the fact of the witness's cooperation is up to you.  It does not follow, however, that simply because a person has admitted to participating in one or more crimes, she is incapable of giving truthful testimony.  Like the testimony of any other witness, cooperating witness testimony should be given such weight as it deserves in light of the facts and circumstances before you, taking into account the witness's demeanor and candor, the strength and accuracy of her recollection, her background, and the extent to which the testimony is or is not corroborated by other evidence in the case.  You are free to accept as much or as little of the witness's testimony as you find credible.

[16]

You may consider whether a cooperating witness has an interest in the outcome of the case, and if so, whether that interest has affected her testimony.  A witness who hopes to obtain leniency may have a motive to testify as she believes the Government wishes, or she may feel that it is in her interest to incriminate others.  As with any witness, your responsibility is to determine whether any such motive or intent has influenced the witness's testimony, and whether the witness has told the truth, in whole or in part.

In sum, in evaluating the testimony of a cooperating witness, you should ask yourselves the following questions:  Would the witness benefit more by lying or by telling the truth?  Was any part of her testimony made up because she believed or hoped that she would receive favorable treatment from the Government by testifying falsely, or as she believed the Government wanted?  Or did she believe that her interests would be best served by testifying truthfully?  If you believe that the witness was motivated by hopes of personal gain, was the motivation one which could cause her to lie, or was it one which could cause her to tell the truth?  Did this motivation color her testimony?

If you think that the testimony was false, you should reject it.  However, if, after a cautious and careful examination of the cooperating witness's testimony, you are satisfied that the witness told the truth, you should accept it as credible and act upon it accordingly.

As with any witness, let me emphasize that the issue of credibility need not be decided in an all-or-nothing fashion.  Even if you find that a witness testified falsely in one part, you still may accept his or her testimony in other parts, or may disregard all of it.

## Q.    Prior Convictions or Crimes of Witnesses

You have also heard testimony from witnesses who were previously convicted of crimes, or who admitted to committing crimes in the past.  You may consider the fact that a witness has

[17]

committed crimes in assessing how much of her testimony, if any, to believe, and what weight, if any, to give it.  It is of course entirely up to your good judgment to determine what weight, if any, to give to a witness's prior criminal record in assessing credibility.

### R.    Imprisonment of Defendant [if applicable]

You have heard evidence that, at certain points, the defendant was in prison.  That evidence was admitted for a limited purpose, specifically, to explain the defendant's whereabouts as of certain conversations and events.  I instruct you that you are to consider that evidence for that limited purpose only.  You may not consider the fact of the defendant having been in prison for any other purpose.

### S.    Stipulations of Fact

In this case you have heard evidence in the form of stipulations of fact.  A stipulation of fact is an agreement between the parties that a certain fact is true.  You must regard such agreed-upon facts as true.  However, it is for you to determine the effect to be given to those facts.

### T.    Stipulations of Testimony

In this case you have also heard evidence in the form of a stipulation of testimony.  A stipulation of testimony is an agreement between the parties that, if called as a witness, the person would give certain testimony.  You must accept as true the fact that the witness would have given that testimony.  However, it is for you to determine the effect to be given that testimony.

### U.    Audio and Video Recordings; Transcripts

Audio and video recordings of certain telephone and in-person conversations, meetings, and events have been admitted into evidence.  I instruct you that the audio and video recordings entered into evidence during this trial were made in a lawful manner, that no one's rights were violated, and that the Government's use of this evidence is entirely lawful.  Whether you approve

[18]

or disapprove of the recording or interception of these events may not enter your deliberations. Therefore, you must give this evidence your full consideration, along with all the other evidence in the case, as you determine whether the Government has proved the defendant's guilt beyond a reasonable doubt.

You were also provided with transcripts of various recordings, which were given to you as an aid or guide to assist you in listening to the recordings, and which the parties have agreed accurately reflect the words spoken.  However, the recordings themselves are the best evidence of what was said, and you are free to reach your own conclusion as to what was said on the recordings based on what you heard.  If you think you heard something differently than appeared on the transcript, then what you heard is controlling.  Remember that the jury is the ultimate fact finder and, as with all of the evidence, you may give the transcripts such weight, if any, as you believe they deserve.

If you wish to hear or see any of the audio or video tapes again, or see any of the transcripts of those recordings, they will be available to you during your deliberations.

### V.      Use of Evidence Obtained Pursuant to Searches

You have heard testimony about evidence seized during searches.  I instruct you that these seizures were lawful.  Evidence obtained in connection with these seizures was properly admitted in this case, and it may be properly considered by you.  Whether you approve or disapprove of how it was obtained should not enter into your deliberations, because the Government's use of this evidence is entirely lawful.

You must therefore give this evidence full consideration along with all the other evidence in this case in determining whether the Government has proved the defendant guilty beyond a reasonable doubt.  What significance you attach to this evidence is entirely your decision.

[19]

### W.   Use of Charts and Tables

Now, some of the exhibits were charts and tables, for example, of certain phone numbers and text messages.  These charts were introduced basically as summaries.  They are not direct evidence really.  They are summaries of the evidence.  They are a visual representation of information or data as set forth in exhibits or in stipulations or in the testimony of witnesses.  They are admitted as aids to you.  They are not in and of themselves any evidence.  They are intended to be of assistance to you in your deliberations.

In presenting the evidence, which you have heard, it is often easier and more convenient to utilize summary charts than to place all of the relevant documents in front of you.  It is up to you to decide whether those charts fairly and correctly present the information in the testimony and the documents.  The charts are not to be considered by you as direct proof of anything.  They are merely graphic demonstrations of what the underlying testimony and documents are.

To the extent that the charts conform with what you determine the underlying evidence to be, you may accept them.  But one way or the other, realize that the charts are not in and of themselves direct evidence.  They are merely visual aids.  They are nothing more.

### X.   Redaction of Evidentiary Items

We have, among the exhibits received in evidence, some documents that are redacted.  "Redacted" means that part of the document or recording was taken out.  You are to concern yourself only with the part of the item that has been admitted into evidence.  You should not consider any possible reason why the other part of it has been deleted.

### Y.   Particular Investigative Techniques Not Required [if applicable]

During the trial you have heard testimony of witnesses and argument by counsel that the Government did not utilize specific investigative techniques.  You may consider these facts in

[20]

deciding whether the Government has met its burden of proof, because as I told you, you should look to all of the evidence or lack of evidence in deciding whether the defendant is guilty. However, you also are instructed that there is no legal requirement that the Government use any of these specific investigative techniques to prove its case.

Whether you approve or disapprove of various law enforcement techniques, or whether you might have chosen to use or not use any particular technique, is not the question. Your concern, as I have said, is to determine whether or not, on the evidence or lack of evidence, the defendant's guilt has been proved beyond a reasonable doubt.

**Z.     Uncalled Witnesses—Equally Available**

There are people whose names you heard during the course of the trial but did not appear to testify. I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses. Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called. Their absence should not affect your judgment in any way.

Please also remember my instruction that the law does not impose on the defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

**AA.     Persons Not on Trial**

Some of the people who may have been involved in the events leading to this trial are not on trial. This does not matter. You may not draw any inference, favorable or unfavorable, towards the Government or the defendant from the fact that certain persons other than the defendant were not named as defendants in the Indictment. Nor may you speculate as to the reasons why other persons are not on trial. Those matters are wholly outside your concern and have no bearing on your function as jurors.

[21]

Whether a person should be named as a co-conspirator or indicted as a defendant in this case or another separate case is a matter within the sole discretion of the United States Attorney and the grand jury.  Therefore, you may not consider it in any way in reaching your verdict as to the defendant.

**BB.     Defendant's Right Not to Testify [if applicable]**

The defendant, Justin Rivera, did not testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove a defendant guilty beyond a reasonable doubt.  That burden remains with the Government throughout the entire trial and never shifts to a defendant.  A defendant is never required to prove that he is innocent.

You may not attach any significance to the fact that Mr. Rivera did not testify.  No adverse inference against him may be drawn by you because he did not take the witness stand.  You may not consider this against the defendant in any way in your deliberations.

**CC.     Defendant's Testimony [if applicable]**

In a criminal case, the defendant cannot be required to testify, but, if he chooses to testify, he is, of course, permitted to take the witness stand on his own behalf.  In this case, the defendant, Justin Rivera, decided to testify. You should examine and evaluate his testimony just as you would the testimony of any witness with an interest in the outcome of this case.  You should not disregard or disbelieve his testimony simply because he is charged as the defendant in this case.

[22]

**II.**     **SUBSTANTIVE INSTRUCTIONS**

I will turn now to my instructions to you relating to the charge brought against the defendant in this case.

**A.**     **The Indictment**

The defendant, Justin Rivera, is formally charged in an Indictment.  As I instructed you at the outset of this case, the Indictment is merely a charge or accusation.  It is not evidence, and it does not prove or even indicate guilt.  As a result, you are to give it no weight in deciding the defendant's guilt or lack of guilt.  What matters is the evidence you heard at this trial.  Indeed, as I have previously noted, the defendant is presumed innocent and has entered a plea of not guilty. It is the prosecution's burden to prove the defendant's guilt beyond a reasonable doubt.

**B.**     **Summary of the Indictment**

The Indictment contains one count. It charges the defendant with conspiring with others, in or about 2015, to commit the offense of sex trafficking by force, threats of force, fraud, or coercion or any combination of these means.  I will refer to that offense, for short, as sex trafficking.

I will now instruct you on the law that applies to this count.

**C.**     **Count One: Conspiracy to Commit Sex Trafficking by Force, Threats of Force, Fraud, or Coercion**

Count One charges the defendant with participating in a conspiracy to commit sex trafficking, in violation of Title 18, United States Code, Section 1591, in or about 2015.

A conspiracy is an agreement or understanding, between two or more persons, to violate the criminal law by a joint action.

Count One of the Indictment reads:

[23]

1.    In or about 2015, JUSTIN RIVERA, a/k/a "Denzel Rivera," a/k/a "Bangout," a/k/a "Jackie Chan," the defendant, together with others known and unknown, did willfully and knowingly combine, conspire, confederate, and agree together and with each other to commit sex trafficking, in violation of Title 18, United States Code, Sections 1591(a)(1), (a)(2) and (b).

2.    It was a part and an object of the conspiracy that JUSTIN RIVERA, a/k/a "Denzel Rivera," a/k/a "Bangout," a/k/a "Jackie Chan," the defendant, and others known and unknown, knowingly, in and affecting interstate and foreign commerce, would and did recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit by any means one and more persons, and did benefit, financially and by receiving things of value, from participation in a venture that engaged in any such act, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, coercion, as described in Title 18, United States Code, Section 1591(e)(2), and a combination of such means would be used to cause such persons to engage in one and more commercial sex acts.

3.    In furtherance of said conspiracy and to effect its illegal object, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    In or about 2015, JUSTIN RIVERA, a/k/a "Denzel Rivera," a/k/a "Bangout," a/k/a "Jackie Chan," the defendant, together with others known and unknown, resided in a residence to which they had no legal title, claim, or interest, and where they harbored and arranged, through advertisements and communications with purchasers of commercial sex acts, for commercial sex acts to be performed by several female persons, including but not limited to Victim-1 and Victim-2.

b.    In or about 2015, RIVERA physically harmed and threatened with harm Victim-2, including but not limited to physically assaulting Victim-2 and brandishing a dangerous weapon at Victim-2, and coerced Victim-2 by withholding heroin from Victim-2 unless Victim-2 engaged in commercial sex acts at RIVERA's direction and for RIVERA's profit, with knowledge and understanding that Victim-2 was addicted to heroin.

I instruct you that as used in the Indictment, "Victim-1" refers to Dajia Perez and "Victim-2" refers to Natalie Rodriguez.

To find the defendant guilty of the crime charged in Count One of the Indictment, the Government must establish each of the following elements beyond a reasonable doubt:

**First**, the existence of the charged conspiracy, that is, the existence of an agreement or understanding to violate the laws of the United States that make it a crime to commit sex trafficking; and

[24]

**Second**, that the defendant knowingly and willfully became a member of the conspiracy.

Now I will explain each of these two elements in more detail: first, the existence of the conspiracy, and second, whether the defendant knowingly and willfully participated in it.

### 1.      First Element: Existence of a Conspiracy

The first element that the Government must prove beyond a reasonable doubt to establish the offense of conspiracy is the existence of a conspiracy. What is a conspiracy? A conspiracy is a kind of criminal partnership—an agreement between two or more persons to join together to accomplish some unlawful purpose. As I mentioned just a moment ago, in this case, the unlawful purpose alleged to have been the object of the conspiracy was the crime of sex trafficking.

In this case, the defendant is accused of having been a member of a conspiracy to violate section 1591 of Title 18 of the United States Code, which prohibits sex trafficking.

A conspiracy is a kind of criminal partnership—a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.

The crime of conspiracy to violate a federal law is an independent offense.

It is separate and distinct from the actual violation of any specific federal laws, which the law refers to as "substantive crimes." The essence of the crime of conspiracy is an agreement or understanding to violate other laws. Indeed, you may find the defendant guilty of the crime of conspiracy to commit an offense against the United States even though the substantive crime that was the object of the conspiracy was not actually committed.

To show a conspiracy, the Government is not required to show that two or more persons sat around a table and entered into a solemn pact, orally or in writing, stating that they had formed a conspiracy to violate the law and spelling out all the details. The Government only needs to show that two or more persons explicitly or implicitly came to an understanding to achieve the

[25]

specified unlawful object, whether or not they were successful.  Common sense tells you that when people agree to enter into a criminal conspiracy, much is left to an unexpressed understanding. Instead, the evidence must show that two or more persons, in some way or manner, either explicitly or implicitly, came to an understanding to violate the law and to accomplish an unlawful plan.

You may, of course, find that the existence of an agreement to disobey or disregard the law has been established by direct proof.  However, since conspiracy is, by its very nature, characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved.  In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words. In this regard, you may, in determining whether an agreement existed here, consider the actions and statements of all of those you find to be participants as proof that a common design existed on the part of the persons charged to act together to accomplish an unlawful purpose.

In determining whether there has been an unlawful agreement as alleged in the Indictment, you may consider the actions of all the alleged co-conspirators that were taken to carry out the apparent criminal purpose.  Often, the only evidence that is available with respect to the existence of a conspiracy is evidence of conduct by the alleged individual co-conspirators.  When taken all together and considered as a whole, that conduct may warrant the inference that a conspiracy existed.

Keep in mind that conspiracy is an entirely separate and different offense from the substantive crime that was the objective of the conspiracy.  Indeed, you may find a defendant guilty of the crime of conspiracy even if you find that the substantive crime—sex trafficking—was never committed.  The point simply is that the objective of the conspiracy need not have actually been accomplished for a conspiracy to exist.

[26]

### a.   Objects of the Conspiracy

The objects of a conspiracy are the illegal goals the co-conspirators agree or hope to achieve.  Again, Count One of the Indictment alleges that the object of this conspiracy was to commit sex trafficking.  I will instruct you momentarily on the elements of such sex trafficking, and you should follow those instructions when considering Count One.

If the Government fails to prove beyond a reasonable doubt that sex trafficking was in fact the object of the conspiracy, then you must find the defendant not guilty of Count One.

Please bear in mind that the actual commission of an objective of the conspiracy—here, sex trafficking—is not an element of the crime of conspiracy.

Thus, you need not find that the conspirators actually committed such sex trafficking, but only that they agreed to commit it.

### b.   Time and Scope of the Conspiracy

The Indictment charges the defendant with participating in a specific agreement with a specific object.  He may not be found guilty unless the Government proves beyond a reasonable doubt that the conspiracy charged in the Indictment, that is, a conspiracy to commit sex trafficking, existed.

If you find that the conspiracy charged did not exist, then you must return a not guilty verdict, even if you find that some other conspiracy existed.

Nevertheless, a single conspiracy can exist even though its members change over time.  Accordingly, you may find that there was a single conspiracy even if there were changes in personnel, addition or subtraction of members, or evolution in the activities undertaken by the conspirators, so long as you find that some core members of the conspiracy continued to act to accomplish the purpose charged in the Indictment throughout its existence.  The fact that the

[27]

members of a conspiracy are not always identical does not necessarily imply that separate conspiracies exist.  However, it is not necessary for the Government to prove that the conspiracy lasted throughout the entire period alleged but only that it existed for some time within that period.

Whether the conspiracy charged in the Indictment existed, or whether there was a different conspiracy or no conspiratorial agreement at all is a question of fact for you, the jury, to determine.

### 2.    Second Element: Knowing and Willful Participation in the Conspiracy

If you conclude that the Government has proved beyond a reasonable doubt that the conspiracy alleged in Count One existed, then you must answer the second question: whether the defendant participated in the conspiracy with knowledge of its unlawful purposes and in furtherance of its unlawful objectives.

The Government must prove beyond a reasonable doubt that the defendant willfully and knowingly entered into the conspiracy with criminal intent—that is, with a purpose to violate the law—and that the defendant agreed to take part in the conspiracy to commit sex trafficking and to promote and cooperate in its unlawful objectives.

"Unlawfully" means simply contrary to law.  The defendant need <u>not</u> have known that he was breaking any particular law or any particular rule.  He needs only to have been aware of the generally unlawful nature of his acts.

The terms "willfully" and "knowingly" are intended to ensure that if you find that the defendant did join the conspiracy, you may not find the defendant guilty unless you also conclude beyond a reasonable doubt that, in doing so, the defendant knew what he was doing; in other words, that he took the actions in question deliberately and voluntarily.

Knowledge is a matter of inference from the proven facts.  An act is done "knowingly" and "willfully" if it is done deliberately and purposefully; that is, the defendant's acts must have been

[28]

the product of his conscious objective rather than the product of force, mistake, accident, mere negligence, or some other innocent reason.  That is, the acts must be the product of the defendant's conscious objective.  Science has not yet devised a manner of looking into a person's mind and knowing what that person is thinking.  However, you do have before you the evidence of certain acts and conversations alleged to have taken place involving the defendant or in his presence.  You may consider this evidence in determining whether the Government has proved beyond a reasonable doubt the defendant's knowledge of the unlawful purposes of the conspiracy.

It is not necessary for the Government to show that the defendant was fully informed as to all the details of the conspiracy in order for you to infer knowledge on his part.  To have guilty knowledge, a defendant need not know the full extent of the conspiracy, or all of the activities of all of its participants.  It is not necessary for a defendant to know every other member of the conspiracy.  In fact, the defendant may know only one other member of the conspiracy and still be a co-conspirator.  Nor is it necessary for a defendant to receive any monetary benefit from his participation in the conspiracy, or have a financial stake in the outcome.  It is enough if he participated in the conspiracy unlawfully, intentionally and knowingly, as I have defined those terms.

In addition, the duration and extent of the defendant's participation has no bearing on the issue of his guilt.  He need not have joined the conspiracy at the outset, and may not have received any benefit in return.  The defendant may have joined it for any purpose at any time in its progress, and he will be held responsible for all that was done before he joined and all that was done during the conspiracy's existence while he was a member.  Each member of a conspiracy may perform separate and distinct acts and may perform them at different times.  Some conspirators may play

[29]

major roles, while others play minor roles in the scheme.  An equal role is not what the law requires.

However, I want to caution you that a person's mere association with a member of a conspiracy does not make that person a member of the conspiracy, even when that association is coupled with knowledge that a conspiracy is taking place.  A person may know, be friendly with, or be related to a conspirator, without being a member of the conspiracy.  Mere presence at the scene of a crime, even coupled with knowledge that a crime is taking place, is not sufficient to support a conviction.  Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make that defendant a member.  More is required under the law:  The defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

Ultimately, the Government must prove beyond a reasonable doubt that the defendant— with an understanding of the unlawful character of the conspiracy—knowingly engaged, advised, or assisted in the conspiracy to commit sex trafficking charged in Count One.

### 3.    Liability for Acts and Declarations of Co-Conspirators

You heard evidence concerning the acts and statements of people other than the defendant because these acts and statements were committed or made by persons who, the Government alleges, were also confederates or co-conspirators of the defendant.

The reason for allowing this evidence to be received against the defendant has to do in part with the nature of the crime of conspiracy.  A conspiracy is often referred to as a partnership in crime, and as in other types of partnerships, when people enter into a conspiracy to accomplish an

[30]

unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Therefore, the reasonably foreseeable acts or statements of any member of the conspiracy, committed in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts or statements of all of the members, and all of the members are responsible for such acts or statements.

If you find, beyond a reasonable doubt, that the defendant was a member of the conspiracy charged in the Indictment, then any acts done or statements made in furtherance of the conspiracy by a person also found by you to have been a member of the same conspiracy may be considered against the defendant. This is so even if such acts were committed or such statements were made in the defendant's absence, and without his knowledge.

However, before you may consider the acts or statements of a co-conspirator in deciding the guilt of the defendant, you must first determine that the acts were committed or statements were made during the existence, and in furtherance, of the unlawful scheme. If the acts were done or the statements were made by someone whom you do not find to have been a member of the conspiracy, or if they were not in furtherance of the conspiracy, they may not be considered by you in deciding whether the defendant is guilty or not guilty.

### 4. Sex Trafficking and Its Elements

As I told you before, you need not find that the defendant actually committed the sex trafficking that is the object of the conspiracy, but only that he agreed with others to commit such sex trafficking.

Considering that charge requires you to understand the elements of the crime of sex trafficking.

[31]

Section 1591, which is the statute that makes sex trafficking a crime, provides, in pertinent part:

> Whoever knowingly . . . [,] in or affecting interstate . . . commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or . . . benefits, financially or by receiving anything of value, from participation in a venture which has engaged in [such] an act . . . , knowing, or, except where the act constituting [such] . . . violation . . . is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act . . . [is guilty of a federal crime].

There are three elements of the substantive crime of sex trafficking.

**First**, that the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited by any means a person; OR that

The defendant knowingly benefited, financially or by receiving anything of value, from participation in a venture which has recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited by any means a person;

**Second**, that the defendant knew, or recklessly disregarded the fact, that force, threats of force, fraud, coercion, or any combination of such means would be used to cause the person to engage in a commercial sex act;

**Third**, that the defendant's acts were in or affecting interstate or foreign commerce.

Now I will explain each of the three elements of sex trafficking in more detail.

### a. First Element: Trafficking Act

There are two different ways for the Government to satisfy the first element. The Government does not have to prove that a defendant violated the statute both ways.

[32]

The first is by proving beyond a reasonable doubt that the defendant knowingly engaged in one of the following acts: recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting the victim at issue.

The second, alternative, way to prove the first element of sex trafficking is for the Government to demonstrate beyond a reasonable doubt that the defendant knowingly benefitted, financially or by receiving anything of value, from participating in a venture that recruited, enticed, harbored, transported, provided, obtained, maintained, advertised, patronized, or solicited a person.

I instruct you to use the ordinary, everyday definitions of the terms in this element. "Recruit" means to seek to enroll. "Entice" means to attract, induce, or lure using hope or desire. "Harbor" means to give or afford shelter to, such as in a house or other place. "Transport" means to take or convey from one place to another. "Provide" means to furnish, supply, or make available. "Obtain" means to gain possession of or acquire. "Advertise" means to publicize. "Maintain" means to keep in an existing state or support. "Patronize" means to visit or obtain services in exchange for money. "Solicit" means to seek out.

Thus, one way for the Government to satisfy this first element of substantive sex trafficking is to demonstrate beyond a reasonable doubt that the defendant himself knowingly engaged in any of the actions I've just described.

A second, alternative, way to prove the first element of sex trafficking is for the Government to show that there was a venture that engaged in any of the actions I've just described; that the defendant knowingly participated in some way in that venture; and that the defendant knowingly benefitted, financially or by receiving anything of value, from that venture.

[33]

I instruct you that a venture is defined as "any group of two or more individuals associated in fact, whether or not as a legal entity."

In considering whether the defendant participated in such a venture, the defendant may be, but need not be, responsible for forming that venture. Likewise, the defendant need not be the organizer or main participant in the venture and need not have participated throughout the length of the venture. It is enough if the defendant took some part in the venture for any period of time while the venture was still ongoing, even if the part he played was minor, and even if it did not relate to the actual recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting of the victim at issue for commercial sex.

To benefit, financially or by receiving anything of value, from a venture, the defendant must receive some form of profit, benefit, value, or advantage, no matter how minor or intangible, from the venture. Of course, if you find that the defendant himself recruited, enticed, harbored, transported, provided, obtained, maintained, advertised, patronized, or solicited the victim at issue, you need not consider whether or not the defendant benefitted from doing so.

The Government must prove beyond a reasonable doubt that the defendant acted knowingly in either the prohibited trafficking activity or joining in a venture that engaged in a prohibited trafficking activity. As I have already instructed you, an act is done "knowingly" if it is done deliberately and purposely; that is, the defendant's actions must have been his conscious objective rather than a product of a mistake or accident, or mere negligence or some other innocent reason.

[34]

### b.  Second Element: Knowledge or Reckless Disregard of Use of Force, Threats of Force, Fraud, or Coercion

The second element is that the defendant knew or recklessly disregarded the fact that force, threats of force, fraud, coercion, or any combination of such means would be used to cause the person to engage in a commercial sex act.

In determining whether a defendant knew or recklessly disregarded that force, threats of force, fraud, or coercion, or any combination of such means, were used to cause the victim to engage in a commercial sex act, the following definitions and instructions apply.

The phrase "recklessly disregarded" means deliberate indifference to facts that, if considered and weighed in a reasonable manner, indicate the highest probability that another fact exists.  For example, in order to prove beyond a reasonable doubt that the defendant "recklessly disregarded" that force, threats of force, fraud, or coercion, or any combination of such means would be used to cause the victim to engage in a commercial sex act, the Government must prove that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. No one can avoid responsibility for a crime by deliberately ignoring what is obvious.  Stated another way, a person's reckless disregard of a particular fact may be shown by proof of deliberate or intentional ignorance or deliberate or intentional blindness to the existence of that fact. However, if the defendant only "advertised" the victim at issue, to be guilty the defendant must have acted knowingly—in other words, that he knew that force, threats of force, fraud, coercion were being used.  For this means of violating the sex trafficking statute, and for this means only, reckless disregard is insufficient.

The term "force" means any form of power, violence, or physical pressure directed against another person.

[35]

The term "threat" means a serious statement expressing an intention to inflict harm, at once or in the future, as distinguished from idle or careless talk, exaggeration, or something said in a joking manner.  For a statement to be a threat, the statement must have been made under such circumstances that a reasonable person who heard or read the statement would understand it as a serious expression of an intent to cause harm.  In addition, the defendant must have made the statement intending it to be a threat, or with the knowledge that the statement would be viewed as a threat.

The term "fraud" means that the defendant knowingly made a misstatement or omission of a material fact to entice the victim.  A material fact is one that would reasonably be expected to be of concern to a reasonable person in relying upon the representation or statement in making a decision.

The term "coercion" has three meanings.  It means any threat of serious harm to or physical restraint against any person; or any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or any abuse or threatened abuse of law or the legal process.

The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same situation as the trafficked person to perform or continue performing commercial sexual activity in order to avoid incurring that harm.

"Abuse or threatened abuse of law or legal process," means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose

[36]

for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

If any of these prohibited means was used—or any combination of these means—a defendant is guilty of the substantive offense of sex trafficking only if such use was sufficient to cause the victim to engage in a commercial sex act against her will.

In making that determination, a jury may consider the special vulnerabilities, if any, of the victim, specifically any aspect of the victim's age, background, station in life, physical or mental condition, experience or education, or any inequalities between her and the defendant.

The Government does not need to link any specific commercial sex act to any particular threat made, or any particular action taken, or any particular act of fraud or deception on the part of the defendant.  To be found guilty, it can be enough if a defendant's use of force, threats of force, fraud, or coercion, or any combination thereof, was sufficient to give rise to a climate of fear that would compel a reasonable person in the victim's situation to comply with the defendant's demands, in light of the totality of the defendant's conduct, the surrounding circumstances, and any vulnerabilities of the victim.

In determining whether a defendant is guilty of this substantive offense, a jury may also consider whether the defendant's conduct gave rise to a climate of fear that overcame the will of the victim.  Such a climate of fear may arise not only from a defendant's threats and other acts directed at the victim, but also from conduct directed at others that the victim is aware of.

The Government also need not prove physical restraint—such as the use of chains, barbed wire, or locked doors.  In order to establish the offense of sex trafficking.  The fact that the victim may have had an opportunity to escape is irrelevant if a defendant placed her in fear of leaving or

[37]

created circumstances such that she did not reasonably believe she could leave.  A victim is under no affirmative duty to try to escape.

If there is just one instance in which a defendant used force, threats of force, fraud, or coercion to cause the victim to perform commercial sex acts, that is sufficient.  The victim does not need to have been subjected to force, threats of force, fraud, or coercion for the entirety of the period in which she engaged in commercial sex acts for the defendant.  Thus, the fact that a person may have initially acquiesced or agreed to perform a commercial sex act does not preclude a finding that the person was later compelled to engage in prostitution through the use of force, threats of force, fraud, or coercion.  For example, if a victim willingly engaged in an act of prostitution, then later wanted to withdraw but was compelled to continue to perform acts of prostitution through force, threats of force, fraud, or coercion, then you may find that her later acts of prostitution were compelled by force, threats of force, fraud, or coercion.

Further, whether a person is paid or is able to keep some of her earnings is not determinative of the question of whether that person has been compelled to engage in sex trafficking.  In other words, if a person is compelled to engage in a commercial sex act through force, threats of force, fraud, or coercion, such service is involuntary even if she is paid or compensated for the work.  Of course, you may consider whether the person was compensated in determining whether she was compelled to engage in prostitution.

The substantive sex trafficking offense requires the Government to prove beyond a reasonable doubt that the defendant knew or recklessly disregarded that the victim at issue would be caused to engage in a commercial sex act.  A "commercial sex act" is any sex act on account of which anything of value is given to or received by any person.  To find that this requirement is satisfied, a jury need not find that the victim actually performed a commercial sex act as long as

[38]

the Government proved that the defendant knew or (except as to the act of advertising) recklessly disregarded that the victim would be caused to engage in a commercial sex act when he (1) recruited, enticed, harbored, transported, provided, obtained, maintained, advertised, patronized, or solicited the victim at issue, or (2) participated in a venture that did so and benefitted from it.

### c.  Third Element: Interstate Commerce

To satisfy the third and final element of sex trafficking, the Government must prove beyond a reasonable doubt that the defendant's sex trafficking activities were in interstate commerce or affected interstate commerce. The Government need not prove that the activities both were in interstate commerce and affected interstate commerce.

The term "interstate commerce" means the movement of goods, services, money, or individuals from one State to another State. The term "State" includes a State of the United States and the District of Columbia.

In determining whether the defendant's conduct "affected interstate commerce," you may consider whether the defendant used means, instrumentalities, or facilities of interstate commerce. A facility of interstate commerce is a thing, tool, or device that is involved in interstate or foreign commerce. Cell phones and the Internet are both means, facilities, or instrumentalities of interstate or foreign commerce.

It is not necessary for the Government to prove that the defendant knew his conduct was in or affecting interstate or foreign commerce.

To satisfy this element, the Government must prove that the defendant's conduct affected interstate or foreign commerce in any way, no matter how minimal. A jury may find this element satisfied if it finds beyond a reasonable doubt that the defendant's recruitment, enticement, harboring, transportation, providing, obtaining, advertising, maintaining, patronizing, or soliciting

[39]

of a person knowing that she would be caused to engage in commercial sex acts, or his participation in a venture that undertook such a trafficking act, was economic in nature and otherwise affected the flow of money to any degree across state lines or a foreign border, however minimal.

However, for this element to be proven beyond a reasonable doubt, it is not necessary for a jury to find that any interstate travel occurred. Proof of actual travel is not required.

### D.    Venue

I now return to the specific elements that you must find in this case for the defendant to be found guilty.

In addition to the elements of Count One, conspiracy to commit sex trafficking, that I have described for you, in order to convict a defendant of that offense, you must decide whether any act in furtherance of the crime occurred within the Southern District of New York. This requirement is known as "venue." The Southern District of New York includes Manhattan and the Bronx, as well as Westchester, Putnam, Rockland, Orange, Dutchess, and Sullivan counties. Anything that occurs in any of those places occurs within the Southern District of New York.

Venue is satisfied if any act in furtherance of the crime occurred in this District. To prove venue for the crime of conspiracy, which is the only charge at issue in this case, it is sufficient if any conspirator committed an overt act in furtherance of the conspiracy in this District. The defendant need not have ever been physically present in this District for a conspiracy charge against them to be brought here.

I should note that on this issue—and this issue alone—the Government need not offer proof beyond a reasonable doubt. Venue need be proven only by a preponderance of the evidence. The Government has satisfied its venue obligations, therefore, if you conclude that it is more likely than not that any act in furtherance of Count One occurred within this District.

[40]

If you find that the Government has failed to prove that an act in furtherance of Count One occurred within this District, then you must acquit the defendant.  As I have said, on every other issue the Government's burden of proof is beyond a reasonable doubt.

### E.    Time of Offense

The Indictment alleges that certain acts occurred in or about 2015.  It does not matter if the evidence you heard at trial indicates that a particular act occurred on a different date.  The law only requires a substantial similarity between the dates alleged in the Indictment and the dates established by the evidence.

## III.    DELIBERATIONS OF THE JURY

### A.    Right to See Exhibits and Hear Testimony

Ladies and gentlemen of the jury, that concludes the substantive portion of my instructions to you.  You are about to go into the jury room and begin your deliberations.  The exhibits received in evidence will be accessible to you on a monitor in the jury room.  If during those deliberations you want to see a hard copy of any of the exhibits, you may request that they be brought into the jury room.  If you want any of the testimony read, you may also request that.  Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.  And please be patient—with respect to requests for testimony, it can sometimes take counsel and the Court some time to identify the portions that are responsive to your request.  If you want any further explanation of the law as I have explained it to you, you may also request that.

To assist you in your deliberations, I am providing you with a list of witnesses, in the order in which they testified; a list of exhibits; a verdict form, which I will discuss in a moment; and a

[41]

copy of these instructions.  There is one of each of these for each juror.  I am also providing you

with a copy of the Indictment.  I remind you that the Indictment is not evidence.

### B.        Communication with the Court

Your requests for exhibits or testimony—in fact any communications with the Court—

should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In

any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous

verdict is reached.

### C.        Notes

Some of you have taken notes periodically throughout this trial.  I want to emphasize to

you, as you are about to begin your deliberations, that notes are simply an aid to memory.  Notes

that any of you may have made may not be given any greater weight or influence than the

recollections or impressions of other jurors, whether from notes or memory, with respect to the

evidence presented or what conclusions, if any, should be drawn from such evidence.  All jurors'

recollections are equal.  If you can't agree on what you remember the testimony was, you can ask

to have the transcript read back.

### D.        Duty to Deliberate; Unanimous Verdict

You will shortly retire to decide the case.  Your function is to weigh the evidence in this

case and to determine the guilt or lack of guilt of the defendant with respect to the count charged

in the Indictment.  You must base your verdict solely on the evidence and these instructions as to

the law, and you are obliged on your oath as jurors to follow the law as I instruct you, whether you

agree or disagree with the particular law in question.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching

an agreement.  Each of you must decide the case for himself or herself, but you should do so only

[42]

after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

When you are deliberating, all 12 jurors must be present in the jury room.  If a juror is absent, you must stop deliberations.

Again, your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors.  No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

Remember at all times, you are not partisans.  You are judges—judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

If you are divided, do <u>not</u> report how the vote stands.  If you reach a verdict, do not report what it is until you are asked in open court.

### E.     Verdict Form

I have prepared a verdict form for you to use in recording your decision.  Please use that form to report your verdict.

[43]

### F.      Duties of Foreperson

Finally, I referred a moment ago to a foreperson.  The first thing you should do when you retire to deliberate is take a vote to select one of you to sit as your foreperson, and then send out a note indicating whom you have chosen.

The foreperson doesn't have any more power or authority than any other juror, and his or her vote or opinion doesn't count for any more than any other juror's vote or opinion.  The foreperson is merely your spokesperson to the court.  He or she will send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict, and you will come into open court and give the verdict.

### G.      Return of Verdict

After you have reached a verdict, your foreperson will fill in and date the form that has been given to you.  All jurors must sign the form reflecting each juror's agreement with the verdict. The foreperson should then advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you must be in agreement with the verdict which is announced in court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

In conclusion, ladies and gentlemen, I am sure that if you listen to the views of your fellow jurors and if you apply your own common sense, you will reach a fair verdict here.

### IV.    CONCLUSION

Members of the jury, that concludes my instructions to you.  I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give to you or anything I may not have covered in my previous statement.

[44]

* * * * *

Before you retire into the jury room I must excuse our three alternates with the thanks of the court.  You have been very attentive and very patient.  I'm sorry that you will miss the experience of deliberating with the jury, but the law provides for a jury of 12 persons in this case. So before the rest of the jury retires into the jury room, if you have any clothing or objects there you are asked to pick them up and to withdraw before any deliberations start.

Please do not discuss the case with anyone, or research the case, over the next few days.  It is possible, and I have had this occur in a trial, that unexpected developments such as a juror's serious illness, may require the substitution of a deliberating juror by an alternate.  And so it's vital that you not speak to anyone about the case or research the case until you have been notified that the jury's deliberations are over and the jury has been excused.  And if you would like to be advised of the outcome of the trial, please make sure that Mr. Smallman has a phone number and an email address at which you can be reached.

(Alternates excused)

Members of the jury, you may now retire.  The marshal will be sworn before we retire.

(Marshal sworn)

[45]

**COURT EXHIBIT 4**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                              :
   UNITED STATES OF AMERICA                                   :
                                                              :
              -v-                                             :        19 Cr. 131 (PAE)
                                                              :
   JUSTIN RIVERA,                                             :
                                                              :
                                 Defendant.                   :
                                                              :
-----------------------------------------------------------------------X

**<u>JURY CHARGE</u>**

JURY CHARGE ON JUNE 11, 2021

[1]

CONTENTS

I.   **General Instructions** ........................................................................................ **4**

   A.   Introductory Remarks ................................................................................ 4

   B.   Role of the Court ........................................................................................ 4

   C.   Role of the Jury .......................................................................................... 5

   D.   Role of Counsel .......................................................................................... 5

   E.   Sympathy or Bias ....................................................................................... 6

   F.   All Persons Equal Before the Law ............................................................. 7

   G.   Presumption of Innocence; Burden of Proof; Reasonable Doubt .............. 8

   H.   What Is and Is Not Evidence ...................................................................... 9

   I.   Direct and Circumstantial Evidence ........................................................ 10

   J.   Witness Credibility ................................................................................... 11

   K.   Bias of Witnesses ..................................................................................... 12

   L.   Prior Inconsistent or Consistent Statements ........................................... 13

   M.   Preparation of Witnesses .......................................................................... 14

   N.   Law Enforcement Witnesses .................................................................... 15

   O.   Expert Witness ......................................................................................... 15

   P.   Cooperating Witnesses ............................................................................. 16

   Q.   Prior Convictions or Crimes of Witnesses .............................................. 17

   R.   Incarceration of Defendant ...................................................................... 18

   S.   Stipulations of Fact .................................................................................. 18

   T.   Stipulations of Testimony ........................................................................ 18

   U.   Audio and Video Recordings; Transcripts ............................................... 18

   V.   Use of Evidence Obtained Pursuant to Searches ..................................... 19

   W.   Use of Charts and Tables .......................................................................... 20

   X.   Redaction of Evidentiary Items ............................................................... 20

   Y.   Particular Investigative Techniques Not Required ................................... 21

   Z.   Uncalled Witnesses—Equally Available ................................................. 21

   AA. Persons Not on Trial ................................................................................ 21

   BB. Defendant's Right Not to Testify ............................................................. 22

II.   **Substantive Instructions** .............................................................................. **23**

   A.   The Indictment ......................................................................................... 23

   B.   Summary of the Indictment ...................................................................... 23

[2]

C.  Count One: Conspiracy to Commit Sex Trafficking by Force, Threats of Force, Fraud, or Coercion ...................................................................................................... 23

    1.  First Element: Existence of a Conspiracy ................................................................ 25

        a.  Objects of the Conspiracy ...................................................................................... 27

        b.  Time and Scope of the Conspiracy ...................................................................... 27

    2.  Second Element: Knowing and Willful Participation in the Conspiracy .................. 28

    3.  Liability for Acts and Declarations of Co-Conspirators ............................................. 30

    4.  Sex Trafficking and Its Elements ........................................................................... 31

        a.  First Element: Trafficking Act ............................................................................... 32

        b.  Second Element: Knowledge or Reckless Disregard of Use of Force, Threats of Force, Fraud, or Coercion .................................................................................... 35

        c.  Third Element: Interstate Commerce .................................................................... 39

D.  Venue ........................................................................................................................ 40

E.  Time of Offense ........................................................................................................ 41

**III. Deliberations of the Jury .................................................................................... 41**

A.  Right to See Exhibits and Hear Testimony ............................................................. 41

B.  Communication with the Court ............................................................................... 42

C.  Notes ........................................................................................................................ 42

D.  Duty to Deliberate; Unanimous Verdict ................................................................ 42

E.  Verdict Form ............................................................................................................ 43

F.  Duties of Foreperson ............................................................................................... 44

G.  Return of Verdict ..................................................................................................... 44

**IV. Conclusion ............................................................................................................ 44**

[3]

I.    GENERAL INSTRUCTIONS

A.    **Introductory Remarks**

Members of the jury, you have now heard all of the evidence in the case as well as the final arguments of the parties.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

Now it is time for me to instruct you as to the law that governs the case.  There are three parts to these instructions.  First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case.  These instructions really would apply to just about any trial.  Second, I'll give you some specific instructions about the legal rules applicable to this particular case.  Third, I'll give you some final instructions about procedure.

Listening to these instructions may not be easy.  It is important, however, that you listen carefully and concentrate.  I ask you for patient cooperation and attention.  You'll notice that I'm reading these instructions from a prepared text.  It would be more lively, no doubt, if I just improvised.  But it's important that I not do that.  The law is made up of words, and those words are very carefully chosen.  So when I tell you the law, it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two.  But for now, listen carefully and try to concentrate on what I'm saying.

B.    **Role of the Court**

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and to apply them to the facts as you determine them.  With respect to legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You must not substitute your own notions or opinions of what the law is or ought to be.

[4]

### C.      Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Do not conclude from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case.

It is your sworn duty, and you have taken the oath as jurors, to determine the facts.  Any opinion I might have regarding the facts is of absolutely no consequence.

### D.      Role of Counsel

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  It is my job to rule on those objections.  Therefore, why an objection was made or why I ruled on it the way I did is not your business.  You should draw no inference from the fact that an attorney objects to any evidence.  Nor should you draw any inference from the fact that I might have sustained or overruled an objection.

The personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed reactions of any kind to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

[5]

From time to time, the lawyers and I had conferences out of your hearing. These conferences involved procedural and other matters, and none of the events relating to these conferences should enter into your deliberations at all.

**E.      Sympathy or Bias**

Under your oath as jurors you are not to be swayed by sympathy or prejudice. All of us, no matter how hard we try, tend to look at others and weigh what they have to say through the lens of our own experience and background. We each have a tendency to stereotype others and make assumptions about them. Often we see life and evaluate evidence through a clouded filter that tends to favor those like ourselves. You must do the best you can to put aside such stereotypes, for all litigants and witnesses are entitled to a level playing field in which we do the best we can to put aside our stereotypes and prejudices. You are to be guided solely by the evidence in this case, and the crucial, bottom-line question that you must ask yourselves as you sift through the evidence is: has the Government proven the guilt of the defendant beyond a reasonable doubt?

It is for you alone to decide whether the Government has proven that the defendant is guilty of the crimes charged. You must decide solely on the basis of the evidence presented, subject to the law as I explain it to you. It must be clear to you that once you let fear or prejudice, or bias or sympathy interfere with your thinking, there is a risk that you will not arrive at a true and just verdict.

If you have a reasonable doubt as to the defendant's guilt, you should not hesitate for any reason to find a verdict of acquittal for the defendant. But on the other hand, if you should find that the Government has met its burden of proving the defendant's guilt beyond a reasonable doubt, you should not hesitate, because of sympathy or any other reason to render a verdict of guilty.

[6]

The question of possible punishment of a defendant is of no concern to the jury and should not enter into or influence your deliberations. The duty of imposing sentence rests exclusively upon the Court. Your function is to weigh the evidence in the case and to determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such evidence. Under your oath as jurors, you cannot allow a consideration of the punishment which may be imposed upon a defendant, if he is convicted, to influence your verdict, in any way, or, in any sense, enter into your deliberations.

Similarly, it would be improper for you to allow any feelings you might have about the nature of the crime charged to interfere with your decision-making process. Your verdict must be based exclusively upon the evidence or the lack of evidence in the case.

### F.        All Persons Equal Before the Law

In reaching your verdict, you must remember that all parties stand equal before a jury in the courts of the United States. The fact that the Government is a party and the prosecution is brought in the name of the United States does not entitle the Government or its witnesses to any greater consideration than that accorded to any other party. By the same token, you must give it no less deference. The Government and the defendant stand on equal footing before you.

It would be improper for you to consider, in reaching your decision as to whether the Government sustained its burden of proof, any personal feelings you may have about the defendant's race, national origin, sex, or age. All persons are entitled to the same presumption of innocence, and the Government has the same burden of proof with respect to all persons. Your verdict must be based solely on the evidence or the lack of evidence.

[7]

### G.        Presumption of Innocence; Burden of Proof; Reasonable Doubt

Now I will instruct you on the presumption of innocence—the Government's burden of proof in this case.  The defendant has pleaded not guilty.  By doing so, he denies the charges in the Indictment.  Thus, the Government has the burden of proving the charges against the defendant beyond a reasonable doubt.  A defendant does not have to prove his innocence.  On the contrary, he is presumed to be innocent of the charge contained in the Indictment.  This presumption of innocence was in the defendant's favor at the start of the trial, continued in his favor throughout the entire trial, is in his favor even as I instruct you now, and continues in his favor during the course of your deliberations in the jury room.

It is removed if and only if you, as members of the jury, are satisfied that the Government has sustained its burden of proving the guilt of the defendant beyond a reasonable doubt.

The question that naturally comes up is—what is a reasonable doubt?  The words almost define themselves.  It is a doubt founded in reason and arising out of the evidence in the case, or the lack of evidence.  It is doubt that a reasonable person has after carefully weighing all the evidence.  Reasonable doubt is a doubt that appeals to your reason, your judgment, your experience, and your common sense.  Reasonable doubt does not mean beyond all possible doubt. It is practically impossible for a person to be absolutely and completely convinced of any disputed fact that by its nature is not susceptible of mathematical certainty.  In consequence, the law in a criminal case is that it is sufficient if the guilt of a defendant is established beyond a reasonable doubt, not beyond all possible doubt.

If, after a fair and impartial consideration of all the evidence, you are not satisfied of a defendant's guilt, if you do not have an abiding conviction of that defendant's guilt—in sum, if you have such a doubt as would cause you, as prudent persons, to hesitate before acting in matters

[8]

of importance to yourselves—then you have a reasonable doubt, and in that circumstance it is your duty to acquit that defendant.

On the other hand, if after a fair and impartial consideration of all the evidence you do have an abiding belief of a defendant's guilt, such a belief as you would be willing to act upon without hesitation in important matters in the personal affairs of your own life, then you have no reasonable doubt, and under such circumstances it is your duty to convict that defendant.

The Government is not required to prove the essential elements of an offense by any particular number of witnesses. The testimony of a single witness may be sufficient to convince you beyond a reasonable doubt of the existence of the essential elements of the offense you are considering if you believe that the witness has truthfully and accurately related what he or she has told you.

## H.     What Is and Is Not Evidence

In determining the facts, you must rely upon your own recollection of the evidence. The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, and the stipulations of the parties.

However, testimony that I have stricken or excluded is not evidence and may not be considered by you in rendering your verdict. Also, if certain testimony was received for a limited purpose, you must follow the limiting instructions I have given, and use the evidence only for the purpose I indicated.

The only exhibits that are evidence in this case are those that were received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials that were used only to refresh a witness's recollection.

[9]

As I told you at the start of this case, statements and arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection that controls.

For the same reasons, you are not to consider a lawyer's questions as evidence. It is the witnesses' answers that are evidence, not the lawyers' questions.

Finally, any statements that I may have made do not constitute evidence. It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

## I.     Direct and Circumstantial Evidence

Generally, as I mentioned at the start of the case, there are two types of evidence that you may consider in reaching your verdict. One type of evidence is direct evidence. Direct evidence is testimony by a witness about something she knows by virtue of her own senses—something she has seen, felt, touched, or heard. For example, if a witness testified that when she left his house this morning, it was raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence from which you may infer the existence of certain facts. To use the same example I gave you at the start of trial: Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella, which was dripping wet. Then a few minutes later another person entered with a wet raincoat. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining, and no one has testified that it is raining. So you have no direct evidence of that fact.

[10]

But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

As you can see, the matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a logical, factual conclusion which you might reasonably draw from other facts that have been proven. Many material facts—such as what a person was thinking or intending—can rarely be proved by direct evidence.

Circumstantial evidence is as valuable as direct evidence. The law makes no distinction between direct and circumstantial evidence, but simply requires that before convicting a defendant, the jury must be satisfied of a defendant's guilt beyond a reasonable doubt, based on all the evidence in the case, circumstantial and direct.

There are times when different inferences may be drawn from the evidence. The Government asks you to draw one set of inferences. The defendant may ask you to draw another. It is for you, and for you alone, to decide what inferences you will draw.

**J.      Witness Credibility**

You have had the opportunity to observe the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

You should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, the relationship of the witness to the controversy and the parties, the witness's bias or impartiality, the

[11]

reasonableness of the witness's statement, the strength or weakness of the witness's recollection viewed in the light of all other testimony, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case. You should use your common sense, your good judgment, and your everyday experiences in life to make your credibility determinations.

In passing upon the credibility of a witness, you may also take into account any inconsistencies or contradictions as to material matters in his or her testimony.

If you find that any witness has willfully testified falsely as to any material fact, you have the right to reject the testimony of that witness in its entirety. On the other hand, even if you find that a witness has testified falsely about one matter, you may reject as false that portion of his or her testimony and accept as true any other portion of the testimony which commends itself to your belief or which you may find corroborated by other evidence in this case. A witness may be inaccurate, contradictory, or even untruthful in some aspects, and yet be truthful and entirely credible in other aspects of his or her testimony.

The ultimate question for you to decide in passing upon credibility is: did the witness tell the truth before you? It is for you to say whether his or her testimony at this trial was truthful in whole or in part.

### K.    Bias of Witnesses

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witnesses may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a

[12]

particular party.  You should also take into account any evidence of any benefit that a witness may receive from the outcome of the case.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.  In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness is interested in the outcome of the case does not mean he or she has not told the truth.  It is for you to decide from your observations and applying your common sense and experience and all the other considerations mentioned whether the possible interest of any witness has intentionally or otherwise colored or distorted his or her testimony.  You are not required to disbelieve an interested witness; you may accept as much as his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

L.      **Prior Inconsistent or Consistent Statements**

You have heard evidence that, at some earlier time, witnesses have said or done something that counsel argues is inconsistent with their trial testimony.

Evidence of a prior inconsistent statement was placed before you not because it is itself evidence of the guilt or innocence of the defendant, but only for the purpose of helping you decide whether to believe the trial testimony of a witness who may have contradicted a prior statement. If you find that the witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an

[13]

important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency; and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much weight, if any, to give to the inconsistent statement in determining whether to believe all, or part of, the witness's testimony.

You have also heard evidence that certain witnesses made earlier statements that were consistent with their trial testimony.  Such statements were admitted into evidence not as independent evidence of guilt or innocence, but solely for whatever light they may shed on the witness's credibility.  If you find that a witness had a motive to testify as he or she did, but also that he or she told the same story before he or she had that motive, you may take that into account in deciding whether the witness's interest or motive colored his or her testimony.

### M.    Preparation of Witnesses

You have heard evidence during the trial that witnesses had discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.  Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying, so that the witness can be made aware of the subjects that he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them.  In fact, it would be unusual for a lawyer to call a witness without such consultation.  Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

[14]

### N.      Law Enforcement Witnesses

You have heard the testimony of several employees of law enforcement agencies.  The fact that a witness may be employed by a law enforcement agency does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

It is your decision, after reviewing all the evidence, whether to accept the testimony of these witnesses and to give to that testimony whatever weight, if any, you find it deserves.

### O.      Expert Witness

In this case, I have permitted an expert witness, Dr. Chitra Raghavan, a professor of forensic psychology at John Jay College, to express her opinion about matters that are in issue.  A witness may be permitted to testify to an opinion on those matters about which she has special knowledge, skill, experience, and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, her opinions, her reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning her opinion.  Nor should you substitute it for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.

[15]

### P.     Cooperating Witnesses

You have heard two witnesses, Dajia Perez and Natalie Rodriguez, testify that they have committed crimes and were testifying pursuant to a non-prosecution agreement with the Government.   And you have heard argument in the summations of counsel about so-called "cooperating" witnesses and whether or not you should believe them.

Experience will tell you that the Government frequently must rely on the testimony of witnesses who admit participating in crimes.  The Government must take its witnesses as it finds them and frequently must use such testimony in a criminal prosecution, because otherwise it would be difficult or impossible to detect and prosecute wrongdoers.

You may properly consider the testimony of such a cooperating witness.  Indeed, it is the law in federal courts that the testimony of a single cooperating witness may be enough in itself for a conviction, if the jury believes that the testimony establishes guilt beyond a reasonable doubt.

It is also the case that cooperating witness testimony is of such a nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.  The fact that a witness is cooperating with the Government can be considered by you as bearing upon her credibility.  The weight to be given to the fact of the witness's cooperation is up to you.  It does not follow, however, that simply because a person has admitted to participating in one or more crimes, she is incapable of giving truthful testimony.  Like the testimony of any other witness, cooperating witness testimony should be given such weight as it deserves in light of the facts and circumstances before you, taking into account the witness's demeanor and candor, the strength and accuracy of her recollection, her background, and the extent to which the testimony is or is not corroborated by other evidence in the case.  You are free to accept as much or as little of the witness's testimony as you find credible.

[16]

You may consider whether a cooperating witness has an interest in the outcome of the case, and if so, whether that interest has affected her testimony. A witness who hopes to obtain leniency may have a motive to testify as she believes the Government wishes, or she may feel that it is in her interest to incriminate others. As with any witness, your responsibility is to determine whether any such motive or intent has influenced the witness's testimony, and whether the witness has told the truth, in whole or in part.

In sum, in evaluating the testimony of a cooperating witness, you should ask yourselves the following questions: Would the witness benefit more by lying or by telling the truth? Was any part of her testimony made up because she believed or hoped that she would receive favorable treatment from the Government by testifying falsely, or as she believed the Government wanted? Or did she believe that her interests would be best served by testifying truthfully? If you believe that the witness was motivated by hopes of personal gain, was the motivation one which could cause her to lie, or was it one which could cause her to tell the truth? Did this motivation color her testimony?

If you think that the testimony was false, you should reject it. However, if, after a cautious and careful examination of the cooperating witness's testimony, you are satisfied that the witness told the truth, you should accept it as credible and act upon it accordingly.

As with any witness, let me emphasize that the issue of credibility need not be decided in an all-or-nothing fashion. Even if you find that a witness testified falsely in one part, you still may accept his or her testimony in other parts, or may disregard all of it.

## Q.    Prior Convictions or Crimes of Witnesses

You have also heard testimony from witnesses who were previously convicted of crimes, or who admitted to committing crimes in the past. You may consider the fact that a witness has

[17]

committed crimes in assessing how much of her testimony, if any, to believe, and what weight, if any, to give it. It is of course entirely up to your good judgment to determine what weight, if any, to give to a witness's prior criminal record in assessing credibility.

### R.   Incarceration of Defendant

You have heard evidence that, at certain points, the defendant was incarcerated. That evidence was admitted for a limited purpose, specifically, to explain the defendant's whereabouts as of certain conversations and events. I instruct you that you are to consider that evidence for that limited purpose only. You may not consider the fact of the defendant having been in prison for any other purpose.

### S.   Stipulations of Fact

In this case you have heard evidence in the form of stipulations of fact. A stipulation of fact is an agreement between the parties that a certain fact is true. You must regard such agreed-upon facts as true. However, it is for you to determine the effect to be given to those facts.

### T.   Stipulations of Testimony

In this case you have also heard evidence in the form of a stipulation of testimony. A stipulation of testimony is an agreement between the parties that, if called as a witness, the person would give certain testimony. You must accept as true the fact that the witness would have given that testimony. However, it is for you to determine the effect to be given that testimony.

### U.   Audio and Video Recordings; Transcripts

Audio and video recordings of certain telephone and in-person conversations, meetings, and events have been admitted into evidence. I instruct you that the audio and video recordings entered into evidence during this trial were made in a lawful manner, that no one's rights were violated, and that the Government's use of this evidence is entirely lawful. Whether you approve

[18]

or disapprove of the recording or interception of these events may not enter your deliberations. Therefore, you must give this evidence your full consideration, along with all the other evidence in the case, as you determine whether the Government has proved the defendant's guilt beyond a reasonable doubt.

You were also provided with transcripts of various recordings, which were given to you as an aid or guide to assist you in listening to the recordings, and which the parties have agreed accurately reflect the words spoken. However, the recordings themselves are the best evidence of what was said, and you are free to reach your own conclusion as to what was said on the recordings based on what you heard. If you think you heard something differently than appeared on the transcript, then what you heard is controlling. Remember that the jury is the ultimate fact finder and, as with all of the evidence, you may give the transcripts such weight, if any, as you believe they deserve.

If you wish to hear or see any of the audio or video tapes again, or see any of the transcripts of those recordings, they will be available to you during your deliberations.

## V.     Use of Evidence Obtained Pursuant to Searches

You have heard testimony about evidence seized during searches. I instruct you that these seizures were lawful. Evidence obtained in connection with these seizures was properly admitted in this case, and it may be properly considered by you. Whether you approve or disapprove of how it was obtained should not enter into your deliberations, because the Government's use of this evidence is entirely lawful.

You must therefore give this evidence full consideration along with all the other evidence in this case in determining whether the Government has proved the defendant guilty beyond a reasonable doubt. What significance you attach to this evidence is entirely your decision.

[19]

### W.      Use of Charts and Tables

Now, some of the exhibits were charts and tables, for example, of certain phone numbers and text messages.  These charts were introduced basically as summaries.  They are not direct evidence really.  They are summaries of the evidence.  They are a visual representation of information or data as set forth in exhibits or in stipulations or in the testimony of witnesses.  They are admitted as aids to you.  They are not in and of themselves any evidence.  They are intended to be of assistance to you in your deliberations.

In presenting the evidence, which you have heard, it is often easier and more convenient to utilize summary charts than to place all of the relevant documents in front of you.  It is up to you to decide whether those charts fairly and correctly present the information in the testimony and the documents.  The charts are not to be considered by you as direct proof of anything.  They are merely graphic demonstrations of what the underlying testimony and documents are.

To the extent that the charts conform with what you determine the underlying evidence to be, you may accept them.  But one way or the other, realize that the charts are not in and of themselves direct evidence.  They are merely visual aids.  They are nothing more.

### X.      Redaction of Evidentiary Items

We have, among the exhibits received in evidence, some documents that are redacted.  "Redacted" means that part of the document or recording was taken out.  You are to concern yourself only with the part of the item that has been admitted into evidence.  You should not consider any possible reason why the other part of it has been deleted.

[20]

### Y.      Particular Investigative Techniques Not Required

During the trial you have heard testimony about certain specific investigative techniques that the Government utilized.  I instruct you that there is no legal requirement that the Government use any specific investigative technique to prove its case.

Whether you approve or disapprove of various law enforcement techniques, or whether you might have chosen to use or not use any particular technique, is not the question.  Your concern, as I have said, is to determine whether or not, on the evidence or lack of evidence, the defendant's guilt has been proved beyond a reasonable doubt.

### Z.      Uncalled Witnesses—Equally Available

There are people whose names you heard during the course of the trial but did not appear to testify.  I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called.  Their absence should not affect your judgment in any way.

Please also remember my instruction that the law does not impose on the defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

### AA.      Persons Not on Trial

Some of the people who may have been involved in the events leading to this trial are not on trial.  This does not matter.  You may not draw any inference, favorable or unfavorable, towards the Government or the defendant from the fact that certain persons other than the defendant were not named as defendants in the Indictment.  Nor may you speculate as to the reasons why other persons are not on trial.  Those matters are wholly outside your concern and have no bearing on your function as jurors.

[21]

Whether a person should be named as a co-conspirator or indicted as a defendant in this case or another separate case is a matter within the sole discretion of the United States Attorney and the grand jury.  Therefore, you may not consider it in any way in reaching your verdict as to the defendant.

**BB.      Defendant's Right Not to Testify**

The defendant, Justin Rivera, did not testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove a defendant guilty beyond a reasonable doubt.  That burden remains with the Government throughout the entire trial and never shifts to a defendant.  A defendant is never required to prove that he is innocent.

You may not attach any significance to the fact that Mr. Rivera did not testify.  No adverse inference against him may be drawn by you because he did not take the witness stand.  You may not consider this against the defendant in any way in your deliberations.

[22]

**II.**     **SUBSTANTIVE INSTRUCTIONS**

I will turn now to my instructions to you relating to the charge brought against the defendant in this case.

**A.      The Indictment**

The defendant, Justin Rivera, is formally charged in an Indictment.  As I instructed you at the outset of this case, the Indictment is merely a charge or accusation.  It is not evidence, and it does not prove or even indicate guilt.  As a result, you are to give it no weight in deciding the defendant's guilt or lack of guilt.  What matters is the evidence you heard at this trial.  Indeed, as I have previously noted, the defendant is presumed innocent and has entered a plea of not guilty. It is the prosecution's burden to prove the defendant's guilt beyond a reasonable doubt.

**B.      Summary of the Indictment**

The Indictment contains one count. It charges the defendant with conspiring with others, in or about 2015, to commit the offense of sex trafficking by force, threats of force, fraud, or coercion or any combination of these means.  I will refer to that offense, for short, as sex trafficking.

I will now instruct you on the law that applies to this count.

**C.      Count One: Conspiracy to Commit Sex Trafficking by Force, Threats of Force, Fraud, or Coercion**

Count One charges the defendant with participating in a conspiracy to commit sex trafficking, in violation of Title 18, United States Code, Section 1591, in or about 2015.

A conspiracy is an agreement or understanding, between two or more persons, to violate the criminal law by a joint action.

Count One of the Indictment reads:

[23]

1.      In or about 2015, JUSTIN RIVERA, a/k/a "Denzel Rivera," a/k/a "Bangout," a/k/a "Jackie Chan," the defendant, together with others known and unknown, did willfully and knowingly combine, conspire, confederate, and agree together and with each other to commit sex trafficking, in violation of Title 18, United States Code, Sections 1591(a)(1), (a)(2) and (b).

2.      It was a part and an object of the conspiracy that JUSTIN RIVERA, a/k/a "Denzel Rivera," a/k/a "Bangout," a/k/a "Jackie Chan," the defendant, and others known and unknown, knowingly, in and affecting interstate and foreign commerce, would and did recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit by any means one and more persons, and did benefit, financially and by receiving things of value, from participation in a venture that engaged in any such act, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, coercion, as described in Title 18, United States Code, Section 1591(e)(2), and a combination of such means would be used to cause such persons to engage in one and more commercial sex acts.

3.      In furtherance of said conspiracy and to effect its illegal object, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.      In or about 2015, JUSTIN RIVERA, a/k/a "Denzel Rivera," a/k/a "Bangout," a/k/a "Jackie Chan," the defendant, together with others known and unknown, resided in a residence to which they had no legal title, claim, or interest, and where they harbored and arranged, through advertisements and communications with purchasers of commercial sex acts, for commercial sex acts to be performed by several female persons, including but not limited to Victim-1 and Victim-2.

b.      In or about 2015, RIVERA physically harmed and threatened with harm Victim-2, including but not limited to physically assaulting Victim-2 and brandishing a dangerous weapon at Victim-2, and coerced Victim-2 by withholding heroin from Victim-2 unless Victim-2 engaged in commercial sex acts at RIVERA's direction and for RIVERA's profit, with knowledge and understanding that Victim-2 was addicted to heroin.

I instruct you that as used in the Indictment, "Victim-1" refers to Dajia Perez and "Victim-2" refers to Natalie Rodriguez.

To find the defendant guilty of the crime charged in Count One of the Indictment, the Government must establish each of the following elements beyond a reasonable doubt:

**First**, the existence of the charged conspiracy, that is, the existence of an agreement or understanding to violate the laws of the United States that make it a crime to commit sex trafficking; and

[24]

**Second**, that the defendant knowingly and willfully became a member of the conspiracy.

Now I will explain each of these two elements in more detail: first, the existence of the conspiracy, and second, whether the defendant knowingly and willfully participated in it.

### 1.      First Element: Existence of a Conspiracy

The first element that the Government must prove beyond a reasonable doubt to establish the offense of conspiracy is the existence of a conspiracy. What is a conspiracy? A conspiracy is a kind of criminal partnership—an agreement between two or more persons to join together to accomplish some unlawful purpose. As I mentioned just a moment ago, in this case, the unlawful purpose alleged to have been the object of the conspiracy was the crime of sex trafficking.

In this case, the defendant is accused of having been a member of a conspiracy to violate section 1591 of Title 18 of the United States Code, which prohibits sex trafficking.

A conspiracy is a kind of criminal partnership—a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.

The crime of conspiracy to violate a federal law is an independent offense.

It is separate and distinct from the actual violation of any specific federal laws, which the law refers to as "substantive crimes." The essence of the crime of conspiracy is an agreement or understanding to violate other laws. Indeed, you may find the defendant guilty of the crime of conspiracy to commit an offense against the United States even though the substantive crime that was the object of the conspiracy was not actually committed. Conversely, a defendant can commit a substantive crime without being guilty of conspiracy.

To show a conspiracy, the Government is not required to show that two or more persons sat around a table and entered into a solemn pact, orally or in writing, stating that they had formed a conspiracy to violate the law and spelling out all the details. The Government only needs to

[25]

show that two or more persons explicitly or implicitly came to an understanding to achieve the specified unlawful object, whether or not they were successful.  Common sense tells you that when people agree to enter into a criminal conspiracy, much is left to an unexpressed understanding. Instead, the evidence must show that two or more persons, in some way or manner, either explicitly or implicitly, came to an understanding to violate the law and to accomplish an unlawful plan.

You may, of course, find that the existence of an agreement to disobey or disregard the law has been established by direct proof.  However, since conspiracy is, by its very nature, characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved.  In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words. In this regard, you may, in determining whether an agreement existed here, consider the actions and statements of all of those you find to be participants as proof that a common design existed on the part of the persons charged to act together to accomplish an unlawful purpose.

In determining whether there has been an unlawful agreement as alleged in the Indictment, you may consider the actions of all the alleged co-conspirators that were taken to carry out the apparent criminal purpose.  Often, the only evidence that is available with respect to the existence of a conspiracy is evidence of conduct by the alleged individual co-conspirators.  When taken all together and considered as a whole, that conduct may warrant the inference that a conspiracy existed.

Keep in mind that conspiracy is an entirely separate and different offense from the substantive crime that was the objective of the conspiracy.  Indeed, you may find a defendant guilty of the crime of conspiracy even if you find that the substantive crime—here, sex trafficking—was

[26]

never committed as to either victim referenced in the Indictment.  The point simply is that the objective of the conspiracy need not have actually been accomplished for a conspiracy to exist.

### a.  *Objects of the Conspiracy*

The objects of a conspiracy are the illegal goals the co-conspirators agree or hope to achieve.  Again, Count One of the Indictment alleges that the object of this conspiracy was to commit sex trafficking.  I will instruct you momentarily on the elements of such sex trafficking, and you should follow those instructions when considering Count One.

If the Government fails to prove beyond a reasonable doubt that sex trafficking was in fact the object of the conspiracy, then you must find the defendant not guilty of Count One.

Please bear in mind that the actual commission of an objective of the conspiracy—here, sex trafficking—is not an element of the crime of conspiracy.

Thus, you need not find that the conspirators actually committed such sex trafficking, but only that they agreed to commit it.

### b.  *Time and Scope of the Conspiracy*

The Indictment charges the defendant with participating in a specific agreement with a specific object.  He may not be found guilty unless the Government proves beyond a reasonable doubt that the conspiracy charged in the Indictment, that is, a conspiracy to commit sex trafficking, existed.

If you find that the conspiracy charged did not exist, then you must return a not guilty verdict, even if you find that some other conspiracy existed.

Nevertheless, a single conspiracy can exist even though its members change over time.  Accordingly, you may find that there was a single conspiracy even if there were changes in personnel, addition or subtraction of members, or evolution in the activities undertaken by the

[27]

conspirators, so long as you find that some core members of the conspiracy continued to act to accomplish the purpose charged in the Indictment throughout its existence. The fact that the members of a conspiracy are not always identical does not necessarily imply that separate conspiracies exist. However, it is not necessary for the Government to prove that the conspiracy lasted throughout the entire period alleged but only that it existed for some time within that period.

Whether the conspiracy charged in the Indictment existed, or whether there was a different conspiracy or no conspiratorial agreement at all is a question of fact for you, the jury, to determine.

### 2.    Second Element: Knowing and Willful Participation in the Conspiracy

If you conclude that the Government has proved beyond a reasonable doubt that the conspiracy alleged in Count One existed, then you must answer the second question: whether the defendant participated in the conspiracy with knowledge of its unlawful purposes and in furtherance of its unlawful objectives.

The Government must prove beyond a reasonable doubt that the defendant willfully and knowingly entered into the conspiracy with criminal intent—that is, with a purpose to violate the law—and that the defendant agreed to take part in the conspiracy to commit sex trafficking and to promote and cooperate in its unlawful objectives.

"Unlawfully" means simply contrary to law. The defendant need not have known that he was breaking any particular law or any particular rule. He needs only to have been aware of the generally unlawful nature of his acts.

The terms "willfully" and "knowingly" are intended to ensure that if you find that the defendant did join the conspiracy, you may not find the defendant guilty unless you also conclude beyond a reasonable doubt that, in doing so, the defendant knew what he was doing; in other words, that he took the actions in question deliberately and voluntarily.

[28]

Knowledge is a matter of inference from the proven facts.  An act is done "knowingly" and "willfully" if it is done deliberately and purposefully; that is, the defendant's acts must have been the product of his conscious objective rather than the product of force, mistake, accident, mere negligence, or some other innocent reason.  That is, the acts must be the product of the defendant's conscious objective.  Science has not yet devised a manner of looking into a person's mind and knowing what that person is thinking.  However, you do have before you the evidence of certain acts and conversations alleged to have taken place involving the defendant or in his presence.  You may consider this evidence in determining whether the Government has proved beyond a reasonable doubt the defendant's knowledge of the unlawful purposes of the conspiracy.

It is not necessary for the Government to show that the defendant was fully informed as to all the details of the conspiracy in order for you to infer knowledge on his part.  To have guilty knowledge, a defendant need not know the full extent of the conspiracy, or all of the activities of all of its participants.  It is not necessary for a defendant to know every other member of the conspiracy.  In fact, the defendant may know only one other member of the conspiracy and still be a co-conspirator.  Nor is it necessary for a defendant to receive any monetary benefit from his participation in the conspiracy, or have a financial stake in the outcome.  It is enough if he participated in the conspiracy unlawfully, intentionally and knowingly, as I have defined those terms.

In addition, the duration and extent of the defendant's participation has no bearing on the issue of his guilt.  He need not have joined the conspiracy at the outset, and may not have received any benefit in return.  The defendant may have joined it for any purpose at any time in its progress, and he will be held responsible for all that was done before he joined and all that was done during the conspiracy's existence while he was a member.  Each member of a conspiracy may perform

[29]

separate and distinct acts and may perform them at different times.  Some conspirators may play major roles, while others play minor roles in the scheme.  An equal role is not what the law requires.

However, I want to caution you that a person's mere association with a member of a conspiracy does not make that person a member of the conspiracy, even when that association is coupled with knowledge that a conspiracy is taking place.  A person may know, be friendly with, or be related to a conspirator, without being a member of the conspiracy.  Mere presence at the scene of a crime, even coupled with knowledge that a crime is taking place, is not sufficient to support a conviction.  Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make that defendant a member.  More is required under the law:  The defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

Ultimately, the Government must prove beyond a reasonable doubt that the defendant— with an understanding of the unlawful character of the conspiracy—knowingly engaged, advised, or assisted in the conspiracy to commit sex trafficking charged in Count One.

### 3.    Liability for Acts and Declarations of Co-Conspirators

You heard evidence concerning the acts and statements of people other than the defendant because these acts and statements were committed or made by persons who, the Government alleges, were also confederates or co-conspirators of the defendant.

The reason for allowing this evidence to be received against the defendant has to do in part with the nature of the crime of conspiracy.  A conspiracy is often referred to as a partnership in crime, and as in other types of partnerships, when people enter into a conspiracy to accomplish an

[30]

unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Therefore, the reasonably foreseeable acts or statements of any member of the conspiracy, committed in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts or statements of all of the members, and all of the members are responsible for such acts or statements.

If you find, beyond a reasonable doubt, that the defendant was a member of the conspiracy charged in the Indictment, then any acts done or statements made in furtherance of the conspiracy by a person also found by you to have been a member of the same conspiracy may be considered against the defendant.  This is so even if such acts were committed or such statements were made in the defendant's absence, and without his knowledge.

However, before you may consider the acts or statements of a co-conspirator in deciding the guilt of the defendant, you must first determine that the acts were committed or statements were made during the existence, and in furtherance, of the unlawful scheme.  If the acts were done or the statements were made by someone whom you do not find to have been a member of the conspiracy, or if they were not in furtherance of the conspiracy, they may not be considered by you in deciding whether the defendant is guilty or not guilty.

### 4.    Sex Trafficking and Its Elements

As I told you before, you need not find that the defendant actually committed the sex trafficking that is the object of the conspiracy, but only that he agreed with others to commit such sex trafficking.

Considering that charge requires you to understand the elements of the crime of sex trafficking.

[31]

Section 1591, which is the statute that makes sex trafficking a crime, provides, in pertinent part:

> Whoever knowingly . . . [,] in or affecting interstate . . . commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or . . . benefits, financially or by receiving anything of value, from participation in a venture which has engaged in [such] an act . . . , knowing, or, except where the act constituting [such] . . . violation . . . is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act . . . [is guilty of a federal crime].

There are three elements of the substantive crime of sex trafficking.

**First**, that the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited by any means a person; OR that

The defendant knowingly benefited, financially or by receiving anything of value, from participation in a venture which has recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited by any means a person;

**Second**, that the defendant knew, or recklessly disregarded the fact, that force, threats of force, fraud, coercion, or any combination of such means would be used to cause the person to engage in a commercial sex act;

**Third**, that the defendant's acts were in or affecting interstate or foreign commerce.

Now I will explain each of the three elements of sex trafficking in more detail.

### *a.   First Element: Trafficking Act*

There are two different ways for the Government to satisfy the first element.  The Government does not have to prove that a defendant violated the statute both ways.

[32]

The first is by proving beyond a reasonable doubt that the defendant knowingly engaged in one of the following acts: recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting the victim at issue.

The second, alternative, way to prove the first element of sex trafficking is for the Government to demonstrate beyond a reasonable doubt that the defendant knowingly benefitted, financially or by receiving anything of value, from participating in a venture that recruited, enticed, harbored, transported, provided, obtained, maintained, advertised, patronized, or solicited a person.

I instruct you to use the ordinary, everyday definitions of the terms in this element. "Recruit" means to seek to enroll. "Entice" means to attract, induce, or lure using hope or desire. "Harbor" means to give or afford shelter to, such as in a house or other place. "Transport" means to take or convey from one place to another. "Provide" means to furnish, supply, or make available. "Obtain" means to gain possession of or acquire. "Advertise" means to publicize. "Maintain" means to keep in an existing state or support. "Patronize" means to visit or obtain services in exchange for money. "Solicit" means to seek out.

Thus, one way for this first element of substantive sex trafficking to be established is to demonstrate beyond a reasonable doubt that the defendant himself knowingly engaged in any of the actions I've just described.

A second, alternative, way for the first element of sex trafficking to be established is to demonstrate that there was a venture that engaged in any of the actions I've just described; that the defendant knowingly participated in some way in that venture; and that the defendant knowingly benefitted, financially or by receiving anything of value, from that venture.

[33]

I instruct you that a venture is defined as "any group of two or more individuals associated in fact, whether or not as a legal entity."

In considering whether the defendant participated in such a venture, the defendant may be, but need not be, responsible for forming that venture.  Likewise, the defendant need not be the organizer or main participant in the venture and need not have participated throughout the length of the venture.  It is enough if the defendant took some part in the venture for any period of time while the venture was still ongoing, even if the part he played was minor, and even if it did not relate to the actual recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting of the victim at issue for commercial sex.

To benefit, financially or by receiving anything of value, from a venture, the defendant must receive some form of profit, benefit, value, or advantage, no matter how minor or intangible, from the venture.  Of course, if you find that the defendant himself recruited, enticed, harbored, transported, provided, obtained, maintained, advertised, patronized, or solicited the victim at issue, you need not consider whether or not the defendant benefitted from doing so.

In sum, for this element to be established, the defendant must have acted knowingly in either the prohibited trafficking activity or joining in a venture that engaged in a prohibited trafficking activity.  As I have already instructed you, an act is done "knowingly" if it is done deliberately and purposely; that is, the defendant's actions must have been his conscious objective rather than a product of a mistake or accident, or mere negligence or some other innocent reason.

[34]

### b.  Second Element: Knowledge or Reckless Disregard of Use of Force, Threats of Force, Fraud, or Coercion

The second element is that the defendant knew or recklessly disregarded the fact that force, threats of force, fraud, coercion, or any combination of such means would be used to cause the person to engage in a commercial sex act.

In determining whether a defendant knew or recklessly disregarded that force, threats of force, fraud, or coercion, or any combination of such means, were used to cause the victim to engage in a commercial sex act, the following definitions and instructions apply.

The phrase "recklessly disregarded" means deliberate indifference to facts that, if considered and weighed in a reasonable manner, indicate the highest probability that another fact exists.  For example, in order to prove beyond a reasonable doubt that the defendant "recklessly disregarded" that force, threats of force, fraud, or coercion, or any combination of such means would be used to cause the victim to engage in a commercial sex act, the Government must prove that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. No one can avoid responsibility for a crime by deliberately ignoring what is obvious.  Stated another way, a person's reckless disregard of a particular fact may be shown by proof of deliberate or intentional ignorance or deliberate or intentional blindness to the existence of that fact. However, if the defendant only "advertised" the victim at issue, to be guilty the defendant must have acted knowingly—in other words, that he knew that force, threats of force, fraud, coercion were being used.  For this means of violating the sex trafficking statute, and for this means only, reckless disregard is insufficient.

The term "force" means any form of power, violence, or physical pressure directed against another person.

[35]

The term "threat" means a serious statement expressing an intention to inflict harm, at once or in the future, as distinguished from idle or careless talk, exaggeration, or something said in a joking manner.  For a statement to be a threat, the statement must have been made under such circumstances that a reasonable person who heard or read the statement would understand it as a serious expression of an intent to cause harm.  In addition, the defendant must have made the statement intending it to be a threat, or with the knowledge that the statement would be viewed as a threat.

The term "fraud" means that the defendant knowingly made a misstatement or omission of a material fact to entice the victim.  A material fact is one that would reasonably be expected to be of concern to a reasonable person in relying upon the representation or statement in making a decision.

The term "coercion" has two meanings.  It means any threat of serious harm to or physical restraint against any person; or any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person.

The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same situation as the trafficked person to perform or continue performing commercial sexual activity in order to avoid incurring that harm.

If any of these prohibited means was used—or any combination of these means—a defendant is guilty of the substantive offense of sex trafficking only if such use was sufficient to cause the victim to engage in a commercial sex act against her will.

[36]

In making that determination, a jury may consider the special vulnerabilities, if any, of the victim, specifically any aspect of the victim's age, background, station in life, physical or mental condition, experience or education, or any inequalities between her and the defendant.

The Government does not need to link any specific commercial sex act to any particular threat made, or any particular action taken, or any particular act of fraud or deception on the part of the defendant.  To be found guilty, it can be enough if a defendant's use of force, threats of force, fraud, or coercion, or any combination thereof, was sufficient to give rise to a climate of fear that would compel a reasonable person in the victim's situation to comply with the defendant's demands, in light of the totality of the defendant's conduct, the surrounding circumstances, and any vulnerabilities of the victim.

In determining whether a defendant is guilty of this substantive offense, a jury may also consider whether the defendant's conduct gave rise to a climate of fear that overcame the will of the victim.  Such a climate of fear may arise not only from a defendant's threats and other acts directed at the victim, but also from conduct directed at others that the victim is aware of.

The Government also need not prove physical restraint—such as the use of chains, barbed wire, or locked doors.  In order to establish the offense of sex trafficking.  The fact that the victim may have had an opportunity to escape is irrelevant if a defendant placed her in fear of leaving or created circumstances such that she did not reasonably believe she could leave.  A victim is under no affirmative duty to try to escape.

If there is just one instance in which a defendant used force, threats of force, fraud, or coercion to cause the victim to perform commercial sex acts, that is sufficient.  The victim does not need to have been subjected to force, threats of force, fraud, or coercion for the entirety of the period in which she engaged in commercial sex acts for the defendant.  Thus, the fact that a person

[37]

may have initially acquiesced or agreed to perform a commercial sex act does not preclude a finding that the person was later compelled to engage in prostitution through the use of force, threats of force, fraud, or coercion.  For example, if a victim willingly engaged in an act of prostitution, then later wanted to withdraw but was compelled to continue to perform acts of prostitution through force, threats of force, fraud, or coercion, then you may find that her later acts of prostitution were compelled by force, threats of force, fraud, or coercion.

Further, whether a person is paid or is able to keep some of her earnings is not determinative of the question of whether that person has been compelled to engage in sex trafficking.  In other words, if a person is compelled to engage in a commercial sex act through force, threats of force, fraud, or coercion, such service is involuntary even if she is paid or compensated for the work.  Of course, you may consider whether the person was compensated in determining whether she was compelled to engage in prostitution.

The substantive sex trafficking offense thus requires proof beyond a reasonable doubt that the defendant knew or recklessly disregarded that the victim at issue would be caused to engage in a commercial sex act.  A "commercial sex act" is any sex act on account of which anything of value is given to or received by any person.  To find that this requirement is satisfied, a jury need not find that the victim actually performed a commercial sex act as long as the Government proved that the defendant knew or (except as to the act of advertising) recklessly disregarded that the victim would be caused to engage in a commercial sex act when he (1) recruited, enticed, harbored, transported, provided, obtained, maintained, advertised, patronized, or solicited the victim at issue, or (2) participated in a venture that did so and benefitted from it.

[38]

### c. *Third Element: Interstate Commerce*

To satisfy the third and final element of sex trafficking, the Government must prove beyond a reasonable doubt that the defendant's sex trafficking activities were in interstate commerce or affected interstate commerce. The Government need not prove that the activities both were in interstate commerce and affected interstate commerce.

The term "interstate commerce" means the movement of goods, services, money, or individuals from one State to another State. The term "State" includes a State of the United States and the District of Columbia.

In determining whether the defendant's conduct "affected interstate commerce," you may consider whether the defendant used means, instrumentalities, or facilities of interstate commerce. A facility of interstate commerce is a thing, tool, or device that is involved in interstate or foreign commerce. Cell phones and the Internet are both means, facilities, or instrumentalities of interstate or foreign commerce.

It is not necessary for the Government to prove that the defendant knew his conduct was in or affecting interstate or foreign commerce.

To satisfy this element, the Government must prove that the defendant's conduct affected interstate or foreign commerce in any way, no matter how minimal. A jury may find this element satisfied if it finds beyond a reasonable doubt that the defendant's recruitment, enticement, harboring, transportation, providing, obtaining, advertising, maintaining, patronizing, or soliciting of a person knowing that she would be caused to engage in commercial sex acts, or his participation in a venture that undertook such a trafficking act, was economic in nature and otherwise affected the flow of money to any degree across state lines or a foreign border, however minimal.

[39]

However, for this element to be proven beyond a reasonable doubt, it is not necessary for a jury to find that any interstate travel occurred.  Proof of actual travel is not required.

That concludes my discussion of the elements of the offense of sex trafficking.  I remind you again that you need not find that the defendant committed the offense of sex trafficking, but only that he agreed with others to commit that offense.

### D.    Venue

I now return to the specific elements that you must find in this case for the defendant to be found guilty.

In addition to the elements of Count One, conspiracy to commit sex trafficking, that I have described for you, in order to convict a defendant of that offense, you must decide whether any act in furtherance of the crime occurred within the Southern District of New York.  This requirement is known as "venue."  The Southern District of New York includes Manhattan and the Bronx, as well as Westchester, Putnam, Rockland, Orange, Dutchess, and Sullivan counties.  Anything that occurs in any of those places occurs within the Southern District of New York.

Venue is satisfied if any act in furtherance of the crime occurred in this District.  To prove venue for the crime of conspiracy, which is the only charge at issue in this case, it is sufficient if any conspirator committed an overt act in furtherance of the conspiracy in this District.  The defendant need not have ever been physically present in this District for a conspiracy charge against them to be brought here.

I should note that on this issue—and this issue alone—the Government need not offer proof beyond a reasonable doubt.  Venue need be proven only by a preponderance of the evidence.  The Government has satisfied its venue obligations, therefore, if you conclude that it is more likely than not that any act in furtherance of Count One occurred within this District.

[40]

If you find that the Government has failed to prove that an act in furtherance of Count One occurred within this District, then you must acquit the defendant.  As I have said, on every other issue the Government's burden of proof is beyond a reasonable doubt.

### E.      Time of Offense

The Indictment alleges that certain acts occurred in or about 2015.  It does not matter if the evidence you heard at trial indicates that a particular act occurred on a different date.  The law only requires a substantial similarity between the dates alleged in the Indictment and the dates established by the evidence.

## III.    DELIBERATIONS OF THE JURY

### A.      Right to See Exhibits and Hear Testimony

Ladies and gentlemen of the jury, that concludes the substantive portion of my instructions to you.  You are about to go into the jury room and begin your deliberations.  The exhibits received in evidence will be accessible to you on a monitor in the jury room.  If during those deliberations you want to see a hard copy of any of the exhibits, you may request that they be brought into the jury room.  If you want any of the testimony read, you may also request that.  Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.  And please be patient—with respect to requests for testimony, it can sometimes take counsel and the Court some time to identify the portions that are responsive to your request.  If you want any further explanation of the law as I have explained it to you, you may also request that.

To assist you in your deliberations, I am providing you with a list of witnesses, in the order in which they testified; a list of exhibits; a verdict form, which I will discuss in a moment; and a

[41]

copy of these instructions.  There is one of each of these for each juror.  I am also providing you with a copy of the Indictment.  I remind you that the Indictment is not evidence.

### B.    Communication with the Court

Your requests for exhibits or testimony—in fact any communications with the Court—should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

### C.    Notes

Some of you have taken notes periodically throughout this trial.  I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory.  Notes that any of you may have made may not be given any greater weight or influence than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence.  All jurors' recollections are equal.  If you can't agree on what you remember the testimony was, you can ask to have the transcript read back.

### D.    Duty to Deliberate; Unanimous Verdict

You will shortly retire to decide the case.  Your function is to weigh the evidence in this case and to determine the guilt or lack of guilt of the defendant with respect to the count charged in the Indictment.  You must base your verdict solely on the evidence and these instructions as to the law, and you are obliged on your oath as jurors to follow the law as I instruct you, whether you agree or disagree with the particular law in question.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement.  Each of you must decide the case for himself or herself, but you should do so only

[42]

after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous.   Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

When you are deliberating, all 12 jurors must be present in the jury room.  If a juror is absent, you must stop deliberations.

Again, your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors.  No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

Remember at all times, you are not partisans.  You are judges—judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

If you are divided, do <u>not</u> report how the vote stands.  If you reach a verdict, do not report what it is until you are asked in open court.

E.      Verdict Form

I have prepared a verdict form for you to use in recording your decision.  Please use that form to report your verdict.

[43]

### F.    Duties of Foreperson

Finally, I referred a moment ago to a foreperson.  The first thing you should do when you retire to deliberate is take a vote to select one of you to sit as your foreperson, and then send out a note indicating whom you have chosen.

The foreperson doesn't have any more power or authority than any other juror, and his or her vote or opinion doesn't count for any more than any other juror's vote or opinion.  The foreperson is merely your spokesperson to the court.  He or she will send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict, and you will come into open court and give the verdict.

### G.    Return of Verdict

After you have reached a verdict, your foreperson will fill in and date the form that has been given to you.  All jurors must sign the form reflecting each juror's agreement with the verdict.  The foreperson should then advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you must be in agreement with the verdict which is announced in court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

In conclusion, ladies and gentlemen, I am sure that if you listen to the views of your fellow jurors and if you apply your own common sense, you will reach a fair verdict here.

## IV.    CONCLUSION

Members of the jury, that concludes my instructions to you.  I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give to you or anything I may not have covered in my previous statement.

[44]

* * * * *

Before you retire into the jury room I must excuse our three alternates with the thanks of the court.  You have been very attentive and very patient.  I'm sorry that you will miss the experience of deliberating with the jury, but the law provides for a jury of 12 persons in this case. So before the rest of the jury retires into the jury room, if you have any clothing or objects there you are asked to pick them up and to withdraw before any deliberations start.

Please do not discuss the case with anyone, or research the case, over the next few days.  It is possible, and I have had this occur in a trial, that unexpected developments such as a juror's serious illness, may require the substitution of a deliberating juror by an alternate.  And so it's vital that you not speak to anyone about the case or research the case until you have been notified that the jury's deliberations are over and the jury has been excused.  And if you would like to be advised of the outcome of the trial, please make sure that Mr. Smallman has a phone number and an email address at which you can be reached.

(Alternates excused)

Members of the jury, you may now retire.  The marshal will be sworn before we retire.

(Marshal sworn)

[45]

**COURT EXHIBIT 5**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

JUSTIN RIVERA,

Defendant.

Verdict Sheet
19-CR-131 (PAE)

*All verdicts must be unanimous.  Please indicate your verdict with a check mark ( ✔).*

## COUNT ONE:
### Conspiracy to Commit Sex Trafficking

GUILTY_____          NOT GUILTY_____

After completing the form, each juror must sign below, reflecting his or her agreement with the forgoing verdict.

_____          _____
Foreperson

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

Dated:      _____

1

**COURT EXHIBIT 6**

**<u>Witness List</u>**
*United States v. Justin Rivera*, 19 Cr. 131 (PAE)

<u>Witnesses</u>
1. Dajia Perez
2. Jacob Pechet
3. Chitra Raghavan
4. Geraldine Perez
5. Natalie Rodriguez
6. Sarah Rosenberg
7. Matthew Frost

**COURT EXHIBIT 7**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
                                    :
UNITED STATES OF AMERICA
                                    :
            - v. -                          **INDICTMENT**
                                    :
JUSTIN RIVERA,                              19 Cr. 131 (PAE)

    a/k/a "Denzel Rivera,"        :
    a/k/a "Bangout,"
    a/k/a "Jackie Chan,"          :

            Defendant.            :

-----------------------------------x

### COUNT ONE

(Conspiracy to Commit Sex Trafficking
by Force, Fraud, or Coercion)

The Grand Jury charges:

1.   In or about 2015, JUSTIN RIVERA, a/k/a "Denzel
Rivera," a/k/a "Bangout," a/k/a "Jackie Chan," the defendant,
together with others known and unknown, did willfully and
knowingly combine, conspire, confederate, and agree together and
with each other to commit sex trafficking, in violation of Title
18, United States Code, Sections 1591(a)(1), (a)(2) and (b).

2.   It was a part and an object of the conspiracy that
JUSTIN RIVERA, a/k/a "Denzel Rivera," a/k/a "Bangout," a/k/a
"Jackie Chan," the defendant, and others known and unknown,
knowingly, in and affecting interstate and foreign commerce,
would and did recruit, entice, harbor, transport, provide,

obtain, advertise, maintain, patronize, and solicit by any means one and more persons, and did benefit, financially and by receiving things of value, from participation in a venture that engaged in any such act, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, coercion, as described in Title 18, United States Code, Section 1591(e)(2), and a combination of such means would be used to cause such persons to engage in one and more commercial sex acts.

## Overt Acts

3.      In furtherance of said conspiracy and to effect its illegal object, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.      In or about 2015, JUSTIN RIVERA, a/k/a "Denzel Rivera," a/k/a "Bangout," a/k/a "Jackie Chan," the defendant, together with others known and unknown, resided in a residence to which they had no legal title, claim, or interest, and where they harbored and arranged, through advertisements and communications with purchasers of commercial sex acts, for commercial sex acts to be performed by several female persons, including but not limited to Victim-1 and Victim-2.

b.      In or about 2015, RIVERA physically harmed and threatened with harm Victim-2, including but not limited to physically assaulting Victim-2 and brandishing a dangerous weapon

2

at Victim-2, and coerced Victim-2 by withholding heroin from

Victim-2 unless Victim-2 engaged in commercial sex acts at

RIVERA's direction and for RIVERA's profit, with knowledge and

understanding that Victim-2 was addicted to heroin.

       (Title 18, United States Code, Section 1594(c).)

_____          _____
GRAND JURY FOREPERSON              GEOFFREY S. BERMAN
                                   United States Attorney

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

**- v. -**

**JUSTIN RIVERA,**
        a/k/a "Denzel Rivera,"
        a/k/a "Bangout,"
        a/k/a "Jackie Chan,"

                                **Defendant.**

**<u>INDICTMENT</u>**

19 Cr. 131 (PAE)

(Title 18, United States Code, Section 1594.)

GEOFFREY S. BERMAN

U.S. Attorney.

Foreperson

**COURT EXHIBIT 8**



*United States v. Justin Rivera*

19 Cr. 131 (PAE)

GOVERNMENT SUMMATION

GOVERNMENT
EXHIBIT
1210B
19 Cr. 131 (PAE)

21  JUSTIN:    What you mean?  Like, did I already fuck her

22             in -- like, that day before, or that day or

23             some shit like that?

24  TINA:      In general, period.  (U/I).

25  JUSTIN:    I didn't fucked her.  I fucked her before

4

1              she started getting money with me.

2   TINA:      Okay.  Why were you fuckin' (U/I) your

3              cousin?

4   JUSTIN:    Like that's, that's what like, kinda made

5              her, like, decide on gettin' money with me.

6   TINA:      'Cause you pumped on her?

7   JUSTIN:    Yeah.

8



GOVERNMENT
EXHIBIT
1211B
19 Cr. 131 (PAE)

| 13 | JUSTIN:   | But it's not, though.  It's not the same |
| 14 |          | situation. |
| 15 | CAROLINA: | How?  How it is not the same? |
| 16 | JUSTIN:   | 'Cause you don't go sell your pussy for me. |
| 17 |          | You don't make money for me. |
| 18 | CAROLINA: | Even more why she's there for you. |
| 19 | JUSTIN:   | Your, your obligation isn't to make money |
| 20 |          | for me. |
| 21 |          | |





# Conspiracy to Commit Sex Trafficking

- Existence of an agreement or understanding to commit sex trafficking

- Defendant knowingly and willfully became a member of the conspiracy



- Recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit by any means a person

- Recklessly disregarding or (for advertising) knowing that force, threats of force, fraud, or coercion will cause the person to engage in a commercial sex act

- In or affecting interstate or foreign commerce



# Not in Dispute

1. Dajia and Natalie engaged in commercial sex acts

2. Dajia was sex trafficked

Tr. 72:21-24

# Dajia was sex trafficked

As I've told you, the evidence will show that one of those housemates, Lorenzo Randall, he did commit sex trafficking, and I'm telling you that right now. We will not deny it. But there will be no evidence that Justin agreed or joined Randall in any conspiracy.



# Not in Dispute

1. Dajia and Natalie engaged in commercial sex acts

2. Dajia was sex trafficked

3. Randall and Rivera engaged in acts prohibited by the first element

1. Recruit
2. Entice
3. Harbor
4. Transport
5. Provide
6. Obtain
7. Advertise

# Not in Dispute

1. Dajia and Natalie engaged in commercial sex acts

2. Dajia was sex trafficked

3. Randall and Rivera engaged in the acts prohibited by the first element

4. The acts were in or affecting interstate commerce

5. Venue is proper

# What's in dispute?

- Was there an agreement?

- Did Justin Rivera voluntarily and willfully enter into the agreement?





GOVERNMENT
EXHIBIT
14
19 Cr. 131 (PAE)

Tr. 189:5-6, 10-11, 19-23

L63sR1V5                    Direct - Perez                    189

1    house, I don't have anywhere else to go. So I'm basically

Q.   Did you feel trapped at the house in Bohemia?

A.   Yes.

6    A.   Yes.

7    Q.   During this time period, how much time did you typically

Q.   And when he left you, what would you do with your time?

A.   I would stay in the room.

12   Q.   Why?

A.   No.   He already just told me he doesn't want me to talking

to Jen.   He doesn't want me going out of the room, you know

what I mean.   He didn't want me to be in any of his friend's

faces, of course.   So I was just -- he just wanted me to stay

in the room.

22   faces, of course.   So I was just -- he just wanted me to stay

23   in the room.

24   Q.   He didn't want you talking to Jen, is that what you said?

25   A.   Yes.

L69KRIV2                    Rodriguez - Direct                    1140

1        There were times where we would be in the living room,
2   but we were, like, always all together.
3   Q.   When you lived at the house, did you have a chance to
4   interact with Dajia?
5   A.   Sometimes.

A.  They were either always gone or -- it wasn't like -- it was
like we weren't supposed to talk, me, Dajia and Jenn.  It was
like a, you know...

12  A.   I think we were always all in the rooms, like we didn't

A.  I think we were always all in the rooms, like we didn't
always hang out or go anywhere by ourselves together.

17  Jenn was in Q's room.
18  Q.   During the times when you did speak with Dajia in the
19  house, could you describe how you went about doing that?
20  A.   We would usually talk through, like, social media or text
21  messages.  There were times when we would have conversations,
22  but they weren't, like, long conversations.
23  Q.   Why not?
24  A.   Either she was leaving or I was with Justin in the room.
25  Like, it wasn't a frequent thing that we all conversated.

Tr. 1140: 7-9, 12-13



Elijah
Lij
Lorenzo

Pops
Q

Bangout
Jackie Chan

Brian
Noe





Tr. 997: 22

997

L68KRIV5                          Rodriguez - Direct

1    Q.   Now, the people we've gone through - the defendant,

2    Mr. Randall, Noe, Dajia, Q, and Jenn - during that first night

3    at the Bohemia House, what, if anything, did you learn about

4    where those people lived?

5    A.   I learned that they lived at the Bohemia House.

6    Q.   Now, I want to first focus on the defendant, Mr. Randall,

7    and Noe.

8         That first night, did the defendant tell you anything

9    about how those men knew one another?

10   A.   He just stated that they were in a music group together.

13   Q.   What did he tell you the name was?

14   A.   The Yacht Club.

15   Q.   Did there come a time when you learned that the Yacht Club

16   was something other than a singing or a music group?

17        MR. CECUTTI:  Objection.

18        THE COURT:  Overruled.

19        THE WITNESS:  Yes.

20   BY MR. BURNETT:

21   Q.   What did you learn that it was?

22   A.   That it was a group of men that prostituted women.

23        MR. BURNETT:  Ms. Jo, could you please publish

24   Government Exhibit 104A, which is already in evidence.

25   Q.   Do you recognize any of the people in this photograph?

A.   That it was a group of men that prostituted women.





GOVERNMENT
EXHIBIT
1014B
19 Cr. 131 (PAE)

**Comments**

**User** yachtclub billy (1434285343) []

**Id** 178508614840045344
**Date Created** 2015-09-21 23:23:57 UTC
**Text** @yachtclub lij @yachtclub noe @yachtclub mermaid 🔥🔥🔥🔥🔥🔥

**User** lamborghinidreams (2060650861) [⚓ Lij 🔥🔥🔥🔥]
**Id** 178439038045344
**Date Created** 2015-09-22 09:36:18 UTC
**Status** 0
**Text** ⚓

GOVERNMENT
EXHIBIT
1014A
19 Cr. 131 (PAE)



GOVERNMENT
EXHIBIT
1012B
19 Cr. 131 (PAE)











```
                                             303
        L64sRIV2          Direct - Perez

1       BY MR. WOLF:

        into the house, and he went to his room.  And he came back out

        and he came to the front door and he had, like, a big gun that

        looked like a cane.  And I never seen that before, and he did,

7       and he came to the front door and he had, like, a big gun that

8       looked like a cane.  And I never seen that before, and he did,

A.      Oh, um, he had it to the side of him, but he had it, like,

        a little -- like, the gun wasn't, like, touching just the

        floor, because he had, like, little raised on his side so that,

        you know, it could be seen.  And he was holding it to the side

        and standing in the doorway.

17      floor, because he had, like, little raised on his side so that,

18      you know, it could be seen.  And he was holding it to the side

19      and standing in the doorway.

20      Q.  In that moment, what, if anything, did the defendant say?

21      A.  He wasn't really saying anything.  He didn't say anything.

22      Q.  Prior to that, when he went into the house, what, if

23      anything, did he say?

24      A.  Like, when -- before that, he was kind of just, like,

25      laughing at the situation.  But when he went in the house, he
```



Tr. 377: 1-3, 4-6, 7-9

L64sRIV4          Direct - Perez          377

1  Q. To the best of your knowledge, at any point, did
2  Mr. Rivera, the defendant, come inside the hotel room?

Q. To the best of your knowledge, at any point, did

Mr. Rivera, the defendant, come inside the hotel room?

A. No, he did not.

8  Mr. Rivera offer to help you?

Q. At any point during this event or shortly after, did

Mr. Rivera ask you if you were OK?

A. No.

14  Q. Were you able to see him leaving the room?

Q. At any point during this event or shortly after, did

Mr. Rivera offer to help you?

A. No.

20  A. Where he had dragged me, he dragged me to the -- there was
21  two beds in the room. He dragged me to the one closest to the
22  door, so the window was just literally behind, like, on the
23  side of the same side of the door. And when he left, he
24  walked -- he got up and he walked right out the door so he
25  didn't have to go anywhere else. He just walked out.



Tr. 350: 9, 13-14

L64KRIV3                     Perez - Direct                     350

1    Q.  Let's stop there for a moment.
2             What, if anything, did you do when you heard what you
3    thought sounded like him hitting her?
4    A.  I got off the bed, and I started, like, peeking out of the
5    room, like kind of looking out, so I could see what was going
6    on because, at first, they weren't in my eye view, so I could
7    just hear the commotion starting, and they be like...
8    Q.  When you were peeking out of the room, what did you see?

**A.  I started seeing Lorenzo start to drag her down the hall.**

11   A.  By her hair.

**A.  She was, like, screaming, she was crying, she was grabbing on -- she was trying to grab on to the top of her head.**

15   MR. WOLF:  Can the record reflect I think the witness
16   was motioning and putting her hands on top of her own head
17   where her hair is?
18             THE COURT:  The record so reflects.
19   BY MR. WOLF:
20   Q.  Where were you at this time?
21   A.  I was in the room.
22   Q.  At this time, were you able to see where the defendant,
23   Mr. Rivera, was?
24   A.  No, no.
25   Q.  What about Twin?





GOVERNMENT
EXHIBIT
123
19 Cr. 131 (PAE)

+16318892316

Get her back bro

Status: Sent

Delivered: 9/26/2015 10:46:03 PM(UTC-4)

9/26/2015 10:46:03 PM(UTC-4)





+16318892316

U want me to knock on the door tho

**Status:** Sent
**Delivered:** 10/5/2015 9:16:20 PM(UTC-4)

10/5/2015 9:16:19 PM(UTC-4)

+16318892316

Ima pull up tho

**Status:** Sent
**Delivered:** 10/5/2015 9:16:59 PM(UTC-4)

10/5/2015 9:16:59 PM(UTC-4)

+16315075011 ¥@eHt

Fuck it

**Status:** Read
**Read:** 10/5/2015 9:16:25 PM(UTC-4)

10/5/2015 9:16:25 PM(UTC-4)

**GOVERNMENT
EXHIBIT
124**
19 Cr. 131 (PAE)





+16313551424 Yacht Mermaid

That means literally nothing to me he went extra lengths after the fact to ruin me like he put a video up of me with no bra just underwear with me tied up with the craziest caption then puts up videos bashing me he doesn't give a fuck about any of the shit he did he knows he fucked up tho he lost me and he knows it's soly on him self treating me like garbage day in and day out after he broke into my families it really shows me that he truly will go thru any length to destroy me even hurt my family and break in to there safe haven the fuck like that's not love I was the best person to Elijah I was madly in love with him did literally everything for him he's still whip in the Benz I got fuckin paid for and idgaf cuz he has his new bitch there lit she can try to fill my spot but it will never happen because no bitch will fully give them selves the way I did take and eat all the shit I did look as lit as I do and still be able to walk away strong and like it all never happened foh there's nothing for me to do but go fowstd why go back to being on backpage for a man who doesn't even love or care abut u n make money that will never truly be mine

10/6/2015 12:13:56 AM(UTC-4)

Status: Read
Read: 10/6/2015 12:13:58 AM(UTC-4)

GOVERNMENT
EXHIBIT
125
19 Cr. 131 (PAE)





GOVERNMENT
EXHIBIT
124
19 Cr. 131 (PAE)



GOVERNMENT
EXHIBIT
124
19 Cr. 131 (PAE)

+16318892316

She said she was at her cousin house or something thats y she didn't want to call me but she said she would text me n she did

Status: Sent
Delivered: 10/6/2015 10:45:43 AM(UTC-4)

10/6/2015 10:45:42 AM(UTC-4)

+1631507501l ¥@€Ht

I know she off Burke in the Bronx

Status: Read
Read: 10/6/2015 10:51:07 AM(UTC-4)

10/6/2015 10:51:07 AM(UTC-4)



JUSTIN:     You wasn't even, you wasn't even allowed to

            smoke no weed until you made enough money.

            Like, until you made some money, you --

NATALIE:    Okay. Tell the whole jail --

JUSTIN:     -- wasn't even allowed to smoke weed. So,

            like, what are you --

NATALIE:    Tell the whole jail.

GOVERNMENT
EXHIBIT
1208B
19 Cr. 131 (PAE)



JUSTIN:     That's what you need to understand.  There
            is no, nobody is your friend, nigga.  I'm
            your friend, like, I'm where everything ends
            at.  It starts and ends with me.

NATALIE:    Okay.

JUSTIN:     Everybody else is paying for you for your
            time.

GOVERNMENT
EXHIBIT
1213C
19 Cr. 131 (PAE)





1496

L6AKRIV5                    Rodriguez - Redirect

1   your work for the defendant?

2   A. Yes.

3   Q. And he asked something along the lines of the defendant

Q. And he asked something along the lines of the defendant

sold drugs and you did dates; is that right?

A. Yes, that's correct.

Q. Who got the money from the drugs?

A. He did.

Q. Who got the money from the dates?

A. He did.

Q. Who typically told you to do the dates?

A. He did.

21   defendant, did you typically feel like you could say no to him

22   when it came to going on dates?

23   A. No.

24   Q. Why not?

25   A. Because I would be faced with consequences. I wouldn't be



GOVERNMENT
EXHIBIT
204A
19 Cr. 131 (PAE)



GOVERNMENT
EXHIBIT
1212B
19 Cr. 131 (PAE)

CAROLINA:   Well, not according to her.  But you her

            daddy, so it's all good.

JUSTIN:     That's what, that's what a hoe calls her

            pimp, her daddy.

GOVERNMENT
EXHIBIT
136
19 Cr. 131 (PAE)

+16318892316

Bro u jus have to play ur position the same way all of have to if u had a bitch u was pimpin I would never make her feel like she is anything more then ur bitch that's being pimped not that I would treat her funny or violate her I would jus keep it regular n act as tho that's my niggaz wifey because my son is eatin wit her I could never treat her as if there is a chance she could b my girl or make her feel special in any type of way like I hit it's over that's it cause I kno the situation an arrangement she got wit my bro

Status: Sent

Delivered: 9/18/2015 11:37:15 PM(UTC-4)

9/18/2015 11:37:14 PM(UTC-4)



L63KRIV6                    Perez - Direct                    207

1    earlier - Natalie.  You mentioned earlier a discussion you

2    overheard where the phrase "boss up" was used.

3         Do you recall that?

A.   That he needed to dominate Natalie and just like -- like
basically do whatever you got to do, you know, you got to be
more assertive and just dominate the situation.  So if that's
physical, whatever, I know that was not off the table with him.

11   BY MR. WOLF:

A.   As far as, like, hitting her or physically harming her to
make her respect you and make you, like, know what you're
saying is what it is.

17   physical, whatever, I know that was not off the table with him.

18   Q.  You said "physical."  What did you mean by that?

19   A.  As far as, like, hitting her or physically harming her to

20   make her respect you and make you, like, know what you're

21   saying is what it is.

22   Q.  And why did you understand boss up to also mean being

23   physical?

24   A.  Because that's exactly what Lorenzo did with me every day.

25   Q.  We talked a few moments ago about the term "nodding off."



Tr. 1137: 21-23
1138: 4-9

Q.   Describe what those conversations were like.

A.   They would compare where our dates were, or how much money that either of us made, or like -- it was like a competition.

Q.   What, if anything, would the defendant communicate to you about how much Dajia and Mr. Randall were making?

A.   He would either say that you can do better or you should make more money, things like that.

Q.   How did that make you feel?

A.   Annoyed, pressured, like I had no say in what was going on.



**COURT EXHIBIT 9**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                                    :

UNITED STATES OF AMERICA               :

                                         :

                    -v-                      :         19 Cr. 131 (PAE)

                                         :

JUSTIN RIVERA,                     :

                                       :

                              Defendant.    :

                                       :

------------------------------------------------------------------------X

**JURY CHARGE**

JURY CHARGE ON JUNE 11, 2021

[1]

CONTENTS

I.   **General Instructions** ...................................................................................... **4**

   A.   Introductory Remarks .............................................................................. 4

   B.   Role of the Court ....................................................................................... 4

   C.   Role of the Jury ......................................................................................... 5

   D.   Role of Counsel ......................................................................................... 5

   E.   Sympathy or Bias ...................................................................................... 6

   F.   All Persons Equal Before the Law ............................................................ 7

   G.   Presumption of Innocence; Burden of Proof; Reasonable Doubt ............. 8

   H.   What Is and Is Not Evidence .................................................................... 9

   I.   Direct and Circumstantial Evidence ....................................................... 10

   J.   Witness Credibility ................................................................................. 11

   K.   Bias of Witnesses ................................................................................... 12

   L.   Prior Inconsistent or Consistent Statements .......................................... 13

   M.   Preparation of Witnesses ........................................................................ 14

   N.   Law Enforcement Witnesses ................................................................... 15

   O.   Expert Witness ........................................................................................ 15

   P.   Cooperating Witnesses ........................................................................... 16

   Q.   Prior Convictions or Crimes of Witnesses ............................................. 17

   R.   Incarceration of Defendant ..................................................................... 18

   S.   Stipulations of Fact ................................................................................. 18

   T.   Stipulations of Testimony ....................................................................... 18

   U.   Audio and Video Recordings; Transcripts ............................................. 18

   V.   Use of Evidence Obtained Pursuant to Searches .................................... 19

   W.   Use of Charts and Tables ........................................................................ 20

   X.   Redaction of Evidentiary Items .............................................................. 20

   Y.   Particular Investigative Techniques Not Required .................................. 21

   Z.   Uncalled Witnesses—Equally Available ................................................ 21

   AA. Persons Not on Trial ............................................................................... 21

   BB. Defendant's Right Not to Testify ............................................................ 22

II.  **Substantive Instructions** ............................................................................ **23**

   A.   The Indictment ........................................................................................ 23

   B.   Summary of the Indictment ..................................................................... 23

[2]

C. Count One: Conspiracy to Commit Sex Trafficking by Force, Threats of Force, Fraud, or Coercion ..................................................................................................................... 23

   1. First Element: Existence of a Conspiracy ............................................................ 25

      a. Objects of the Conspiracy ............................................................................ 27

      b. Time and Scope of the Conspiracy .............................................................. 27

   2. Second Element: Knowing and Willful Participation in the Conspiracy ............. 28

   3. Liability for Acts and Declarations of Co-Conspirators ...................................... 30

   4. Sex Trafficking and Its Elements ......................................................................... 31

      a. First Element: Trafficking Act ..................................................................... 32

      b. Second Element: Knowledge or Reckless Disregard of Use of Force, Threats of Force, Fraud, or Coercion ..................................................................................... 35

      c. Third Element: Interstate Commerce ........................................................... 39

D. Venue ........................................................................................................................... 40

E. Time of Offense ............................................................................................................ 41

**III. Deliberations of the Jury ............................................................................................... 41**

A. Right to See Exhibits and Hear Testimony .................................................................. 41

B. Communication with the Court .................................................................................... 42

C. Notes ............................................................................................................................. 42

D. Duty to Deliberate; Unanimous Verdict ...................................................................... 42

E. Verdict Form ................................................................................................................. 43

F. Duties of Foreperson .................................................................................................... 44

G. Return of Verdict .......................................................................................................... 44

**IV. Conclusion ...................................................................................................................... 44**

## I.   GENERAL INSTRUCTIONS

### A.   Introductory Remarks

Members of the jury, you have now heard all of the evidence in the case as well as the final arguments of the parties.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

Now it is time for me to instruct you as to the law that governs the case.  There are three parts to these instructions.  First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case.  These instructions really would apply to just about any trial.  Second, I'll give you some specific instructions about the legal rules applicable to this particular case.  Third, I'll give you some final instructions about procedure.

Listening to these instructions may not be easy.  It is important, however, that you listen carefully and concentrate.  I ask you for patient cooperation and attention.  You'll notice that I'm reading these instructions from a prepared text.  It would be more lively, no doubt, if I just improvised.  But it's important that I not do that.  The law is made up of words, and those words are very carefully chosen.  So when I tell you the law, it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two.  But for now, listen carefully and try to concentrate on what I'm saying.

### B.   Role of the Court

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and to apply them to the facts as you determine them.  With respect to legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.  You must not substitute your own notions or opinions of what the law is or ought to be.

[4]

### C.     Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Do not conclude from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case.

It is your sworn duty, and you have taken the oath as jurors, to determine the facts.  Any opinion I might have regarding the facts is of absolutely no consequence.

### D.     Role of Counsel

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  It is my job to rule on those objections.  Therefore, why an objection was made or why I ruled on it the way I did is not your business.  You should draw no inference from the fact that an attorney objects to any evidence.  Nor should you draw any inference from the fact that I might have sustained or overruled an objection.

The personalities and the conduct of counsel in the courtroom are not in any way at issue.  If you formed reactions of any kind to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

[5]

From time to time, the lawyers and I had conferences out of your hearing.  These conferences involved procedural and other matters, and none of the events relating to these conferences should enter into your deliberations at all.

**E.     Sympathy or Bias**

Under your oath as jurors you are not to be swayed by sympathy or prejudice.  All of us, no matter how hard we try, tend to look at others and weigh what they have to say through the lens of our own experience and background.  We each have a tendency to stereotype others and make assumptions about them.  Often we see life and evaluate evidence through a clouded filter that tends to favor those like ourselves.  You must do the best you can to put aside such stereotypes, for all litigants and witnesses are entitled to a level playing field in which we do the best we can to put aside our stereotypes and prejudices.  You are to be guided solely by the evidence in this case, and the crucial, bottom-line question that you must ask yourselves as you sift through the evidence is: has the Government proven the guilt of the defendant beyond a reasonable doubt?

It is for you alone to decide whether the Government has proven that the defendant is guilty of the crimes charged.  You must decide solely on the basis of the evidence presented, subject to the law as I explain it to you.  It must be clear to you that once you let fear or prejudice, or bias or sympathy interfere with your thinking, there is a risk that you will not arrive at a true and just verdict.

If you have a reasonable doubt as to the defendant's guilt, you should not hesitate for any reason to find a verdict of acquittal for the defendant.  But on the other hand, if you should find that the Government has met its burden of proving the defendant's guilt beyond a reasonable doubt, you should not hesitate, because of sympathy or any other reason to render a verdict of guilty.

[6]

The question of possible punishment of a defendant is of no concern to the jury and should not enter into or influence your deliberations. The duty of imposing sentence rests exclusively upon the Court. Your function is to weigh the evidence in the case and to determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such evidence. Under your oath as jurors, you cannot allow a consideration of the punishment which may be imposed upon a defendant, if he is convicted, to influence your verdict, in any way, or, in any sense, enter into your deliberations.

Similarly, it would be improper for you to allow any feelings you might have about the nature of the crime charged to interfere with your decision-making process. Your verdict must be based exclusively upon the evidence or the lack of evidence in the case.

### F.      All Persons Equal Before the Law

In reaching your verdict, you must remember that all parties stand equal before a jury in the courts of the United States. The fact that the Government is a party and the prosecution is brought in the name of the United States does not entitle the Government or its witnesses to any greater consideration than that accorded to any other party. By the same token, you must give it no less deference. The Government and the defendant stand on equal footing before you.

It would be improper for you to consider, in reaching your decision as to whether the Government sustained its burden of proof, any personal feelings you may have about the defendant's race, national origin, sex, or age. All persons are entitled to the same presumption of innocence, and the Government has the same burden of proof with respect to all persons. Your verdict must be based solely on the evidence or the lack of evidence.

[7]

### G.        Presumption of Innocence; Burden of Proof; Reasonable Doubt

Now I will instruct you on the presumption of innocence—the Government's burden of proof in this case.  The defendant has pleaded not guilty.  By doing so, he denies the charges in the Indictment.  Thus, the Government has the burden of proving the charges against the defendant beyond a reasonable doubt.  A defendant does not have to prove his innocence.  On the contrary, he is presumed to be innocent of the charge contained in the Indictment.  This presumption of innocence was in the defendant's favor at the start of the trial, continued in his favor throughout the entire trial, is in his favor even as I instruct you now, and continues in his favor during the course of your deliberations in the jury room.

It is removed if and only if you, as members of the jury, are satisfied that the Government has sustained its burden of proving the guilt of the defendant beyond a reasonable doubt.

The question that naturally comes up is—what is a reasonable doubt?  The words almost define themselves.  It is a doubt founded in reason and arising out of the evidence in the case, or the lack of evidence.  It is doubt that a reasonable person has after carefully weighing all the evidence.  Reasonable doubt is a doubt that appeals to your reason, your judgment, your experience, and your common sense.  Reasonable doubt does not mean beyond all possible doubt. It is practically impossible for a person to be absolutely and completely convinced of any disputed fact that by its nature is not susceptible of mathematical certainty.  In consequence, the law in a criminal case is that it is sufficient if the guilt of a defendant is established beyond a reasonable doubt, not beyond all possible doubt.

If, after a fair and impartial consideration of all the evidence, you are not satisfied of a defendant's guilt, if you do not have an abiding conviction of that defendant's guilt—in sum, if you have such a doubt as would cause you, as prudent persons, to hesitate before acting in matters

[8]

of importance to yourselves—then you have a reasonable doubt, and in that circumstance it is your duty to acquit that defendant.

On the other hand, if after a fair and impartial consideration of all the evidence you do have an abiding belief of a defendant's guilt, such a belief as you would be willing to act upon without hesitation in important matters in the personal affairs of your own life, then you have no reasonable doubt, and under such circumstances it is your duty to convict that defendant.

The Government is not required to prove the essential elements of an offense by any particular number of witnesses. The testimony of a single witness may be sufficient to convince you beyond a reasonable doubt of the existence of the essential elements of the offense you are considering if you believe that the witness has truthfully and accurately related what he or she has told you.

### H.      What Is and Is Not Evidence

In determining the facts, you must rely upon your own recollection of the evidence. The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, and the stipulations of the parties.

However, testimony that I have stricken or excluded is not evidence and may not be considered by you in rendering your verdict. Also, if certain testimony was received for a limited purpose, you must follow the limiting instructions I have given, and use the evidence only for the purpose I indicated.

The only exhibits that are evidence in this case are those that were received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials that were used only to refresh a witness's recollection.

[9]

As I told you at the start of this case, statements and arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection that controls.

For the same reasons, you are not to consider a lawyer's questions as evidence. It is the witnesses' answers that are evidence, not the lawyers' questions.

Finally, any statements that I may have made do not constitute evidence. It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

## I.      Direct and Circumstantial Evidence

Generally, as I mentioned at the start of the case, there are two types of evidence that you may consider in reaching your verdict. One type of evidence is direct evidence. Direct evidence is testimony by a witness about something she knows by virtue of her own senses—something she has seen, felt, touched, or heard. For example, if a witness testified that when she left his house this morning, it was raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence from which you may infer the existence of certain facts. To use the same example I gave you at the start of trial: Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella, which was dripping wet. Then a few minutes later another person entered with a wet raincoat. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining, and no one has testified that it is raining. So you have no direct evidence of that fact.

[10]

But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

As you can see, the matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a logical, factual conclusion which you might reasonably draw from other facts that have been proven.  Many material facts—such as what a person was thinking or intending—can rarely be proved by direct evidence.

Circumstantial evidence is as valuable as direct evidence.  The law makes no distinction between direct and circumstantial evidence, but simply requires that before convicting a defendant, the jury must be satisfied of a defendant's guilt beyond a reasonable doubt, based on all the evidence in the case, circumstantial and direct.

There are times when different inferences may be drawn from the evidence. The Government asks you to draw one set of inferences.  The defendant may ask you to draw another. It is for you, and for you alone, to decide what inferences you will draw.

**J.      Witness Credibility**

You have had the opportunity to observe the witnesses.  It is now your job to decide how believable each witness was in his or her testimony.  You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

You should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, the relationship of the witness to the controversy and the parties, the witness's bias or impartiality, the

[11]

reasonableness of the witness's statement, the strength or weakness of the witness's recollection viewed in the light of all other testimony, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case. You should use your common sense, your good judgment, and your everyday experiences in life to make your credibility determinations.

In passing upon the credibility of a witness, you may also take into account any inconsistencies or contradictions as to material matters in his or her testimony.

If you find that any witness has willfully testified falsely as to any material fact, you have the right to reject the testimony of that witness in its entirety. On the other hand, even if you find that a witness has testified falsely about one matter, you may reject as false that portion of his or her testimony and accept as true any other portion of the testimony which commends itself to your belief or which you may find corroborated by other evidence in this case. A witness may be inaccurate, contradictory, or even untruthful in some aspects, and yet be truthful and entirely credible in other aspects of his or her testimony.

The ultimate question for you to decide in passing upon credibility is: did the witness tell the truth before you? It is for you to say whether his or her testimony at this trial was truthful in whole or in part.

### K.    Bias of Witnesses

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witnesses may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a

[12]

particular party.  You should also take into account any evidence of any benefit that a witness may receive from the outcome of the case.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.  In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness is interested in the outcome of the case does not mean he or she has not told the truth.  It is for you to decide from your observations and applying your common sense and experience and all the other considerations mentioned whether the possible interest of any witness has intentionally or otherwise colored or distorted his or her testimony.  You are not required to disbelieve an interested witness; you may accept as much as his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

## L.      Prior Inconsistent or Consistent Statements

You have heard evidence that, at some earlier time, witnesses have said or done something that counsel argues is inconsistent with their trial testimony.

Evidence of a prior inconsistent statement was placed before you not because it is itself evidence of the guilt or innocence of the defendant, but only for the purpose of helping you decide whether to believe the trial testimony of a witness who may have contradicted a prior statement. If you find that the witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an

[13]

important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency; and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much weight, if any, to give to the inconsistent statement in determining whether to believe all, or part of, the witness's testimony.

You have also heard evidence that certain witnesses made earlier statements that were consistent with their trial testimony.  Such statements were admitted into evidence not as independent evidence of guilt or innocence, but solely for whatever light they may shed on the witness's credibility.  If you find that a witness had a motive to testify as he or she did, but also that he or she told the same story before he or she had that motive, you may take that into account in deciding whether the witness's interest or motive colored his or her testimony.

### M.    Preparation of Witnesses

You have heard evidence during the trial that witnesses had discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.  Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying, so that the witness can be made aware of the subjects that he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them.  In fact, it would be unusual for a lawyer to call a witness without such consultation.  Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

[14]

### N.    Law Enforcement Witnesses

You have heard the testimony of several employees of law enforcement agencies.  The fact that a witness may be employed by a law enforcement agency does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

It is your decision, after reviewing all the evidence, whether to accept the testimony of these witnesses and to give to that testimony whatever weight, if any, you find it deserves.

### O.    Expert Witness

In this case, I have permitted an expert witness, Dr. Chitra Raghavan, a professor of forensic psychology at John Jay College, to express her opinion about matters that are in issue.  A witness may be permitted to testify to an opinion on those matters about which she has special knowledge, skill, experience, and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, her opinions, her reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning her opinion.  Nor should you substitute it for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.

[15]

### P.      Cooperating Witnesses

You have heard two witnesses, Dajia Perez and Natalie Rodriguez, testify that they have committed crimes and were testifying pursuant to a non-prosecution agreement with the Government.   And you have heard argument in the summations of counsel about so-called "cooperating" witnesses and whether or not you should believe them.

Experience will tell you that the Government frequently must rely on the testimony of witnesses who admit participating in crimes.  The Government must take its witnesses as it finds them and frequently must use such testimony in a criminal prosecution, because otherwise it would be difficult or impossible to detect and prosecute wrongdoers.

You may properly consider the testimony of such a cooperating witness.  Indeed, it is the law in federal courts that the testimony of a single cooperating witness may be enough in itself for a conviction, if the jury believes that the testimony establishes guilt beyond a reasonable doubt.

It is also the case that cooperating witness testimony is of such a nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.  The fact that a witness is cooperating with the Government can be considered by you as bearing upon her credibility.  The weight to be given to the fact of the witness's cooperation is up to you.  It does not follow, however, that simply because a person has admitted to participating in one or more crimes, she is incapable of giving truthful testimony.  Like the testimony of any other witness, cooperating witness testimony should be given such weight as it deserves in light of the facts and circumstances before you, taking into account the witness's demeanor and candor, the strength and accuracy of her recollection, her background, and the extent to which the testimony is or is not corroborated by other evidence in the case.  You are free to accept as much or as little of the witness's testimony as you find credible.

[16]

You may consider whether a cooperating witness has an interest in the outcome of the case, and if so, whether that interest has affected her testimony.  A witness who hopes to obtain leniency may have a motive to testify as she believes the Government wishes, or she may feel that it is in her interest to incriminate others.  As with any witness, your responsibility is to determine whether any such motive or intent has influenced the witness's testimony, and whether the witness has told the truth, in whole or in part.

In sum, in evaluating the testimony of a cooperating witness, you should ask yourselves the following questions:  Would the witness benefit more by lying or by telling the truth?  Was any part of her testimony made up because she believed or hoped that she would receive favorable treatment from the Government by testifying falsely, or as she believed the Government wanted?  Or did she believe that her interests would be best served by testifying truthfully?  If you believe that the witness was motivated by hopes of personal gain, was the motivation one which could cause her to lie, or was it one which could cause her to tell the truth?  Did this motivation color her testimony?

If you think that the testimony was false, you should reject it.  However, if, after a cautious and careful examination of the cooperating witness's testimony, you are satisfied that the witness told the truth, you should accept it as credible and act upon it accordingly.

As with any witness, let me emphasize that the issue of credibility need not be decided in an all-or-nothing fashion.  Even if you find that a witness testified falsely in one part, you still may accept his or her testimony in other parts, or may disregard all of it.

### Q.     Prior Convictions or Crimes of Witnesses

You have also heard testimony from witnesses who were previously convicted of crimes, or who admitted to committing crimes in the past.  You may consider the fact that a witness has

[17]

committed crimes in assessing how much of her testimony, if any, to believe, and what weight, if any, to give it. It is of course entirely up to your good judgment to determine what weight, if any, to give to a witness's prior criminal record in assessing credibility.

### R. Incarceration of Defendant

You have heard evidence that, at certain points, the defendant was incarcerated. That evidence was admitted for a limited purpose, specifically, to explain the defendant's whereabouts as of certain conversations and events. I instruct you that you are to consider that evidence for that limited purpose only. You may not consider the fact of the defendant having been in prison for any other purpose.

### S. Stipulations of Fact

In this case you have heard evidence in the form of stipulations of fact. A stipulation of fact is an agreement between the parties that a certain fact is true. You must regard such agreed-upon facts as true. However, it is for you to determine the effect to be given to those facts.

### T. Stipulations of Testimony

In this case you have also heard evidence in the form of a stipulation of testimony. A stipulation of testimony is an agreement between the parties that, if called as a witness, the person would give certain testimony. You must accept as true the fact that the witness would have given that testimony. However, it is for you to determine the effect to be given that testimony.

### U. Audio and Video Recordings; Transcripts

Audio and video recordings of certain telephone and in-person conversations, meetings, and events have been admitted into evidence. I instruct you that the audio and video recordings entered into evidence during this trial were made in a lawful manner, that no one's rights were violated, and that the Government's use of this evidence is entirely lawful. Whether you approve

[18]

or disapprove of the recording or interception of these events may not enter your deliberations. Therefore, you must give this evidence your full consideration, along with all the other evidence in the case, as you determine whether the Government has proved the defendant's guilt beyond a reasonable doubt.

You were also provided with transcripts of various recordings, which were given to you as an aid or guide to assist you in listening to the recordings, and which the parties have agreed accurately reflect the words spoken.  However, the recordings themselves are the best evidence of what was said, and you are free to reach your own conclusion as to what was said on the recordings based on what you heard.  If you think you heard something differently than appeared on the transcript, then what you heard is controlling.  Remember that the jury is the ultimate fact finder and, as with all of the evidence, you may give the transcripts such weight, if any, as you believe they deserve.

If you wish to hear or see any of the audio or video tapes again, or see any of the transcripts of those recordings, they will be available to you during your deliberations.

### V.      Use of Evidence Obtained Pursuant to Searches

You have heard testimony about evidence seized during searches.  I instruct you that these seizures were lawful.  Evidence obtained in connection with these seizures was properly admitted in this case, and it may be properly considered by you.  Whether you approve or disapprove of how it was obtained should not enter into your deliberations, because the Government's use of this evidence is entirely lawful.

You must therefore give this evidence full consideration along with all the other evidence in this case in determining whether the Government has proved the defendant guilty beyond a reasonable doubt.  What significance you attach to this evidence is entirely your decision.

[19]

### W.    Use of Charts and Tables

Now, some of the exhibits were charts and tables, for example, of certain phone numbers and text messages.  These charts were introduced basically as summaries.  They are not direct evidence really.  They are summaries of the evidence.  They are a visual representation of information or data as set forth in exhibits or in stipulations or in the testimony of witnesses.  They are admitted as aids to you.  They are not in and of themselves any evidence.  They are intended to be of assistance to you in your deliberations.

In presenting the evidence, which you have heard, it is often easier and more convenient to utilize summary charts than to place all of the relevant documents in front of you.  It is up to you to decide whether those charts fairly and correctly present the information in the testimony and the documents.  The charts are not to be considered by you as direct proof of anything.  They are merely graphic demonstrations of what the underlying testimony and documents are.

To the extent that the charts conform with what you determine the underlying evidence to be, you may accept them.  But one way or the other, realize that the charts are not in and of themselves direct evidence.  They are merely visual aids.  They are nothing more.

### X.    Redaction of Evidentiary Items

We have, among the exhibits received in evidence, some documents that are redacted.  "Redacted" means that part of the document or recording was taken out.  You are to concern yourself only with the part of the item that has been admitted into evidence.  You should not consider any possible reason why the other part of it has been deleted.

[20]

### Y.   Particular Investigative Techniques Not Required

During the trial you have heard testimony about certain specific investigative techniques that the Government utilized.  I instruct you that there is no legal requirement that the Government use any specific investigative technique to prove its case.

Whether you approve or disapprove of various law enforcement techniques, or whether you might have chosen to use or not use any particular technique, is not the question.  Your concern, as I have said, is to determine whether or not, on the evidence or lack of evidence, the defendant's guilt has been proved beyond a reasonable doubt.

### Z.   Uncalled Witnesses—Equally Available

There are people whose names you heard during the course of the trial but did not appear to testify.  I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called.  Their absence should not affect your judgment in any way.

Please also remember my instruction that the law does not impose on the defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

### AA.   Persons Not on Trial

Some of the people who may have been involved in the events leading to this trial are not on trial.  This does not matter.  You may not draw any inference, favorable or unfavorable, towards the Government or the defendant from the fact that certain persons other than the defendant were not named as defendants in the Indictment.  Nor may you speculate as to the reasons why other persons are not on trial.  Those matters are wholly outside your concern and have no bearing on your function as jurors.

[21]

Whether a person should be named as a co-conspirator or indicted as a defendant in this case or another separate case is a matter within the sole discretion of the United States Attorney and the grand jury. Therefore, you may not consider it in any way in reaching your verdict as to the defendant.

**BB.    Defendant's Right Not to Testify**

The defendant, Justin Rivera, did not testify in this case. Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove a defendant guilty beyond a reasonable doubt. That burden remains with the Government throughout the entire trial and never shifts to a defendant. A defendant is never required to prove that he is innocent.

You may not attach any significance to the fact that Mr. Rivera did not testify. No adverse inference against him may be drawn by you because he did not take the witness stand. You may not consider this against the defendant in any way in your deliberations.

II.     **SUBSTANTIVE INSTRUCTIONS**

I will turn now to my instructions to you relating to the charge brought against the defendant in this case.

A.     **The Indictment**

The defendant, Justin Rivera, is formally charged in an Indictment.  As I instructed you at the outset of this case, the Indictment is merely a charge or accusation.  It is not evidence, and it does not prove or even indicate guilt.  As a result, you are to give it no weight in deciding the defendant's guilt or lack of guilt.  What matters is the evidence you heard at this trial.  Indeed, as I have previously noted, the defendant is presumed innocent and has entered a plea of not guilty. It is the prosecution's burden to prove the defendant's guilt beyond a reasonable doubt.

B.     **Summary of the Indictment**

The Indictment contains one count. It charges the defendant with conspiring with others, in or about 2015, to commit the offense of sex trafficking by force, threats of force, fraud, or coercion or any combination of these means.  I will refer to that offense, for short, as sex trafficking.

I will now instruct you on the law that applies to this count.

C.     **Count One: Conspiracy to Commit Sex Trafficking by Force, Threats of Force, Fraud, or Coercion**

Count One charges the defendant with participating in a conspiracy to commit sex trafficking, in violation of Title 18, United States Code, Section 1591, in or about 2015.

A conspiracy is an agreement or understanding, between two or more persons, to violate the criminal law by a joint action.

Count One of the Indictment reads:

[23]

1.      In or about 2015, JUSTIN RIVERA, a/k/a "Denzel Rivera," a/k/a "Bangout," a/k/a "Jackie Chan," the defendant, together with others known and unknown, did willfully and knowingly combine, conspire, confederate, and agree together and with each other to commit sex trafficking, in violation of Title 18, United States Code, Sections 1591(a)(1), (a)(2) and (b).

2.      It was a part and an object of the conspiracy that JUSTIN RIVERA, a/k/a "Denzel Rivera," a/k/a "Bangout," a/k/a "Jackie Chan," the defendant, and others known and unknown, knowingly, in and affecting interstate and foreign commerce, would and did recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit by any means one and more persons, and did benefit, financially and by receiving things of value, from participation in a venture that engaged in any such act, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, coercion, as described in Title 18, United States Code, Section 1591(e)(2), and a combination of such means would be used to cause such persons to engage in one and more commercial sex acts.

3.      In furtherance of said conspiracy and to effect its illegal object, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.      In or about 2015, JUSTIN RIVERA, a/k/a "Denzel Rivera," a/k/a "Bangout," a/k/a "Jackie Chan," the defendant, together with others known and unknown, resided in a residence to which they had no legal title, claim, or interest, and where they harbored and arranged, through advertisements and communications with purchasers of commercial sex acts, for commercial sex acts to be performed by several female persons, including but not limited to Victim-1 and Victim-2.

b.      In or about 2015, RIVERA physically harmed and threatened with harm Victim-2, including but not limited to physically assaulting Victim-2 and brandishing a dangerous weapon at Victim-2, and coerced Victim-2 by withholding heroin from Victim-2 unless Victim-2 engaged in commercial sex acts at RIVERA's direction and for RIVERA's profit, with knowledge and understanding that Victim-2 was addicted to heroin.

I instruct you that as used in the Indictment, "Victim-1" refers to Dajia Perez and "Victim-2" refers to Natalie Rodriguez.

To find the defendant guilty of the crime charged in Count One of the Indictment, the Government must establish each of the following elements beyond a reasonable doubt:

**First**, the existence of the charged conspiracy, that is, the existence of an agreement or understanding to violate the laws of the United States that make it a crime to commit sex trafficking; and

[24]

**Second**, that the defendant knowingly and willfully became a member of the conspiracy.

Now I will explain each of these two elements in more detail: first, the existence of the conspiracy, and second, whether the defendant knowingly and willfully participated in it.

### 1.      First Element: Existence of a Conspiracy

The first element that the Government must prove beyond a reasonable doubt to establish the offense of conspiracy is the existence of a conspiracy. What is a conspiracy? A conspiracy is a kind of criminal partnership—an agreement between two or more persons to join together to accomplish some unlawful purpose. As I mentioned just a moment ago, in this case, the unlawful purpose alleged to have been the object of the conspiracy was the crime of sex trafficking.

In this case, the defendant is accused of having been a member of a conspiracy to violate section 1591 of Title 18 of the United States Code, which prohibits sex trafficking.

A conspiracy is a kind of criminal partnership—a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.

The crime of conspiracy to violate a federal law is an independent offense.

It is separate and distinct from the actual violation of any specific federal laws, which the law refers to as "substantive crimes." The essence of the crime of conspiracy is an agreement or understanding to violate other laws. Indeed, you may find the defendant guilty of the crime of conspiracy to commit an offense against the United States even though the substantive crime that was the object of the conspiracy was not actually committed. Conversely, a defendant can commit a substantive crime without being guilty of conspiracy.

To show a conspiracy, the Government is not required to show that two or more persons sat around a table and entered into a solemn pact, orally or in writing, stating that they had formed a conspiracy to violate the law and spelling out all the details. The Government only needs to

[25]

show that two or more persons explicitly or implicitly came to an understanding to achieve the specified unlawful object, whether or not they were successful. Common sense tells you that when people agree to enter into a criminal conspiracy, much is left to an unexpressed understanding. Instead, the evidence must show that two or more persons, in some way or manner, either explicitly or implicitly, came to an understanding to violate the law and to accomplish an unlawful plan.

You may, of course, find that the existence of an agreement to disobey or disregard the law has been established by direct proof. However, since conspiracy is, by its very nature, characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved. In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words. In this regard, you may, in determining whether an agreement existed here, consider the actions and statements of all of those you find to be participants as proof that a common design existed on the part of the persons charged to act together to accomplish an unlawful purpose.

In determining whether there has been an unlawful agreement as alleged in the Indictment, you may consider the actions of all the alleged co-conspirators that were taken to carry out the apparent criminal purpose. Often, the only evidence that is available with respect to the existence of a conspiracy is evidence of conduct by the alleged individual co-conspirators. When taken all together and considered as a whole, that conduct may warrant the inference that a conspiracy existed.

Keep in mind that conspiracy is an entirely separate and different offense from the substantive crime that was the objective of the conspiracy. Indeed, you may find a defendant guilty of the crime of conspiracy even if you find that the substantive crime—here, sex trafficking—was

[26]

never committed as to either victim referenced in the Indictment.  The point simply is that the objective of the conspiracy need not have actually been accomplished for a conspiracy to exist.

### a.   Objects of the Conspiracy

The objects of a conspiracy are the illegal goals the co-conspirators agree or hope to achieve.  Again, Count One of the Indictment alleges that the object of this conspiracy was to commit sex trafficking.  I will instruct you momentarily on the elements of such sex trafficking, and you should follow those instructions when considering Count One.

If the Government fails to prove beyond a reasonable doubt that sex trafficking was in fact the object of the conspiracy, then you must find the defendant not guilty of Count One.

Please bear in mind that the actual commission of an objective of the conspiracy—here, sex trafficking—is not an element of the crime of conspiracy.

Thus, you need not find that the conspirators actually committed such sex trafficking, but only that they agreed to commit it.

### b.   Time and Scope of the Conspiracy

The Indictment charges the defendant with participating in a specific agreement with a specific object.  He may not be found guilty unless the Government proves beyond a reasonable doubt that the conspiracy charged in the Indictment, that is, a conspiracy to commit sex trafficking, existed.

If you find that the conspiracy charged did not exist, then you must return a not guilty verdict, even if you find that some other conspiracy existed.

Nevertheless, a single conspiracy can exist even though its members change over time.  Accordingly, you may find that there was a single conspiracy even if there were changes in personnel, addition or subtraction of members, or evolution in the activities undertaken by the

[27]

conspirators, so long as you find that some core members of the conspiracy continued to act to accomplish the purpose charged in the Indictment throughout its existence.  The fact that the members of a conspiracy are not always identical does not necessarily imply that separate conspiracies exist.  However, it is not necessary for the Government to prove that the conspiracy lasted throughout the entire period alleged but only that it existed for some time within that period.

Whether the conspiracy charged in the Indictment existed, or whether there was a different conspiracy or no conspiratorial agreement at all is a question of fact for you, the jury, to determine.

### 2.    Second Element: Knowing and Willful Participation in the Conspiracy

If you conclude that the Government has proved beyond a reasonable doubt that the conspiracy alleged in Count One existed, then you must answer the second question: whether the defendant participated in the conspiracy with knowledge of its unlawful purposes and in furtherance of its unlawful objectives.

The Government must prove beyond a reasonable doubt that the defendant willfully and knowingly entered into the conspiracy with criminal intent—that is, with a purpose to violate the law—and that the defendant agreed to take part in the conspiracy to commit sex trafficking and to promote and cooperate in its unlawful objectives.

"Unlawfully" means simply contrary to law.  The defendant need <u>not</u> have known that he was breaking any particular law or any particular rule.  He needs only to have been aware of the generally unlawful nature of his acts.

The terms "willfully" and "knowingly" are intended to ensure that if you find that the defendant did join the conspiracy, you may not find the defendant guilty unless you also conclude beyond a reasonable doubt that, in doing so, the defendant knew what he was doing; in other words, that he took the actions in question deliberately and voluntarily.

[28]

Knowledge is a matter of inference from the proven facts. An act is done "knowingly" and "willfully" if it is done deliberately and purposefully; that is, the defendant's acts must have been the product of his conscious objective rather than the product of force, mistake, accident, mere negligence, or some other innocent reason. That is, the acts must be the product of the defendant's conscious objective. Science has not yet devised a manner of looking into a person's mind and knowing what that person is thinking. However, you do have before you the evidence of certain acts and conversations alleged to have taken place involving the defendant or in his presence. You may consider this evidence in determining whether the Government has proved beyond a reasonable doubt the defendant's knowledge of the unlawful purposes of the conspiracy.

It is not necessary for the Government to show that the defendant was fully informed as to all the details of the conspiracy in order for you to infer knowledge on his part. To have guilty knowledge, a defendant need not know the full extent of the conspiracy, or all of the activities of all of its participants. It is not necessary for a defendant to know every other member of the conspiracy. In fact, the defendant may know only one other member of the conspiracy and still be a co-conspirator. Nor is it necessary for a defendant to receive any monetary benefit from his participation in the conspiracy, or have a financial stake in the outcome. It is enough if he participated in the conspiracy unlawfully, intentionally and knowingly, as I have defined those terms.

In addition, the duration and extent of the defendant's participation has no bearing on the issue of his guilt. He need not have joined the conspiracy at the outset, and may not have received any benefit in return. The defendant may have joined it for any purpose at any time in its progress, and he will be held responsible for all that was done before he joined and all that was done during the conspiracy's existence while he was a member. Each member of a conspiracy may perform

[29]

separate and distinct acts and may perform them at different times.  Some conspirators may play major roles, while others play minor roles in the scheme.  An equal role is not what the law requires.

However, I want to caution you that a person's mere association with a member of a conspiracy does not make that person a member of the conspiracy, even when that association is coupled with knowledge that a conspiracy is taking place.  A person may know, be friendly with, or be related to a conspirator, without being a member of the conspiracy.  Mere presence at the scene of a crime, even coupled with knowledge that a crime is taking place, is not sufficient to support a conviction.  Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make that defendant a member.  More is required under the law:  The defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

Ultimately, the Government must prove beyond a reasonable doubt that the defendant—with an understanding of the unlawful character of the conspiracy—knowingly engaged, advised, or assisted in the conspiracy to commit sex trafficking charged in Count One.

### 3.     Liability for Acts and Declarations of Co-Conspirators

You heard evidence concerning the acts and statements of people other than the defendant because these acts and statements were committed or made by persons who, the Government alleges, were also confederates or co-conspirators of the defendant.

The reason for allowing this evidence to be received against the defendant has to do in part with the nature of the crime of conspiracy.  A conspiracy is often referred to as a partnership in crime, and as in other types of partnerships, when people enter into a conspiracy to accomplish an

[30]

unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Therefore, the reasonably foreseeable acts or statements of any member of the conspiracy, committed in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts or statements of all of the members, and all of the members are responsible for such acts or statements.

If you find, beyond a reasonable doubt, that the defendant was a member of the conspiracy charged in the Indictment, then any acts done or statements made in furtherance of the conspiracy by a person also found by you to have been a member of the same conspiracy may be considered against the defendant. This is so even if such acts were committed or such statements were made in the defendant's absence, and without his knowledge.

However, before you may consider the acts or statements of a co-conspirator in deciding the guilt of the defendant, you must first determine that the acts were committed or statements were made during the existence, and in furtherance, of the unlawful scheme. If the acts were done or the statements were made by someone whom you do not find to have been a member of the conspiracy, or if they were not in furtherance of the conspiracy, they may not be considered by you in deciding whether the defendant is guilty or not guilty.

### 4.    Sex Trafficking and Its Elements

As I told you before, you need not find that the defendant actually committed the sex trafficking that is the object of the conspiracy, but only that he agreed with others to commit such sex trafficking.

Considering that charge requires you to understand the elements of the crime of sex trafficking.

[31]

Section 1591, which is the statute that makes sex trafficking a crime, provides, in pertinent part:

> Whoever knowingly . . . [,] in or affecting interstate . . . commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or . . . benefits, financially or by receiving anything of value, from participation in a venture which has engaged in [such] an act . . . , knowing, or, except where the act constituting [such] . . . violation . . . is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act . . . [is guilty of a federal crime].

There are three elements of the substantive crime of sex trafficking.

**First**, that the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited by any means a person; <u>OR</u> that

The defendant knowingly benefited, financially or by receiving anything of value, from participation in a venture which has recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited by any means a person;

**Second**, that the defendant knew, or recklessly disregarded the fact, that force, threats of force, fraud, coercion, or any combination of such means would be used to cause the person to engage in a commercial sex act;

**Third**, that the defendant's acts were in or affecting interstate or foreign commerce.

Now I will explain each of the three elements of sex trafficking in more detail.

### a.   First Element: Trafficking Act

There are two different ways for the Government to satisfy the first element.   The Government does not have to prove that a defendant violated the statute both ways.

[32]

The first is by proving beyond a reasonable doubt that the defendant knowingly engaged in one of the following acts: recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting the victim at issue.

The second, alternative, way to prove the first element of sex trafficking is for the Government to demonstrate beyond a reasonable doubt that the defendant knowingly benefitted, financially or by receiving anything of value, from participating in a venture that recruited, enticed, harbored, transported, provided, obtained, maintained, advertised, patronized, or solicited a person.

I instruct you to use the ordinary, everyday definitions of the terms in this element. "Recruit" means to seek to enroll. "Entice" means to attract, induce, or lure using hope or desire. "Harbor" means to give or afford shelter to, such as in a house or other place. "Transport" means to take or convey from one place to another. "Provide" means to furnish, supply, or make available. "Obtain" means to gain possession of or acquire. "Advertise" means to publicize. "Maintain" means to keep in an existing state or support. "Patronize" means to visit or obtain services in exchange for money. "Solicit" means to seek out.

Thus, one way for this first element of substantive sex trafficking to be established is to demonstrate beyond a reasonable doubt that the defendant himself knowingly engaged in any of the actions I've just described.

A second, alternative, way for the first element of sex trafficking to be established is to demonstrate that there was a venture that engaged in any of the actions I've just described; that the defendant knowingly participated in some way in that venture; and that the defendant knowingly benefitted, financially or by receiving anything of value, from that venture.

[33]

I instruct you that a venture is defined as "any group of two or more individuals associated in fact, whether or not as a legal entity."

In considering whether the defendant participated in such a venture, the defendant may be, but need not be, responsible for forming that venture. Likewise, the defendant need not be the organizer or main participant in the venture and need not have participated throughout the length of the venture. It is enough if the defendant took some part in the venture for any period of time while the venture was still ongoing, even if the part he played was minor, and even if it did not relate to the actual recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting of the victim at issue for commercial sex.

To benefit, financially or by receiving anything of value, from a venture, the defendant must receive some form of profit, benefit, value, or advantage, no matter how minor or intangible, from the venture. Of course, if you find that the defendant himself recruited, enticed, harbored, transported, provided, obtained, maintained, advertised, patronized, or solicited the victim at issue, you need not consider whether or not the defendant benefitted from doing so.

In sum, for this element to be established, the defendant must have acted knowingly in either the prohibited trafficking activity or joining in a venture that engaged in a prohibited trafficking activity. As I have already instructed you, an act is done "knowingly" if it is done deliberately and purposely; that is, the defendant's actions must have been his conscious objective rather than a product of a mistake or accident, or mere negligence or some other innocent reason.

[34]

###### b.   *Second Element: Knowledge or Reckless Disregard of Use of Force, Threats of Force, Fraud, or Coercion*

The second element is that the defendant knew or recklessly disregarded the fact that force, threats of force, fraud, coercion, or any combination of such means would be used to cause the person to engage in a commercial sex act.

In determining whether a defendant knew or recklessly disregarded that force, threats of force, fraud, or coercion, or any combination of such means, were used to cause the victim to engage in a commercial sex act, the following definitions and instructions apply.

The phrase "recklessly disregarded" means deliberate indifference to facts that, if considered and weighed in a reasonable manner, indicate the highest probability that another fact exists.  For example, in order to prove beyond a reasonable doubt that the defendant "recklessly disregarded" that force, threats of force, fraud, or coercion, or any combination of such means would be used to cause the victim to engage in a commercial sex act, the Government must prove that the defendant deliberately closed his eyes to what would otherwise have been obvious to him.  No one can avoid responsibility for a crime by deliberately ignoring what is obvious.  Stated another way, a person's reckless disregard of a particular fact may be shown by proof of deliberate or intentional ignorance or deliberate or intentional blindness to the existence of that fact.  However, if the defendant only "advertised" the victim at issue, to be guilty the defendant must have acted knowingly—in other words, that he knew that force, threats of force, fraud, coercion were being used.  For this means of violating the sex trafficking statute, and for this means only, reckless disregard is insufficient.

The term "force" means any form of power, violence, or physical pressure directed against another person.

[35]

The term "threat" means a serious statement expressing an intention to inflict harm, at once or in the future, as distinguished from idle or careless talk, exaggeration, or something said in a joking manner.  For a statement to be a threat, the statement must have been made under such circumstances that a reasonable person who heard or read the statement would understand it as a serious expression of an intent to cause harm.  In addition, the defendant must have made the statement intending it to be a threat, or with the knowledge that the statement would be viewed as a threat.

The term "fraud" means that the defendant knowingly made a misstatement or omission of a material fact to entice the victim.  A material fact is one that would reasonably be expected to be of concern to a reasonable person in relying upon the representation or statement in making a decision.

The term "coercion" has two meanings.  It means any threat of serious harm to or physical restraint against any person; or any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person.

The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same situation as the trafficked person to perform or continue performing commercial sexual activity in order to avoid incurring that harm.

If any of these prohibited means was used—or any combination of these means—a defendant is guilty of the substantive offense of sex trafficking only if such use was sufficient to cause the victim to engage in a commercial sex act against her will.

[36]

In making that determination, a jury may consider the special vulnerabilities, if any, of the victim, specifically any aspect of the victim's age, background, station in life, physical or mental condition, experience or education, or any inequalities between her and the defendant.

The Government does not need to link any specific commercial sex act to any particular threat made, or any particular action taken, or any particular act of fraud or deception on the part of the defendant. To be found guilty, it can be enough if a defendant's use of force, threats of force, fraud, or coercion, or any combination thereof, was sufficient to give rise to a climate of fear that would compel a reasonable person in the victim's situation to comply with the defendant's demands, in light of the totality of the defendant's conduct, the surrounding circumstances, and any vulnerabilities of the victim.

In determining whether a defendant is guilty of this substantive offense, a jury may also consider whether the defendant's conduct gave rise to a climate of fear that overcame the will of the victim. Such a climate of fear may arise not only from a defendant's threats and other acts directed at the victim, but also from conduct directed at others that the victim is aware of.

The Government also need not prove physical restraint—such as the use of chains, barbed wire, or locked doors. In order to establish the offense of sex trafficking. The fact that the victim may have had an opportunity to escape is irrelevant if a defendant placed her in fear of leaving or created circumstances such that she did not reasonably believe she could leave. A victim is under no affirmative duty to try to escape.

If there is just one instance in which a defendant used force, threats of force, fraud, or coercion to cause the victim to perform commercial sex acts, that is sufficient. The victim does not need to have been subjected to force, threats of force, fraud, or coercion for the entirety of the period in which she engaged in commercial sex acts for the defendant. Thus, the fact that a person

[37]

may have initially acquiesced or agreed to perform a commercial sex act does not preclude a finding that the person was later compelled to engage in prostitution through the use of force, threats of force, fraud, or coercion.  For example, if a victim willingly engaged in an act of prostitution, then later wanted to withdraw but was compelled to continue to perform acts of prostitution through force, threats of force, fraud, or coercion, then you may find that her later acts of prostitution were compelled by force, threats of force, fraud, or coercion.

Further, whether a person is paid or is able to keep some of her earnings is not determinative of the question of whether that person has been compelled to engage in sex trafficking.  In other words, if a person is compelled to engage in a commercial sex act through force, threats of force, fraud, or coercion, such service is involuntary even if she is paid or compensated for the work.  Of course, you may consider whether the person was compensated in determining whether she was compelled to engage in prostitution.

The substantive sex trafficking offense thus requires proof beyond a reasonable doubt that the defendant knew or recklessly disregarded that the victim at issue would be caused to engage in a commercial sex act.  A "commercial sex act" is any sex act on account of which anything of value is given to or received by any person.  To find that this requirement is satisfied, a jury need not find that the victim actually performed a commercial sex act as long as the Government proved that the defendant knew or (except as to the act of advertising) recklessly disregarded that the victim would be caused to engage in a commercial sex act when he (1) recruited, enticed, harbored, transported, provided, obtained, maintained, advertised, patronized, or solicited the victim at issue, or (2) participated in a venture that did so and benefitted from it.

[38]

### c. Third Element: Interstate Commerce

To satisfy the third and final element of sex trafficking, the Government must prove beyond a reasonable doubt that the defendant's sex trafficking activities were in interstate commerce or affected interstate commerce. The Government need not prove that the activities both were in interstate commerce and affected interstate commerce.

The term "interstate commerce" means the movement of goods, services, money, or individuals from one State to another State. The term "State" includes a State of the United States and the District of Columbia.

In determining whether the defendant's conduct "affected interstate commerce," you may consider whether the defendant used means, instrumentalities, or facilities of interstate commerce. A facility of interstate commerce is a thing, tool, or device that is involved in interstate or foreign commerce. Cell phones and the Internet are both means, facilities, or instrumentalities of interstate or foreign commerce.

It is not necessary for the Government to prove that the defendant knew his conduct was in or affecting interstate or foreign commerce.

To satisfy this element, the Government must prove that the defendant's conduct affected interstate or foreign commerce in any way, no matter how minimal. A jury may find this element satisfied if it finds beyond a reasonable doubt that the defendant's recruitment, enticement, harboring, transportation, providing, obtaining, advertising, maintaining, patronizing, or soliciting of a person knowing that she would be caused to engage in commercial sex acts, or his participation in a venture that undertook such a trafficking act, was economic in nature and otherwise affected the flow of money to any degree across state lines or a foreign border, however minimal.

[39]

However, for this element to be proven beyond a reasonable doubt, it is not necessary for a jury to find that any interstate travel occurred.  Proof of actual travel is not required.

That concludes my discussion of the elements of the offense of sex trafficking.  I remind you again that you need not find that the defendant committed the offense of sex trafficking, but only that he agreed with others to commit that offense.

### D.    Venue

I now return to the specific elements that you must find in this case for the defendant to be found guilty.

In addition to the elements of Count One, conspiracy to commit sex trafficking, that I have described for you, in order to convict a defendant of that offense, you must decide whether any act in furtherance of the crime occurred within the Southern District of New York.  This requirement is known as "venue."  The Southern District of New York includes Manhattan and the Bronx, as well as Westchester, Putnam, Rockland, Orange, Dutchess, and Sullivan counties.  Anything that occurs in any of those places occurs within the Southern District of New York.

Venue is satisfied if any act in furtherance of the crime occurred in this District.  To prove venue for the crime of conspiracy, which is the only charge at issue in this case, it is sufficient if any conspirator committed an overt act in furtherance of the conspiracy in this District.  The defendant need not have ever been physically present in this District for a conspiracy charge against them to be brought here.

I should note that on this issue—and this issue alone—the Government need not offer proof beyond a reasonable doubt.  Venue need be proven only by a preponderance of the evidence.  The Government has satisfied its venue obligations, therefore, if you conclude that it is more likely than not that any act in furtherance of Count One occurred within this District.

[40]

If you find that the Government has failed to prove that an act in furtherance of Count One occurred within this District, then you must acquit the defendant. As I have said, on every other issue the Government's burden of proof is beyond a reasonable doubt.

### E.    Time of Offense

The Indictment alleges that certain acts occurred in or about 2015. It does not matter if the evidence you heard at trial indicates that a particular act occurred on a different date. The law only requires a substantial similarity between the dates alleged in the Indictment and the dates established by the evidence.

## III.    DELIBERATIONS OF THE JURY

### A.    Right to See Exhibits and Hear Testimony

Ladies and gentlemen of the jury, that concludes the substantive portion of my instructions to you. You are about to go into the jury room and begin your deliberations. The exhibits received in evidence will be accessible to you on a monitor in the jury room. If during those deliberations you want to see a hard copy of any of the exhibits, you may request that they be brought into the jury room. If you want any of the testimony read, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony. And please be patient—with respect to requests for testimony, it can sometimes take counsel and the Court some time to identify the portions that are responsive to your request. If you want any further explanation of the law as I have explained it to you, you may also request that.

To assist you in your deliberations, I am providing you with a list of witnesses, in the order in which they testified; a list of exhibits; a verdict form, which I will discuss in a moment; and a

[41]

copy of these instructions.  There is one of each of these for each juror.  I am also providing you with a copy of the Indictment.  I remind you that the Indictment is not evidence.

### B.       Communication with the Court

Your requests for exhibits or testimony—in fact any communications with the Court— should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

### C.       Notes

Some of you have taken notes periodically throughout this trial.  I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory.  Notes that any of you may have made may not be given any greater weight or influence than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence.  All jurors' recollections are equal.  If you can't agree on what you remember the testimony was, you can ask to have the transcript read back.

### D.       Duty to Deliberate; Unanimous Verdict

You will shortly retire to decide the case.  Your function is to weigh the evidence in this case and to determine the guilt or lack of guilt of the defendant with respect to the count charged in the Indictment.  You must base your verdict solely on the evidence and these instructions as to the law, and you are obliged on your oath as jurors to follow the law as I instruct you, whether you agree or disagree with the particular law in question.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement.  Each of you must decide the case for himself or herself, but you should do so only

[42]

after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

When you are deliberating, all 12 jurors must be present in the jury room.  If a juror is absent, you must stop deliberations.

Again, your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors.  No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

Remember at all times, you are not partisans.  You are judges—judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

If you are divided, do <u>not</u> report how the vote stands.  If you reach a verdict, do not report what it is until you are asked in open court.

### E.    Verdict Form

I have prepared a verdict form for you to use in recording your decision.  Please use that form to report your verdict.

[43]

### F.    Duties of Foreperson

Finally, I referred a moment ago to a foreperson.  The first thing you should do when you retire to deliberate is take a vote to select one of you to sit as your foreperson, and then send out a note indicating whom you have chosen.

The foreperson doesn't have any more power or authority than any other juror, and his or her vote or opinion doesn't count for any more than any other juror's vote or opinion.  The foreperson is merely your spokesperson to the court.  He or she will send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict, and you will come into open court and give the verdict.

### G.    Return of Verdict

After you have reached a verdict, your foreperson will fill in and date the form that has been given to you.  All jurors must sign the form reflecting each juror's agreement with the verdict. The foreperson should then advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you must be in agreement with the verdict which is announced in court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

In conclusion, ladies and gentlemen, I am sure that if you listen to the views of your fellow jurors and if you apply your own common sense, you will reach a fair verdict here.

### IV.    CONCLUSION

Members of the jury, that concludes my instructions to you.  I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give to you or anything I may not have covered in my previous statement.

[44]

* * * * *

Before you retire into the jury room I must excuse our three alternates with the thanks of the court.  You have been very attentive and very patient.  I'm sorry that you will miss the experience of deliberating with the jury, but the law provides for a jury of 12 persons in this case. So before the rest of the jury retires into the jury room, if you have any clothing or objects there you are asked to pick them up and to withdraw before any deliberations start.

Please do not discuss the case with anyone, or research the case, over the next few days.  It is possible, and I have had this occur in a trial, that unexpected developments such as a juror's serious illness, may require the substitution of a deliberating juror by an alternate.  And so it's vital that you not speak to anyone about the case or research the case until you have been notified that the jury's deliberations are over and the jury has been excused.  And if you would like to be advised of the outcome of the trial, please make sure that Mr. Smallman has a phone number and an email address at which you can be reached.

(Alternates excused)

Members of the jury, you may now retire.  The marshal will be sworn before we retire.

(Marshal sworn)

[45]

**COURT EXHIBIT 10**

*United States v. Justin Rivera*

19 Cr. 131 (PAE)

GOVERNMENT
EXHIBIT
124
19 Cr. 131 (PAE)

+16315075011 ‡@€‡‡

Pimp or die bruh

Status: Read

Read: 10/7/2015 10:02:21 PM(UTC-4)

10/7/2015 9:03:34 PM(UTC-4)

Source Info:
Dsn\Archive\root\private\var\mobile\Library\SMS\sms.db · 0x79448 (Table: message, chat,
Size: 4864782 bytes)

+16315075011 ‡@€‡‡

If I'm snatching shit like dajja that white girl and this off fb imagine the shit we look at all day
in person and what we could do if we just approach it like we got it already

Status: Read

Read: 10/7/2015 10:02:21 PM(UTC-4)

10/7/2015 9:04:21 PM(UTC-4)

Source Info:
Dsn\Archive\root\private\var\mobile\Library\SMS\sms.db · 0x2B6FF8 (Table: message, chat, Size: 4864782 bytes)

+16318892316

Facts

Status: Sent

Delivered: 10/7/2015 10:02:50 PM(UTC-4)

10/7/2015 10:02:49 PM(UTC-4)

Source Info:
Dsn\Archive\root\private\var\mobile\Library\SMS\sms.db · 0xEEECD2 (Table: message, chat,
Size: 4864782 bytes)